# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
|     **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 7:21cv378** |
| | ) | |
| **VIRGINIA POLYTECHNIC INSTITUTE** | ) | |
| **AND STATE UNIVERSITY, et al.,** | ) | |
| | ) | |
|     **Defendants.** | ) | |

## MEMORANDUM IN SUPPORT OF
## MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

Defendants Virginia Polytechnic Institute and State University ("Virginia Tech"), Timothy Sands ("Sands"), Alexey Onufriev ("Onufriev"), and Tamara Cherry-Clarke ("Cherry-Clarke") (collectively "Defendants"), by counsel, submit this brief in support of their Motion to Dismiss Pursuant to Rule 12(b)(6). For the reasons set forth below, Plaintiff's claims fail to set forth a claim for which relief can be granted, and this case must be dismissed.

## STATEMENT OF THE CASE

Plaintiff's Complaint challenges his expulsion from Virginia Tech for violating Virginia Tech's sexual assault policy and asserts a claim for defamation against Onufriev under state law. ECF No. 1.[1] Plaintiff claims his expulsion from Virginia Tech gives rise to two causes of action: (1) a due process claim under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983; and (2) a gender discrimination claim under Title IX (20 U.S.C. § 1681



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

---

[1] Plaintiff filed a similar iteration of his suit previously, but that case was dismissed pursuant to Rule 12(b)(5) due to plaintiff's failure to timely serve the defendants. <u>Doe v. Va. Polytechnic & State Univ.</u>, No. 7:20cv711, 2021 WL 2156411, 2021 U.S. Dist. LEXIS 100649 (W.D. Va. May 27, 2021).

et seq.). The defamation claim arises from statements published on Onufriev's website. As set forth more fully below, each of Plaintiff's claims fails as a matter of law for numerous reasons.

<u>STATEMENT OF ALLEGED FACTS</u>

Plaintiff was a graduate student at Virginia Tech pursuing a doctoral degree in physics. ECF No. 1, ¶ 10. Onufriev was Plaintiff's graduate advisor. Id., ¶ 11. After joining Onufriev's lab, sometime in 2018 Onufriev asked Plaintiff if Plaintiff was "chasing after" female graduate students and told Plaintiff to look at a poster with attractive women on it. Id., ¶ 17. Plaintiff also claims that in 2018 Onufriev allocated grant funds to a female student whose work did not involve the grant rather than to Plaintiff and in response to Plaintiff's protests said "who can resist a Persian princess?" Id. According to Plaintiff Onufriev tried to attach the grant number to Plaintiff's subsequent research despite Plaintiff's refusals and retaliated against plaintiff by "withholding a letter certifying the completion of [Plaintiff's] Master's degree and assigning excessive, redundant, and contradictory research tasks, setting false deadlines to publish papers, and creating a hostile condition in the lab . . . ." Id.

"Then," in January 2020, a female student contacted Virginia Tech's Title IX office to make a formal complaint against Plaintiff. Id., ¶¶ 22, 28. The female student had previously met with a Virginia Tech Title IX investigator in November 2019 in regard to some alleged unwanted advances from Plaintiff in September and November 2019 but had declined to pursue a formal Title IX complaint at that time. Id. ¶¶ 27. Plaintiff disputed any wrongdoing and claims he had a consensual relationship with the female student. Id., ¶¶ 23–26.



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

- 2 -

On February 17, 2020, Virginia Tech's Title IX office notified Plaintiff that he was "under investigation for sexual assault," and on February 18, Virginia Tech placed Plaintiff on an interim suspension. Id., ¶¶ 29–30. Plaintiff speculated that "perhaps Dr. Onufriev influenced the university in pursuing the student conduct case, over the student's initial wishes . . . ." Id., ¶ 31. Subsequently, Plaintiff visited the Cook Counseling Center at Virginia Tech, was admitted to a local hospital, and received mental health treatment. Id., ¶ 32.

Plaintiff met with a Title IX investigator on February 28, 2020 to discuss "the student conduct process" and, on the same day, received a letter from Cherry-Clarke, Virginia Tech's Assistant Director of Student Conduct, "formally charging him with sexual assault . . . ." Id., ¶¶ 33–34. Plaintiff met with Cherry-Clarke on March 3, 2020, and on March 5, 2020, Cherry-Clarke told Plaintiff his hearing would be the next day. Id., ¶¶ 35–36. Plaintiff asked for extra time to prepare for his hearing, but Cherry-Clarke refused his request. Id., ¶¶ 37–38.

Plaintiff claims Cherry-Clarke was "active in promoting women's issues on campus" and was a member of the "Virginia Tech Women's Alliance," which advocates for women in cases of alleged sexual assault. Id., ¶¶ 40–41. Cherry-Clarke had also previously worked with women's advocacy organizations that advocate for women and received an award from the College Personnel Association's Coalition for Women's Identities before her meeting with Plaintiff. Id., ¶¶ 42–43. Plaintiff argues these activities demonstrate that Cherry-Clarke promotes the interests of women in gender-based cases, which was the reason why she refused to delay Plaintiff's student conduct hearing. Id., ¶¶ 44–45.



FRITH
ANDERSON
+ PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

The student conduct hearing went forward on March 6, 2020, and on March 9, Virginia Tech found Plaintiff responsible for sexual assault and dismissed him from the university. Id., ¶ 46–49. Doe appealed the decision, but Virginia Tech denied the appeal. Id., ¶ 48.

