UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

JOHN DOE                                )
                                        )
            Plaintiff,                  )
                                        )
v.                                      )          Civil Action No. 7:21-cv-378
                                        )
VIRGINIA POLYTECHNIC INSTITUTE          )
AND STATE UNIVERSITY, et al.            )
                                        )
            Defendants.                 )

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff John Doe, by counsel, files his brief in opposition to the Virginia Polytechnic Institute and State University ("Virginia Tech"), Alexey Onufriev ("Dr. Onufriev"), Tamara Cherry-Clarke ("Ms. Cherry-Clarke") and Timothy Sands ("Dr. Sands")'s Motion to Dismiss pursuant to Rule 12(b)(1). Mr. Doe states as follows:

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction challenges a court's authority to hear the matter brought by a complaint.

A challenge under Rule 12(b)(1) may proceed as a facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009. When addressing such a facial challenge,  "the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Kerns*, 585 F.3d at 192 (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.1982)). Where the challenge is factual, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192. The court "may

regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indon.*, 370 F.3d 392, 398 (4th Cir. 2004). A plaintiff carries the burden of establishing subject matter jurisdiction. *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999).

Under Rule 12(b)(1), all the facts alleged in the complaint are assumed to be true and the plaintiff is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration. *Adams,* 697 F.2d at 1219 (4th Cir. 1982). A plaintiff need not allege facts in "painstaking detail." *Suntrust Mortgage, Inc. v. Sharpe Mortgage Lending Services of Georgia, Inc.*, 2011 WL 6178221, *3 (E.D. Va. Dec. 12, 2011). Rather, Rule 8(a) requires only a short and plain statement of facts showing that the pleader is entitled to relief. *Id.* "Determining whether a complaint states a plausible claim for relief is 'a context specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Oakes v. Patterson*, 2014 WL 1569427, *2 (W.D. Va. April 17, 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

## FACTUAL BACKGROUND

Mr. Doe, a former graduate student at Virginia Tech, claims that he was expelled from the university in violation of his due process rights pursuant to Section 1983 and further that he was discriminated against by his advisor because of his gender in violation of Title IX.

In 2013, Mr. Doe enrolled at Virginia Tech to pursue a doctorate in physics. In 2015, he began working with Dr. Onufriev. His research focus was disordered proteins. He planned to pursue a career as a pharmaceutical scientist.

Mr. Doe's advisor, Dr. Onufriev, was a well-known molecular bio-physicist whose research generates a considerable amount of money for Virginia Tech. But upon joining Dr. Onufriev's lab, Mr. Doe began suffering severe and intentional discrimination by Dr. Onufriev

2

on account of his gender. For example, Dr. Onufriev appeared to favor female graduate students in the lab. He refused to pay Mr. Doe a stipend from a sizable grant that the lab had received, even though Mr. Doe performed research in support of the grant, and instead, allocated the funds to a female graduate student in the lab. Mr. Doe asked why the female student received a stipend, and Dr. Onufriev reportedly told Mr. Doe, "who can resist a Persian princess?" in front of Mr. Doe and their lab colleagues. Mr. Doe also recalled Dr. Onufriev making uncomfortable remarks about the attractiveness of female presenters at academic conferences. When he voiced a concern to Dr. Onufriev's supervisors in the Physics Department about Dr. Onufriev's conduct, Dr. Onufriev began retaliating against Mr. Doe, including withholding a letter certifying the completion of Mr. Doe's Master's degree; assigning excessive, redundant, and contradictory research tasks; setting false deadlines to publish papers; and, creating a hostile condition in the lab in an effort to cause Mr. Doe to voluntarily resign from the program.

In late-2019, as a result of the gender discrimination and hostile conditions that Mr. Doe experienced in Dr. Onufriev's lab, Mr. Doe developed a tremendous amount of stress, anxiety, and turmoil, which caused him to seek counseling for his mental health. He sought medical treatment at the university's counseling center. Then around the same time, Mr. Doe was falsely accused by another student of having made unwanted advances toward her. Mr. Doe had met the student on a dating app. He denied the allegations. But the accusations, combined with the lab conditions, further caused Mr. Doe's mental health to spiral.

On February 18, 2020, Virginia Tech interimly suspended Mr. Doe pending a student conduct hearing. Mr. Doe met with his counselor and was hospitalized for an extended period of time for mental health treatment. He was discharged from the hospital on February 28, 2020, and that same day, Ms. Cherry-Clarke from the Virginia Tech Office of Student Conduct advised Mr.

Doe that he was being formally charged with violating the university's Title IX policy. On March 5, 2020, Ms. Cherry-Clarke notified Mr. Doe that the university would hold a Title IX student conduct hearing to adjudicate the charge the next day on March 6, 2020 – giving Mr. Doe less than 24 hours to prepare. Mr. Doe asked for an extension. He said he did not have enough time to collect all the evidence that he needed to defend himself at the hearing. Ms. Cherry-Clarke refused. She said 24 hours was enough time to prepare. The hearing went forward, and Mr. Doe was expelled, one semester short of obtaining his PhD.