**ARGUMENT & AUTHORITY**

## I.   Standard of Review

To survive a Rule 12(b)(6) motion, a plaintiff's complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The complaint's factual allegations must produce an inference of liability strong enough to push the plaintiff's claims "'across the line from conceivable to plausible.'" Id. at 683 (quoting Twombly, 550 U.S. at 570); see also ACA Fin. Guar. Corp. v. City of Buena Vista, 917 F.3d 206, 211 (4th Cir. 2019). To meet the plausibility standard, there must be factual content in a complaint which "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.[2]

Thus, pleadings that offer mere "'labels and conclusions'" or "'a formulaic recitation of the elements of a cause of action'" will not suffice. Id. at 678 (quoting Twombly, 550 U.S. at 555). Indeed, "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments" need not be accepted as true. Wag More Dogs, LLC v. Cozart, 680 F.3d 359, 365 (4th Cir. 2012). As such, reviewing a

---

[2]  The Court may also "take judicial notice of matters of public record, documents attached to the complaint, and documents attached to the motion to dismiss 'so long as they are integral to the complaint and authentic'" without converting a motion to dismiss into one for summary judgment. Parker v. Austin, 105 F. Supp. 3d 592, 596 n.2 (W.D. Va. 2015) (quoting Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009)).

complaint is "a context-specific task" requiring the court to "draw on its judicial experience and common sense" in order to determine whether the "complaint states a plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Iqbal v. Hasty, 490 F.3d 143, 157 (2d Cir. 2007)). Still, "[d]istrict judges are not mind readers," Bracey v. Buchanan, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999), and a Complaint must comply with the requirements of Rule 8 in order to "unlock the doors of discovery." ACA Fin. Guar. Corp., 917 F.3d at 212 (internal quotations omitted).

## II. Plaintiff's Title IX Claim Regarding "Grant Funding and Educational Opportunities" is Time-Barred

While often not suited for determination at the motion to dismiss stage, the affirmative defense that a claim is time-barred may be decided under Rule 12(b)(6) "if all facts necessary to the affirmative defense clearly appear[ ] on the face of the complaint." Goodman v. PraxAir, Inc., 494 F.3d 458, 464 (4th Cir. 2007). Here, Plaintiff expressly alleges that in 2018 Virginia Tech denied him "grant funding and educational opportunities" in violation of Title IX. ECF No. 1, ¶¶ 17.c., 50. Because Plaintiff did not file this action until June 2021, Plaintiff's Title IX gender discrimination claim for "grant funding and educational opportunities" is time-barred.

### a. Title IX's statute of limitations derives from state law.

"Title IX does not contain an express statute of limitations . . . ." Doe v. Bd. of Educ. of Prince George's Cnty., 888 F. Supp. 2d 659, 663 (D. Md. 2012) (quoting Wilmink v. Kanawha Cnty. Bd. of Educ., 214 F. App'x. 294, 296 n. 3 (4th Cir. 2007)). In cases where Congress has not dictated a statute of limitations, the U.S. Supreme Court has "'generally concluded that Congress intended that the courts apply the most closely analogous statute of limitations under state law.'" Reed v. United Transp. Union, 488 U.S. 319, 323–



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0407\
4844-6932-8357 .v5

24 (1989) (quoting <u>DelCostello v. Int'l Bhd. of Teamsters</u>, 462 U.S. 151, 158 (1983)); <u>Doe</u>, 888 F. Supp. 2d at 663.

**b.** <u>**The statutory period begins to run from the date the plaintiff receives notice of the adverse decision.**</u>

While the statute of limitations derives from state law, when exactly a Title IX claim accrues for purposes of the statute of limitations rests in federal law. <u>Doe v. Va. Polytechnic Inst. & State Univ.</u>, 400 F. Supp. 3d 479, 489–90, 494 (W.D. Va. 2019) (citations omitted).

> [T]he touchstone for determining the commencement of the limitations period is *notice*: a cause of action generally accrues when a plaintiff knows or has reason to know of the injury which is the basis of his action. The proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful.

<u>Samuelson v. Oregon State Univ.</u>, 162 F. Supp. 3d 1123, 1134 (D. Or. 2016), <u>aff'd</u>, 725 F. App'x 598 (9th Cir. 2018) (emphasis added); <u>Stanley v. Trustees of California State University</u>, 433 F.3d 1129, 1136 (9th Cir. 2006) (quoting <u>Hoesterey v. City of Cathedral City</u>, 945 F.2d 317, 319 (9th Cir. 1991) (internal quotations and citations omitted)).

For purposes of accrual, "[t]he proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful." <u>Abramson v. Univ. of Hawaii</u>, 594 F.2d 202, 209 (9th Cir. 1979). The statute of limitations for Plaintiff's Title IX claim regarding "grant funding and educational opportunities" began to run on the date Plaintiff received notice of the decision to give the grant-funded research assistant position to another student. See <u>Doe v. Va. Polytechnic Inst. & State Univ.</u>, 400 F. Supp. 3d at 490–91; <u>see also</u> <u>Lendo v. Garrett Cnty. Bd. of Educ.</u>, 820 F.2d 1365, 1367 (4th Cir. 1987) (holding limitations period begins to run at date of denial letter evidencing discrimination); <u>Endres v. Ne. Oh. Med. Univ.</u>, No. 5:17cv2408, 2018 U.S.



FAP
FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0407\
4844-6932-8357 .v5

Dist. LEXIS 142745, 2018 WL 4002613, at *16–17 (N.D. Ohio Aug. 22, 2018); <u>Tolliver v. Prairie View A&M Univ.</u>, NO. H-18-1192, 2018 U.S. Dist. LEXIS 169031, 2018 WL 4701571, at *4 (S.D. Tex. Oct. 1, 2018); <u>Martin v. Clemson Univ.</u>, 654 F. Supp. 2d 410, 421–22 (D.S.C. 2009) (holding that Title IX does not require the exhaustion of administrative remedies before filing suit); <u>Siblerud v. Co. State Bd. of Agriculture</u>, 896 F. Supp. 1056 (D. Colo. 1995); <u>Morris v. Government Dev. Bank,</u> 27 F.3d 746, 749 (1st Cir. 1994) (holding that limitations periods begins to run when the plaintiff receives "unambiguous and authoritative notice of the discriminatory act").