Mr. Doe is an Iranian citizen with a precarious immigration status having been expelled from the university. He now faces deportation due to his educational visa expiring.

## LAW AND ARGUMENT

### I.      Defendants' Rule 12(b)(1) Motion

In the memorandum in support of the Rule 12(b)(1) motion, the Defendants do not appear to challenge the sufficiency of Mr. Doe's allegations to state a claim for violations of his due process rights pursuant to Section 1983 or gender discrimination under Title IX, or at least not yet. But, the Defendants contend that a) neither Virginia Tech nor its officials are "persons" for purposes of Section 1983, and b) individuals are not proper parties under Title IX.

The Defendants' motion with respect to proper parties for a Title IX claim is well-taken; that claim should proceed forward against Virginia Tech, not the individual defendants. The motion with respect to Title IX should be granted in part on behalf of the individual defendants but denied in part for Virginia Tech.

The Defendants' motion regarding Section 1983 should be denied insofar as Mr. Doe is seeking injunctive relief to remedy the violations of his due process rights. A plaintiff may sue Virginia Tech's administrators acting in their official capacity for injunctive relief.

## II.     Section 1983

### a.     *Virginia Tech is not immune to claims for injunctive relief*

The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. It applies both to an "unconsenting State" in suits brought by private citizens, *Edelman v. Jordan*, 415 U.S. 651 (1974), and "state agents and state instrumentalities", *Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997).

The Eleventh Amendment does not preclude individuals from bringing suit against state officials for prospective injunctive or declaratory relief designed to remedy ongoing violations of federal law. *See Ex parte Young,* 209 U.S. 123 (1908); *DeBauche v. Trani,*191 F.3d 499, 505 (4th Cir.1999) (citing *Green v. Mansour,* 474 U.S. 64, 68 (1985)); *see also Lapides v. Bd. of Regents Univ. Sys.*, 535 U.S. 613, 620 (2002) (noting that "suits for money damages against the State [as opposed to injunctive relief] are "the heart of the Eleventh Amendment's concern.").

Mr. Doe proceeds under *Ex Parte Young*: he is suing under Section 1983 for injunctive relief, not monetary damages. Under the exception, a private individual may invoke the Court's jurisdiction to seek a remedy for ongoing violations of federal law. *See, e.g. Verizon Maryland, Inc. v. Public Service Comm'n of* Maryland, 535 U.S. 635, 646 (2002) (holding that *Ex Parte Young* permitted action seeking injunctive and declaratory relief); *Lynn v. West*, 134 F.3d 582, 587-88 (4th Cir. 1998) (holding that *Ex Parte Young* permitted a challenge to North Carolina's Drug Tax seeking a declaration that the tax was unconstitutional and an injunction precluding state defendants from further enforcement of it); *Ross v. Meese*, 818 F.2d 1132, 1134-35 (4th Cir. 1987) (holding that plaintiff properly stated a claim based upon an illegal search of her home).

5

The due process violations that deprived Mr. Doe of his educational progress are ongoing. He was expelled one semester short of graduation. The school has persisted in keeping the hearing outcome in his file, and the effects will continue in violation of federal law unless and until he is able to obtain injunctive relief from this Court to remedy the violation of his due process rights. The Complaint establishes that Virginia Tech was acting through its employees under state authority, when such persons adjudicated and imposed the disciplinary sanctions.

### b.   *Mr. Doe has stated a claim for violations of due process*

Mr. Doe claims he was deprived of due process during the student conduct process when he was forced to go forward with the Title IX hearing without a meaningful opportunity to prepare. Less than 24 hours to prepare for and attend a misconduct hearing is insufficient.

Mr. Doe understands that this Court does not sit as an appellate officer for the Virginia Tech Student Conduct System. It is not the role of this Court to revisit the merits of the conduct allegations against Mr. Doe. However, this Court does enforce the Constitution and determine whether Virginia Tech, in arriving at its result, complied with the Due Process Clause.

When it comes to due process, the "opportunity to be heard" is the constitutional minimum. *Grannis v. Ordean*, 234 U.S. 385, 394 (1914). Determining what being "heard" looks like in each particular case is a harder question. The Supreme Court has declined to set out a universal rule and instead instructs lower courts to consider the parties' competing interests. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *Goss v. Lopez*, 419 U.S. 565, 579 (1975).

At a minimum, a public university in the context of disciplinary proceedings must provide the accused notice of the violation and an opportunity to be heard, *Goss v. Lopez*, 419 U.S. 565, 579 (1975). The precise contours of these procedural protections remain "flexible," and may vary as the "particular situation demands." *Butler v. Rector & Bd. of Visitors of Coll. of*

*William & Mary*, 121 F. App'x 515, 519-20 (4th Cir. 2005) (quoting *Mallette v. Arlington Cty. Employees' Supp. Retirement Sys. II*, 91 F.3d 630, 630 (4th Cir. 1996); *see also Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 90 (1978). Where a student faces possible expulsion or suspension, that student must receive, at a minimum, "advance notice of the charges, a fair opportunity to be heard, and an impartial decision-maker." *Henson v. Honor Comm. of Univ. of Va.*, 719 F.2d 69, 74 (4th Cir. 1983); *see also Butler*, 121 F. App'x at 519-20.