In <u>Doe v. Virginia Tech</u>, another judge of this Court joined the great weight of authority that Title IX gender discrimination claims accrue upon notice of the discriminatory act. Here, Plaintiff expressly alleges that Onufriev received a grant in 2018 from the National Institute of Health and allocated the $40,000 research assistant stipend to another student. ECF No. 1, ¶ 17.c. Plaintiff was aware of the allocation at that time and even disputed it as improper. <u>Id.</u>, ¶ 17.d. Thus, the statute of limitations period commenced at that time.

c. **The "grant funding and educational opportunity" Title IX claim is time-barred.**

As noted above, under Fourth Circuit and U.S. Supreme Court precedent "federal courts should follow the [most analogous] limitations period set by the state in which the district court sits." <u>Wolsky v. Med. Coll. of Hampton Roads,</u> 1 F.3d 222, 224 (4th Cir. 1993); <u>see also</u> <u>Wilson v. Garcia,</u> 471 U.S. 261, 268 (1985). Most courts apply the forum state's statute of limitations for personal injury claims to a plaintiff's claim under Title IX. <u>Doe v. Va. Polytechnic Inst. & State Univ.</u>, 400 F. Supp. 3d at 495–96. Plaintiff had notice of the alleged discriminatory act in 2018 but did not file suit until 2021—more than two



- 7 -

years later. <u>See</u> <u>Doe v. Virginia Tech</u>, 400 F. Supp. 3d at 496; Va. Code § 8.01-243(A). Because Virginia's statute of limitations for personal injury claims is two years, Plaintiff's "grant funding and educational opportunity" claim, is barred. Accordingly, this claim must be dismissed.

### III. <u>Plaintiff Fails to State an Actionable Procedural Due Process Claim</u>

Count I of the Complaint fails to state a claim for relief because Plaintiff fails to allege a recognized liberty or property interest, and he concedes he received notice and an opportunity to be heard prior to the adverse action. And even if Plaintiff has alleged an inadequate process, the Defendants are shielded from liability under the doctrine of qualified immunity, and Plaintiff fails to allege individual action on behalf of defendants Sands and Onufriev that violated Plaintiff's rights.

#### a. <u>Plaintiff's alleged interest in his education, good name, reputation, and integrity are not recognized liberty or property interests under the Fourteenth Amendment.</u>

At bottom, the deprivation of a protected interest warrants some sort of notice and opportunity to be heard. <u>Goss v. Lopez</u>, 419 U.S. 565, 579 (1975). But a procedural due process violation occurs only with respect to the deprivation of liberty and property interests that the Fourteenth Amendment encompasses. <u>Bd. of Regents v. Roth</u>, 408 U.S. 564, 569 (1972). So, to establish his procedural due process claim, Plaintiff must show: (1) that he had a protected liberty or property interest; (2) of which Virginia Tech deprived him; and (3) "that the procedures employed were constitutionally inadequate." <u>Shirvinski v. U.S. Coast Guard</u>, 673 F.3d 308, 314 (4th Cir. 2012); <u>Tri Cnty. Paving, Inc. v. Ashe Cnty.</u>, 281 F.3d 430, 436 (4th Cir. 2002).



629.0407\
4844-6932-8357 .v5

Plaintiff describes his alleged liberty and property interests as a protected liberty and property interest in his "education[]" and a "liberty interest in his good name, reputation, and integrity." ECF No. 1, ¶¶ 37–38. Whether any of these allege a protected property or liberty interest is a question of law.

### 1. Plaintiff fails to allege sufficient facts to establish a liberty or property interest in his education.

First, there is no liberty interest in a college student's continued education. See Doe v. Va. Polytechnic Inst. & State Univ., No. 7:19cv249, 2020 WL 1309461, 2020 U.S. Dist. LEXIS 47754, at *12–13 (W.D. Va. Mar. 19, 2020)[3] (citing Doe v. Alger, 175 F. Supp. 3d 646, 657–58 (W.D. Va. 2016); Doe v. Va. Polytechnic Inst. & State Univ., 400 F. Supp. 3d at 499[4]).

As to Plaintiff's alleged property interest in his continued education, "[a] property interest is 'created and its dimensions are defined by an independent source such as state statutes or rules entitling the citizen to certain benefits.'" Doe v. Alger, 228 F. Supp. 713, 725 (W.D. Va. 2016) (quoting Roth, 408 U.S. at 577). Property interests are not created by abstract needs or desires. Instead, they must arise from "state statutes, contracts, regulations, or policies." Id.

In conclusory fashion, Plaintiff claims only that he "had a protected interest in his continued education at Virginia Tech . . . ." ECF No. 1, ¶ 37. That is a legal conclusion that the Court need not accept for purposes of a motion to dismiss. Indeed, the Complaint is entirely devoid of any factual allegations raising any inference that Plaintiff has a property interest in his continued education at a public university.

---

[3] Hereinafter "Jacob Doe v. Virginia Tech".
[4] Hereinafter "Doe v. Virginia Tech".

- 9 -

Of course, neither the Supreme Court nor the Fourth Circuit "has recognized a property right to continued enrollment in a public college or university" or "that the Commonwealth of Virginia has created such a right." Doe v. Alger, 175 F. Supp. 3d 646, 657 (W.D. Va. 2016). Indeed, Plaintiff's Complaint fails to allege deprivation of a constitutionally protected liberty or property interest without due process because there is "'no statutory right to be a public or private college or university student.'" M.B. v. McGee, No. 3:16cv334, 2017 U.S. Dist. LEXIS 44796, at *27 (E.D. Va. Mar. 24, 2017) (quoting Alger, 175 F. Supp. 3d at 660); see also Abbas v. Woleben, No. 3:13cv147, 2013 WL 5295672, 2013 U.S. Dist. LEXIS 134446, at *19 (E.D. Va. 2013); Nofsinger v. Va. Commonwealth Univ., No. 3:12cv236, 2012 WL 2878608, 2012 U.S. Dist. LEXIS 97857, at *18–19 (E.D. Va. July 13, 2012), aff'd, 523 F. App'x 204 (4th Cir. 2013); McCoy v. E. Va. Med. Sch., No. 2:11cv494, 2012 U.S. Dist. LEXIS 25777, 2012 WL 662529, at *2 (E.D. Va. Feb. 28, 2012); Davis v. George Mason Univ., 395 F. Supp. 2d 331, 335–36 (E.D. Va. 2005), aff'd, 193 F. App'x 248 (4th Cir. 2006).