The Fourth Circuit has embraced, and the Western District of Virginia has consistently applied, the following due process standard further defining student due process rights:

> The notice should contain a statement of the specific charges and grounds which, if proven, would justify expulsion under the regulations of the [University]. The nature of the hearing should vary depending upon the circumstances of the particular case. The case before us requires **something more than an informal interview with an administrative authority** of the college. By its nature, a charge of misconduct, as opposed to a failure to meet the scholastic standards of the college, depends upon a collection of the facts concerning the charged misconduct, easily colored by the point of view of the witnesses. In such circumstances, a hearing which gives the…administrative authorities of the college an opportunity to **hear both sides** in **considerable detail** is best suited to protect the rights of all involved. This is **not to imply that a full-dress judicial hearing, with the right to cross-examine witnesses**, is required. Such a hearing, with the attending publicity and disturbance of college activities might be detrimental to the college's educational atmosphere and impracticable to carry out. Nevertheless, the **rudiments of an adversary proceeding may be preserved** without encroaching upon the interests of the college.

*Cobb v. Rector & Visitors of Univ. of Va.*, 69 F. Supp. 2d 815, 828-29 (W.D. Va. 1999) (emphasis added) (alteration and omissions in original) (quoting *Dixon v. Ala. State Bd. of Educ.*, 294 F.2d 150, 158-59 (5th Cir. 1961)); *see also Henson v. Honor Comm. of Univ. of Va.*, 719 F.2d 69, 74 (4th Cir. 1983) ("Although Dixon was decided more than twenty years ago, its summary of minimum due process requirements for disciplinary hearings in an academic setting is still accurate today.").

7

In *Dixon*, the court said that due process required an opportunity for the student to present his own defense and to produce either oral testimony or written affidavits of witnesses in his behalf. 294 F.2d at 159. In *Henson*, a student at the University of Virginia was expelled for honor code violations. 719 F.2d 69 at 74. The Fourth Circuit held that Henson had been afforded due process because, among other reasons, he was given "adequate notice of the charges against him and the opportunity to be heard by disinterested parties"; and, his accusers were required to "face the student at the hearing and state the basis of their allegations," and "submit to cross-examination by the student, or his designated student counsel, and by the members of the hearing committee." *Id.* at 73-74.

Therefore, a student at Virginia Tech accused of misconduct must receive notice of the charges; a fair opportunity to be heard; and, a decision before an impartial decision-maker. As the court held in *Dixon*, a fair opportunity to be heard means "something more than an informal interview with an administrative authority." There must be "an opportunity to hear both sides in considerable detail" and while that does not imply a full-dress judicial hearing with cross-examination, the university must at least offer "the rudiments of an adversary proceeding."

Within the Fourth Circuit, it seems well established that the student should at least know the evidence and witnesses against them, to be afforded with the "rudiments of an adversary proceeding" and a "fair opportunity to be heard." In Mr. Doe's case, he was denied his due process right of a meaningful hearing because Virginia Tech declined to provide Mr. Doe with sufficient notice or time to prepare. He was hospitalized; discharged from care; told of the charges by the university and given the hearing date less than 24 hours before he was expected to show up and defend himself against a charge that could (and did) result in expulsion. While the

Defendants do not at this stage challenge the sufficiency of these allegations to support a claim, Mr. Doe has nonetheless asserted sufficient facts to invoke this Court's jurisdiction.

For the above stated reasons, Mr. Doe moves the Court to deny the Rule 12(b)(1) motion to dismiss and proceed against Virginia Tech's officials under Section 1983 and against Virginia Tech under Title IX.

August 30, 2021                     Respectfully submitted,

                                    JOHN DOE

                                    By: _____
                                              Of Counsel

Robert E. Dean, Esq. (VSB No. 80288)
ROB DEAN LAW
401 Campbell Ave., Ste. 302
Roanoke, Virginia 24016
Phone:  (540) 585-1776
Fax:       (540) 301-0833
Email:    rob@robdeanlaw.com

*Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 30, 2021, the foregoing pleading was filed with the Clerk

of the Clerk of Court and served via CM/ECF the following counsel of record:

> Katherine C. Londos (VSB No. 36848)
> Nathan H. Schnetzler (VSB No. 86437)
> FRITH ANDERSON + PEAKE, P.C.
> 29 Franklin Road, SW
> P.O. Box 1240
> Roanoke, Virginia 24006-1240 Phone: 540/772-4600
> Fax: 540/772-9167
> Email: klondos@faplawfirm.com
> nschnetzler@faplawfirm.com
>
> Kay Heidbreder (VSB No. 22288)
> M. Hudson McClanahan (VSB No. 46363)
> Kristina J. Hartman (VSB No. 92279)
> University Legal Counsel (0121)
> 800 Drillfield Drive
> Blacksburg, VA 24061
> Phone: (540) 231-6293
> Fax: (540) 231-6474
> Email: heidbred@vt.edu
> Email: hud3@vt.edu
> Email: kjhart06@vt.edu
>
> *Counsel for Defendants*