In Doe v. Alger, 175 F. Supp. 3d 646 (W.D. Va. 2016), this Court permitted a plaintiff's procedural due process claim to survive a motion to dismiss. Id. at 658. But that plaintiff alleged that James Madison University created a property right in the plaintiff's continued education by adopting policies allowing for dismissal, suspension, or expulsion of students only for cause. Id. at 657. The plaintiff in Alger also claimed that the university's student rights policy served as a basis for his entitlement to continued enrollment. Id. at 658. The Court later denied JMU's summary judgment motion on the due process claim because JMU admitted that plaintiff had "a legitimate claim of entitlement to continued enrollment," and the plaintiff had a contractual relationship



FAP

FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

- 10 -

stemming from the money exchanged for his education and JMU's policies and practices in its handbook. <u>Alger</u>, 228 F. Supp. 3d at 726–27.

In <u>Doe v. Virginia Tech</u>, the Court clarified that the <u>Alger</u> decision "did not hold at that time that Doe had any 'legitimate claim of entitlement to continued enrollment' . . . but it gave him the opportunity to prove the legitimacy of his claim to a property right 'in light of the policies and practices of the institution.'" <u>Doe v. Virginia Tech</u>, 400 F. Supp. at 500 (quoting <u>Doe v. Alger</u>, 175 F. Supp. 3d at 658); <u>see also</u> <u>Jacob Doe v. Virginia Tech</u>, 2020 U.S. Dist. LEXIS 47754, at *15–17.

Here, just like the plaintiffs in <u>Doe v. Virginia Tech</u>, <u>Jacob Doe v. Virginia Tech</u>, <u>Abbas</u>, <u>Nofsinger</u>, and <u>Davis</u>, Plaintiff does not allege any facts undergirding his alleged property interest in his education. There are not even allegations similar to the allegations in <u>Doe v. Virginia Tech</u>, which were even more deficient than the "sparse allegations present in <u>Alger</u>." <u>Id.</u> Rather, Plaintiff relies solely on the legal conclusion that he has a property interest in his post-secondary education, and the Court need not accept a plaintiff's legal conclusions at the motion to dismiss stage. <u>Abbas</u>, 2013 U.S. Dist. LEXIS 134446, at *19; <u>Nofsinger</u>, 2012 U.S. Dist. LEXIS 97857, at *18–20; <u>Davis</u>, 395 F. Supp. 2d at 336.

Plaintiff fails to allege a cognizable liberty or property interest in his continued education. Accordingly, he fails to state a claim for a due process violation in Count I.

**2. Plaintiff fails to allege sufficient facts to establish a liberty interest in his good name, reputation, and integrity.**



FAP
FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0407\
4844-6932-8357 .v5

Plaintiff's due process claim also must fail because there is no protected liberty or property interest in reputation, honor, and integrity.[5] Under <u>Paul v. Davis</u>, 424 U.S. 693 (1976), reputation injury must be accompanied by some "state action that distinctly altered or extinguished a legal status or right . . . ." <u>Alger</u>, 175 F. Supp. 3d at 660 (citing <u>Shirvinksi</u>, 673 F.3d 308, 315 (4th Cir. 2012); <u>Doe v. Rector & Visitors of George Mason Univ.</u>, 132 F. Supp. 3d 712, 722 (E.D. Va. 2015)).

In <u>Doe v. Virginia Tech</u>, this Court concluded—again—that an expelled university student failed to state a claim for a deprivation of a liberty interest. <u>Jacob Doe v. Virginia Tech</u>, 2020 U.S. Dist LEXIS 47754, at *12–13; <u>Doe v. Virginia Tech</u>, 400 F. Supp. 3d at 499. Both cases relied on the <u>Alger</u> Court's analysis. <u>Id.</u>

In <u>Alger</u>, this Court concluded that allegations more substantial than those in Plaintiff's Complaint were still insufficient to state a claim for deprivation of a liberty interest. 175 F. Supp. 3d at 658. The plaintiff in <u>Alger</u> maintained that "he had 'a protected liberty interest in his good name, reputation, honor, and integrity,'" claimed that "stigmatizing information [would] be part of his permanent record and . . . shared with other colleges and universities." <u>Id.</u> Finding Fourth Circuit precedent in the government employment context distinguishable, the <u>Alger</u> Court concluded those allegations failed to state a constitutionally protected liberty interest. <u>Id.</u> at 661.



FRITH
ANDERSON
+ PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

---

[5]  <u>Paul v. Davis</u>, 424 U.S. 693, 712 (1976) ("interest in reputation is simply one of a number which the State may protect against injury by virtue of its tort law, providing a forum for vindication of those interests by means of damages actions. And any harm or injury to that interest, even where as here inflicted by an officer of the State, does not result in a deprivation of any 'liberty' or 'property' recognized by state or federal law").

629.0407\
4844-6932-8357 .v5

The Complaint in this case is similarly ill-fated: Plaintiff alleges damage to his reputation only. Thus, Plaintiff fails to allege sufficient facts to satisfy the first element of a prima facie procedural due process claim, and Count I must be dismissed.

**b.** **<u>Plaintiff concedes he received due process because he received notice of the charges against him, an opportunity to be heard, and an appeal.</u>**

Even if Plaintiff has alleged a protected liberty or property interest in his status as a Virginia Tech student, his claim still fails because he fails to allege facts showing a deprivation of the constitutionally required due process for student discipline.

The fundamental requirements of due process are fair notice and an opportunity to be heard. <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 546 (1985); <u>see also Mathews v. Eldridge</u>, 424 U.S. 319, 333 (1976). But what process is due is a "flexible" inquiry and depends on the "particular situation" at hand. <u>Morrissey v. Brewer</u>, 408 U.S. 471, 481 (1972). Here, Virginia Tech's procedures, which have a statutory foundation that is orderly and fair, were followed, and Doe received all the process he was constitutionally due. <u>See</u> Va. Code § 23.1-2603 ("The [B]oard [of Visitors] is charged with . . . the protection and safety of students and other persons residing on such property.").

Doe alleges Defendants failed to give him a meaningful opportunity to be heard because he had less than twenty-four hours' notice before the hearing. ECF No. 1, at ¶ 41. Doe does not (1) dispute that he received notice of the charges against him weeks prior to the disciplinary hearing or (2) challenge the procedures followed during the disciplinary hearing itself for purposes of his due process claim.

Doe concedes Defendants afforded him the "rudiments of procedural due process-- notice and an opportunity to be heard." <u>Butler v. Rector & Bd. of the Coll. of William & Mary</u>, 121 F. App'x 515, 520 (4th Cir. 2005). "The proceedings need not . . . take the form



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0407\
4844-6932-8357 .v5

of a judicial or quasi-judicial trial; so long as the student is given notice of the charges

against him, notice of the time of the hearing, and a full opportunity to be heard . . . ." <u>B.S.</u>

<u>v. Bd. of Sch. Trs.</u>, 255 F. Supp. 2d 891, 898 (N.D. Ind. 2003).

In the context of student discipline, this Court has applied the following due

process standard embraced by the Fourth Circuit:

> The notice should contain a statement of the specific charges and grounds
> which, if proven, would justify expulsion under the regulations of the
> [University]. The nature of the hearing should vary depending upon the
> circumstances of the particular case. The case before us requires something
> more than an informal interview with an administrative authority of the
> college. By its nature, a charge of misconduct, as opposed to a failure to
> meet the scholastic standards of the college, depends upon a collection of
> the facts concerning the charged misconduct, easily colored by the point of
> view of the witnesses. In such circumstances, a hearing which gives the . . .
> administrative authorities of the college an opportunity to hear both sides
> in considerable detail is best suited to protect the rights of all involved. This
> is not to imply that a full-dress judicial hearing, with the right to cross-
> examine witnesses, is required. Such a hearing, with the attending publicity
> and disturbance of college activities might be detrimental to the college's
> educational atmosphere and impracticable to carry out. Nevertheless, the
> rudiments of an adversary proceeding may be preserved without
> encroaching upon the interests of the college.

<u>Doe v. Virginia Tech</u>, 400 F. Supp. at 500–01 (internal quotations and citations

omitted); <u>Doe v. Alger</u>, 175 F. Supp. 3d 646, 661 (W.D. Va. 2016) (same); <u>see</u> <u>also</u> <u>Doe v.</u>

<u>Loh</u>, No. PX-16-3314, 2018 WL 1535495, 2018 U.S. Dist. LEXIS 53619, at *22 (D. Md. Mar.

29, 2018) (collecting cases).

Plaintiff claims in "late-2019 and early-2020" he was accused of having made

unwanted advances toward another student. ECF No. 1, ¶ 22. On February 17, 2020,

Plaintiff received formal notification that he was under investigation for sexual assault.

<u>Id.</u>, ¶ 29. Plaintiff was suspended the next day pending a student conduct hearing. <u>Id.</u>, ¶

30. Over one week later, on February 28, Plaintiff met with the Title IX investigator to go



FAP

FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

over the student conduct process. Id., ¶ 33. That same day, Cherry-Clarke sent Plaintiff a letter formally charging him with sexual assault. Id. ¶ 34. Doe met with Cherry-Clarke on March 3, and on March 5—seventeen days after he received notification of the investigation—Plaintiff received notice that his student conduct hearing would be the following day. Id., ¶¶ 35–36.

Plaintiff does not allege that he was deprived of all notice of the charges against him or deprived of an opportunity to be heard. Instead, Plaintiff claims he did not have adequate time to "prepare and collect all the evidence he needed . . . ." Id., ¶ 37. Yet, Plaintiff had been aware of the charges for over two weeks and by his own allegations, see id., ¶¶ 22–26, appears to have known about the allegations against him well before February 17, 2020. Plaintiff does not allege he was unable to call witnesses or any other procedural irregularities and fails to explain why he was unable to adequately prepare for the hearing after knowing about the charge against him for two weeks.

As the Tigrett Court aptly observed:

> In the context of student discipline, the Supreme Court has stated with respect to short suspension cases that "there need be no delay between the time notice is given and the time of the hearing." Goss, 419 U.S. at 582. While the present case is admittedly one involving a more serious penalty, the Court is of the belief that 48 hours provided Plaintiffs *with sufficient notice of the Section 8 charge*, especially in light of the fact that the challenged disorderly conduct charge . . . .

Tigrett, 137 F. Supp. 2d at 678 (quoting Goss v. Lopez, 419 U.S. 565, 582 (1975)). In Tigrett, forty-eight hours' notice of a *new charge* was sufficient. Here, Plaintiff received notice of the charge two weeks before his hearing and received twenty-four hours' advance notice of the hearing.



FRITH
ANDERSON
+ PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

The Complaint confirms Virginia Tech performed an investigation, provided Plaintiff with notice of the specific charges against him two weeks before his hearing, provided him approximately twenty-four hours' notice before his hearing, held a hearing on March 6, 2020, and provided Plaintiff a right to appeal. Taken together, these allegations show that Virginia Tech provided Doe adequate notice and a "meaningful hearing." <u>Tigrett v. Rector & Visitors of Univ. of Va.</u>, 290 F.3d 620, 627 (4th Cir. 2002); <u>Butler v. Rector & Bd. of Visitors of the College of William & Mary</u>, 121 F. App'x 515, 520 (4th Cir. 2005); <u>Cobb v. Rector & Visitors of the Univ. of Va.</u>, 69 F. Supp. 2d 815, 829 (W.D. Va. 1999). The Constitution does not promise him anything more than Virginia Tech provided.

### c. <u>Plaintiff fails to allege any individual action by defendants Sands or Onufriev that violated plaintiff's civil rights.</u>

"To establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985). Individual liability under § 1983 requires an affirmative showing "'that the official charged acted personally in the deprivation of the plaintiff's rights.'" <u>Wright v. Collins</u>, 766 F.2d 841, 850 (4th Cir. 1985) (quoting <u>Vinnedge v. Gibbs</u>, 550 F.2d 926, 928 (4th Cir. 1977)); <u>Cook v. James</u>, 100 F. App'x 178, 180 (4th Cir. 2004) (citing <u>Wright</u>, 766 F.2d at 850)). "The doctrine of *respondeat superior* has no application under [42 U.S.C. § 1983.]" <u>Wright</u>, 766 F.2d at 850 (internal quotations omitted). Rather, the "plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." <u>Iqbal</u>, 556 U.S. at 676.



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0407\
4844-6932-8357 .v5

Plaintiff does not allege any facts to suggest Sands or Onufriev did anything to cause any deprivation of Plaintiff's due process rights. Accordingly, Plaintiff cannot maintain a cause of action against Sands and Onufriev under 42 U.S.C. § 1983.

**d. <u>The individual defendants enjoy qualified immunity.</u>**

Even if the Court disagrees with the above, the individual Defendants have qualified immunity against Plaintiff's allegations that he is entitled to more process than he received. First, there is no clearly established right to continued enrollment at a university. Second, the amount of advance notice required before a student disciplinary proceeding—when the student has sufficient notice of the charges he faces—was not clearly established at the time of the events in the Complaint.

**1. Qualified immunity standard**

Qualified immunity serves the dual purpose of holding "'public officials accountable when they exercise power irresponsibly and . . . shield[ing] officials from harassment, distraction, and liability when they perform their duties reasonably.'" <u>Danser v. Stansberry</u>, 772 F.3d 340, 345 (4th Cir. 2014) (quoting <u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009)). The defense applies so long as the defendant's conduct does not violate a clearly established right of which a reasonable person would have known. <u>Id.</u> (citing <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). Because qualified immunity provides "'immunity from suit rather than a mere defense to liability,'" it is imperative that a ruling on the issue "be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001) (quoting <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985)).



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0407\
4844-6932-8357 .v5

When a defendant asserts a qualified immunity defense, the court must conduct a two-pronged analysis which addresses (1) whether the defendant violated the plaintiff's constitutional rights; and (2) if so, whether at the time of the alleged violation the right was clearly established. <u>Danser</u>, 772 F.3d at 345–46 (citing <u>Meyers v. Baltimore Cnty., Md.</u>, 713 F.3d 723, 731 (4th Cir. 2013)). The Court may address either prong first in its qualified immunity analysis. <u>Hensley v. Price</u>, 876 F.3d 573, 580 (4th Cir. 2014) (citing <u>Pearson</u>, 555 U.S. at 236).

The second element of the qualified immunity analysis requires the court to determine, without the benefit of hindsight, whether "'the contours of the right . . . [were] sufficiently clear [such] that [a] reasonable official would understand that what he is doing violates that right.'" <u>Brown v. Ray</u>, 695 F. Supp. 2d 292, 304 (W.D. Va. 2010) (quoting <u>Brosseau v. Haugen</u>, 543 U.S. 194, 198 (2004)). Indeed, the question is not whether the official's actions were correct but, rather, whether those actions were reasonable under the circumstances. <u>Id.</u>

In the Fourth Circuit, whether a right is clearly established hinges on "'the decisions of the Supreme Court, [the Fourth Circuit Court of Appeals], and the highest court of the state in which the case arose.'" <u>Owens v. Lott</u>, 372 F.3d 267, 279–80 (4th Cir. 2004) (quoting <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 251 (4th Cir. 1999)). When no controlling authority exists, a court "may look to 'a consensus of persuasive authority' from other jurisdictions if such exists." <u>Id.</u> (quoting <u>Wilson v. Layne</u>, 526 U.S. 603, 617 (1999)). While not conclusive, "'[i]f a right is recognized in some other circuit, but not in this one, an official will ordinarily retain the immunity defense.'" <u>Edwards</u>, 178 F.3d at 251 (quoting <u>Jean v. Collins</u>, 155 F.3d 701, 709 (4th Cir. 1998) (en banc)). The Court may,



FAP

FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

however, construe a particular right as clearly established if a "'a consensus of cases of persuasive authority' from other jurisdictions . . . exists." <u>Booker v. S.C. Dep't of Corr.</u>, 855 F.3d 533, 539 (4th Cir. 2017) (quoting <u>Owens ex rel Owens v. Lott</u>, 372 F.3d 267, 280 (4th Cir. 2004)).

It is a "longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" <u>White v. Pauly</u>, 137 S. Ct. 548, 552 (2017) (per curiam) (quoting <u>Ashcroft</u>, 563 U.S. at 742). Thus, before holding a government officer liable for breaching a clearly established right, the Court must "identify a case where an officer acting under similar circumstances . . . was held to have violated" the plaintiff's rights. <u>Id.</u> This analysis does not require that the "'exact conduct at issue' . . . previously have been deemed unlawful for the law governing an officer's action to be clearly established." <u>Sims v. Labowitz</u>, 885 F.3d 254, 263 (4th Cir. 2018) (quoting <u>Amaechi v. West</u>, 237 F.3d 356, 362 (4th Cir. 2001)). But there must be clearly established law that is "'particularized to the facts of the case' so as to avoid transforming qualified immunity into 'a rule of virtually unqualified immunity.'" <u>Safar v. Tingle</u>, 859 F.3d 241, 246 (4th Cir. 2017) (quoting <u>White</u>, 137 S. Ct. at 552).

**2. It is not clearly established that university students have a constitutionally protected property right in continued enrollment**

This past April, the United States Court of Appeals for the Fourth Circuit ruled in a published decision that it is not clearly established that a university student has a right to continued education. <u>Sheppard v. Visitors of Va. State Univ.</u>, 993 F.3d 230, 240 (4th Cir. 2021). Accordingly, on that basis alone, the individual defendants are entitled to qualified immunity.



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

### 3. What constitutes an adequate amount of notice required before a disciplinary hearing is not clearly established.

While it is clear that a university student is entitled to advance notice of the charges against him before a disciplinary hearing, it is not clearly established how much notice is required when the student receives notice of the charges prior to a disciplinary hearing being set. As the <u>Tigrett</u> Court noted, the focus of the analysis is notice of the *charges*, not notice of the hearing time. Therefore, the individual defendants are entitled to qualified immunity, and this claim must be dismissed.

### IV. <u>Count II Should be Dismissed because Plaintiff Fails to Allege Facts Showing a Violation of Title IX.</u>

Title IX states that:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal Financial assistance.

20 U.S.C. § 1681(a). Plaintiff ostensibly sets forth two distinct Title IX claims: an erroneous outcome claim as to the student conduct process, ECF No. 1, ¶¶ 51–53; and a quasi-employment discrimination claim in regard to the grant funded research assistant position, <u>id.</u> at ¶¶ 17(c), 50.[6]

### a. <u>The Complaint does not satisfy the pleading requirements for a Title IX claim.</u>

In <u>Sheppard</u>, the Fourth Circuit clarified the pleading standard for individual Title IX claims. <u>Sheppard</u>, 993 F.3d at 235–37. Prior to the decision in <u>Sheppard</u>, courts in the Western District of Virginia generally followed the analysis set forth in <u>Yusuf v. Vassar College</u>, 35 F.3d 709 (2d Cir. 1994) for analyzing Title IX claims. <u>Doe v. Virginia Tech</u>, 400



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

---

[6] Because the claim regarding the grant funding and research assistant position is clearly time-barred, Defendants will not address it here but reserve the right to do so should the Court find the claim is timely.

629.0407\
4844-6932-8357 .v5

F. Supp.3d at 502–03; <u>Doe v. Washington & Lee Univ.</u>, No. 6:14cv52, 2015 WL 4647996, 2015 U.S. Dist. LEXIS 102426, at *25 (W.D. Va. Aug. 5, 2015).

In <u>Sheppard</u>, the Fourth Circuit agreed with the approach to Title IX cases adopted by the Seventh Circuit, which asks whether "the alleged facts, if true, raise a plausible inference that the university discriminated against the student on the basis of sex?" <u>Sheppard</u>,993 F.3d at 236 (internal quotations omitted). The <u>Sheppard</u> Court clarified, however, that "a Title IX plaintiff [must] adequately plead causation—that is, a causal link between the student's sex and the university's challenged disciplinary proceeding." <u>Id.</u> That causal link requires "'but-for' causation." <u>Id.</u> at 236–37 (citing <u>Bostock v. Clayton Cnty., Ga.</u>, 140 S. Ct. 1731, 1739 (2020); <u>Univ. of Tex. Sw. Med. Ctr. V. Nassar</u>, 570 U.S. 338, 351–52 (2013); <u>Gross v. FBL Fin. Servs., Inc.</u>, 557 U.S. 167, 176 (2009); <u>Jackson v. Birmingham Bd. of Educ.</u>, 544 U.S. 167, 184 (2005); <u>Grimm v. Gloucester Cnty. Sch. Bd.</u>, 972 F.3d 586, 616 (4th Cir. 2020); <u>Gentry v. E.W. Partners Club Mgmt. Co., Inc.</u>, 816 F.3d 228, 235–36 (4th Cir. 2016)).

Plaintiff claims that "Virginia Tech deprived [Plaintiff], on the basis of his gender, of his rights of due process and equal protection through its improper application and administration of its policies to [Plaintiff] in the pursuit of his degree program, and then, in its sexual assault investigation and hearing."  ECF No. 1, ¶ 49. These acts manifested in the form of "favor[ing] a female student in [Plaintiff's] laboratory, over a male student" and by "rushing to schedule the [disciplinary] hearing." <u>Id.</u>, ¶¶ 51, 53. But Plaintiff fails to plead facts satisfying the requisite "but for" causal link for these conclusory assertions.

First, Plaintiff does not allege any gender bias with respect to the Title IX investigation or the Title IX investigator. Instead, the allegations in the Complaint strain to



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0407\
4844-6932-8357 .v5

suggest that Cherry-Clarke's affiliation with the Virginia Tech Women's Alliance and receipt of an award from the American College Personnel Association's Coalition for Women's Identities, and prior work experience with women's advocacy organizations means her denial of Plaintiff's request to reschedule the student conduct hearing was because of gender bias. But that *post hoc ergo propter hoc* argument, without any other facts to suggest that Cherry-Clarke's denial of Plaintiff's request was because of gender bias is insufficient to state a claim under <u>Sheppard</u>. Accordingly, Plaintiff fails to state a claim for Title IX gender discrimination.

**V. <u>Count III Should be Dismissed because Plaintiff Fails to State an Actionable Claim for Defamation.</u>**

Defamation requires the "(1) publication of (2) an actionable statement with (3) the requisite intent." <u>Tharpe v. Saunders</u>, 285 Va. 476, 481, 737 S.E.2d 890, 892 (2013) (internal quotations omitted).[7] The Court "must decide as a threshold matter of law whether a statement is reasonably capable of defamatory meaning before allowing the matter to be presented to a finder of fact." <u>Handberg v. Goldberg</u>, 831 S.E.2d 700, 705 (Va. 2019) (internal quotations omitted).

Statements of fact that are true are not actionable and neither are mere opinions. <u>Jordan v. Kollman</u>, 269 Va. 569, 575, 612 S.E.2d 203, 206 (2005) (citation omitted). The plaintiff bears the burden of pleading and proving a statement's falsity. <u>Id.</u> at 576, 612 S.E.2d at 207 ("[T]he plaintiff in a defamation action has the burden of proving that the statement is false.").



FAP
**FRITH
ANDERSON
+PEAKE** PC
ATTORNEYS AT LAW
Roanoke, Virginia

---

[7] The Court has discretion to exercise supplemental jurisdiction over Plaintiff's state law claim. 28 U.S.C. § 1367. If it chooses to do so, the Court must apply the substantive law and choice-of-law rules of the forum state, Virginia. <u>See</u> <u>Hegedus v. Nationstar Mortg. LLC</u>, No. 5:17cv53, 2018 U.S. Dist. LEXIS 16085 (W.D. Va. Feb. 1, 2018) <u>adopted by</u>, 2018 WL 1461747, 2018 U.S. Dist. LEXIS 48682 (W.D. Va. Mar. 23, 2018) Here, the statements were allegedly made in Virginia, and the alleged harm occurred in Virginia. Therefore, Virginia law applies. <u>Gilmore v. Jones</u>, 370 F. Supp. 3d 630, 664 (W.D. Va. 2019).

629.0407\
4844-6932-8357 .v5

The Court plays a significant gatekeeper role in any defamation action. First, the Court decides whether a statement is actionable—that is, whether the statement is "defamatory." <u>Schaecher v. Bouffault</u>, 290 Va. 83, 94, 772 S.E.2d 589, 595 (2015). Only "statements which may actually defame a plaintiff" can survive a motion to dismiss. <u>Pendleton v. Newsome</u>, 290 Va. 162, 172, 772 S.E.2d 759, 763 (2015).

While statements of fact that are true are generally not actionable, a plaintiff can attempt to allege that the implication arising from the true statement is defamatory. <u>Webb v. Virginian-Pilot Media Co., LLC</u>, 287 Va. 84, 89, 752 S.E.2d 808, 811 (2014). Thus, to state a claim for defamation by implication, a plaintiff must allege

> "(1) that the defendant[ ] made the statement[ ] . . . (2) that the statement[ ], even if facially true, [was] designed and intended by the defendant[ ] to imply [the defamatory meaning], (3) that in light of the circumstances prevailing at the time [it] was made, the statement[ ] conveyed the defamatory implication to those who heard or read [it], and (4) that the plaintiff suffered harm as a result."

<u>Edwards v. Schwartz</u>, 378 F. Supp. 3d 468, 504 (W.D. Va. 2019). The Court must then determine "(1) whether a statement has a provably false factual connotation and (2) whether a statement is capable of having a defamatory meaning injurious to the plaintiff's reputation." <u>Id</u>.

When performing its gatekeeping function, the Court must construe the allegedly defamatory words in context and in their plain and natural meaning. <u>Schaecher</u>, 290 Va. at 93, 772 S.E.2d at 595 (citing <u>Carwile v. Richmond Newspapers</u>, 196 Va. 1, 7, 82 S.E.2d 588, 591–92 (1954); <u>Farah v. Esquire Magazine</u>, 736 F.3d 528, 535 (D.C. Cir. 2013) ("The publication must be taken as a whole . . . .")). The Court must assess the statements as "other people would understand them, and according to the sense in which they appear to have been used." <u>Id</u>. Importantly, "the meaning of the alleged defamatory language



FA+P
FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

- 23 -

cannot, by innuendo, be extended beyond its ordinary and common acceptation." <u>Carwile v. Richmond Newspapers, Inc.</u>, 196 Va. 1, 8, 82 S.E.2d 588, 592 (1954). And "inferences cannot rise above the language of the documents or statements themselves" or "extend the meaning of the words used." <u>Schaecher</u>, 290 Va. at 93, 772. S.E.2d at 594. In essence, the plaintiff cannot, by innuendo, "introduce new matter, nor extend the meaning of the words used, or make that certain which is in fact uncertain." <u>Carwile</u>, 196 Va. at 8, 82 S.E.2d at 592.

First, Plaintiff claims that the statement at issue constitutes defamation per se. Plaintiff does not allege the statement that he was dismissed from Virginia Tech is false, however, nor could he. <u>See</u> ECF No. 1, ¶ 47. Under Virginia law, "a plaintiff seeking to recover for defamation per se must allege a publication of *false* information concerning the plaintiff that tends to defame the plaintiff's reputation." <u>Hatfill v. N.Y. Times Co.</u>, 416 F.3d 320, 330 (4th Cir. 2005) (emphasis added). Because Plaintiff fails to allege that Onufriev made any *false* statements, Plaintiff fails to state a claim for defamation per se.

Second, Plaintiff seems to contend that a defamatory implication can be drawn from the statement: "Attempted to earn a Ph.D. in Physics; in Spring 2020, after about 7 years in the program, was dismissed from the University." <u>Id.</u>, ¶¶ 66–67. Plaintiff claims that the statement "gave the false impression that he was dismissed from the lab for reasons related to his academic abilities . . . ." and gave the implication that Plaintiff "was properly dismissed from Virginia Tech . . . ." <u>Id.</u> Those conclusory allegations are a dastardly attempt to extend the meaning of the statement beyond its ordinary and common reading. The statement makes no reference to Plaintiff's academic prowess—or lack thereof—and does not offer any commentary as to the legitimacy of Virginia Tech's



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0407\
4844-6932-8357 .v5

decision to dismiss Plaintiff from the university. Because "inferences cannot rise above the language of the documents or statements themselves" or "extend the meaning of the words used," Plaintiff fails to state a claim for defamation by implication. Plaintiff cannot hang a defamation by innuendo claim merely on his belief that Virginia Tech was wrong to dismiss him. As such, Count III should be dismissed for failure to state a claim.

### CONCLUSION

WHEREFORE, defendants Virginia Polytechnic Institute and State University, Timothy Sands, Alexey Onufriev, and Tamara Cherry-Clarke, by counsel, respectfully request entry of an Order granting Defendants' Motion to Dismiss, dismissing this case, and granting such further relief as the Court deems just and proper.

Respectfully submitted,

VIRGINIA POLYTECHNIC INSTITUTE AND
STATE UNIVERSITY, TIMOTHY SANDS, ALEXEY
ONUFRIEV, and TAMARA CHERRY-CLARKE

/s/_____
Katherine C. Londos (VSB #: 36848)
Nathan H. Schnetzler (VSB #: 86437)
FRITH ANDERSON + PEAKE, P.C.
29 Franklin Road, SW
P.O. Box 1240
Roanoke, Virginia 24006-1240
Phone: 540/772-4600
Fax:    540/772-9167
Email: klondos@faplawfirm.com
        nschnetzler@faplawfirm.com



FAP
FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0407\
4844-6932-8357 .v5

Kay Heidbreder (VSB No.: 22288)
University Legal Counsel and
Senior Assistant Attorney General
*heidbred@vt.edu*
M. Hudson McClanahan (VSB No.: 46363)
*hud3@vt.edu*
Kristina J. Hartman (VSB No.: 92279)
*kjhart06@vt.edu*
Stephen F. Capaldo (VSB No.: 74045)
*scapaldo@vt.edu*
Associate University Legal Counsel and
Assistant Attorney General
University Legal Counsel (0121)
Burruss Hall, Suite 236, Virginia Tech
800 Drillfield Drive
Blacksburg, VA  24060
Phone: (540) 231-6293
Fax: (540) 231-6474

*Counsel for Defendants*



629.0407\
4844-6932-8357 .v5

**CERTIFICATE OF SERVICE**

     I hereby certify that on August 16, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send notification of such filing to all counsel of record.

/s/ Nathan H. Schnetzler<br/>Of Counsel



629.0407\
4844-6932-8357 .v5