UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

| | |
|---|---|
| JOHN DOE<br><br>　　　　Plaintiff,<br><br>v.<br><br>VIRGINIA POLYTECHNIC INSTITUTE<br>AND STATE UNIVERSITY, et al.<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)　Civil Action No. 7:21-cv-378<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANT'S 12(B)(6) MOTION TO DISMISS**

Plaintiff John Doe, by counsel, files his brief in opposition to the Virginia Polytechnic Institute and State University ("Virginia Tech"), Alexey Onufriev ("Dr. Onufriev"), Tamara Cherry-Clarke ("Ms. Cherry-Clarke") and Timothy Sands ("Dr. Sands")'s Motion to Dismiss pursuant to Rule 12(b)(6). Mr. Doe states as follows:

**LEGAL STANDARD**

In a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a "court must regard as true all of a plaintiff's well-pleaded allegations …as well as any facts that could be proven consistent with those allegations." *Jones v. Imaginary Images, Inc.*, 2012 WL 3257888, *5 (E.D. Va. Aug. 8, 2012). The complaint "need not be supported by evidence but must 'state a claim for relief that is plausible on its face.'" *Id.* (quoting *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009)). "If the complaint alleges….each of the elements of 'some viable legal theory,' the plaintiff should be given the opportunity to prove that claim." *Id.* (quoting *Bell Atl.Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007)).

1

Under Rule 12(b)(1), all the facts alleged in the complaint are assumed to be true and the plaintiff is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration. *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir. 1982).

A plaintiff need not allege facts in "painstaking detail." *Suntrust Mortgage, Inc. v. Sharpe Mortgage Lending Services of Georgia, Inc.*, 2011 WL 6178221, *3 (E.D. Va. Dec. 12, 2011). Rather, Rule 8(a) requires only a short and plain statement of facts showing that the pleader is entitled to relief. *Id.* "Determining whether a complaint states a plausible claim for relief is 'a context specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Oakes v. Patterson*, 2014 WL 1569427, *2 (W.D. Va. April 17, 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

## FACTUAL BACKGROUND

Mr. Doe, a former graduate student at Virginia Tech, claims that he was expelled from the university in violation of his due process rights pursuant to Section 1983 and further that he was discriminated against by his advisor because of his gender in violation of Title IX.

In 2013, Mr. Doe enrolled at Virginia Tech to pursue a doctorate in physics. In 2015, he began working with Dr. Onufriev. His research focus was disordered proteins. He planned to pursue a career as a pharmaceutical scientist.

Mr. Doe's advisor, Dr. Onufriev, was a well-known molecular bio-physicist whose research generates a considerable amount of money for Virginia Tech. But upon joining Dr. Onufriev's lab, Mr. Doe began suffering severe and intentional discrimination by Dr. Onufriev on account of his gender. For example, Dr. Onufriev appeared to favor female graduate students in the lab. He refused to pay Mr. Doe a stipend from a sizable grant that the lab had received, even though Mr. Doe performed research in support of the grant, and instead, allocated the funds

2

to a female graduate student in the lab. Mr. Doe asked why the female student received a stipend, and Dr. Onufriev reportedly told Mr. Doe, "who can resist a Persian princess?" in front of Mr. Doe and their lab colleagues. Mr. Doe also recalled Dr. Onufriev making uncomfortable remarks about the attractiveness of female presenters at academic conferences. When he voiced a concern to Dr. Onufriev's supervisors in the Physics Department about Dr. Onufriev's conduct, Dr. Onufriev began retaliating against Mr. Doe, including withholding a letter certifying the completion of Mr. Doe's Master's degree; assigning excessive, redundant, and contradictory research tasks; setting false deadlines to publish papers; and, creating a hostile condition in the lab in an effort to cause Mr. Doe to voluntarily resign from the program.

In late-2019, as a result of the gender discrimination and hostile conditions that Mr. Doe experienced in Dr. Onufriev's lab, Mr. Doe developed a tremendous amount of stress, anxiety, and turmoil, which caused him to seek counseling for his mental health. He sought medical treatment at the university's counseling center. Then around the same time, Mr. Doe was falsely accused by another student of having made unwanted advances toward her. Mr. Doe had met the student on a dating app. He denied the allegations. But the accusations, combined with the lab conditions, further caused Mr. Doe's mental health to spiral.

On February 18, 2020, Virginia Tech interimly suspended Mr. Doe pending a student conduct hearing. Mr. Doe met with his counselor and was hospitalized for an extended period of time for mental health treatment. He was discharged from the hospital on February 28, 2020, and that same day, Ms. Cherry-Clarke from the Virginia Tech Office of Student Conduct advised Mr. Doe that he was being formally charged with violating the university's Title IX policy. On March 5, 2020, Ms. Cherry-Clarke notified Mr. Doe that the university would hold a Title IX student conduct hearing to adjudicate the charge the next day on March 6, 2020 – giving Mr.

Doe less than 24 hours to prepare. Mr. Doe asked for an extension. He said he did not have enough time to collect all the evidence that he needed to defend himself at the hearing. Ms. Cherry-Clarke refused. She said 24 hours was enough time to prepare. The hearing went forward, and Mr. Doe was expelled, one semester short of obtaining his PhD.

Mr. Doe is an Iranian citizen with a precarious immigration status having been expelled from the university. He now faces deportation due to his educational visa expiring.

## LAW AND ARGUMENT

### I.     Mr. Doe's Title IX claim is not time-barred.

Virginia Tech first argues that Mr. Doe's claim under Title IX is time-barred. Mr. Doe alleged that Dr. Onufriev created a pervasive, hostile lab condition that favored female lab researchers, until Mr. Doe was expelled from the university in March 2020. Mr. Doe filed his complaint in June 2021. Virginia Tech seeks to limit Mr. Doe's complaint to being denied grant funding in 2018, as the end-point of the Title IX claim. But Mr. Doe's allegations go beyond 2018. He contends that Dr. Onufriev favored female researchers and discriminated against him on the issue of research stipends and other hostile lab conditions throughout 2019 and 2020, until he was eventually expelled in his last semester. The violations of Title IX were ongoing and Mr. Doe has asserted facts to support a Title IX claim within the two-year statute of limitations.

### II.    Mr. Doe has stated a due process claim under Section 1983.

#### a.    *Mr. Doe has a property interest in his continuing education*

Virginia Tech first contends Mr. Doe failed to allege a property interest to support a claim under Section 1983. In order to plead a due process claim, the plaintiff must allege facts to show that he was "deprived of life, liberty or property, by government action." *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997).

In Mr. Doe's case, he was deprived of his property interest in continuing his education at Virginia Tech and earning his doctorate in May 2020. Mr. Doe paid tuition to enroll at Virginia Tech while he pursued his degree. He otherwise complied with its policies and procedures to continue his enrollment. He had a property interest in the pursuit of his education, which the university could not disregard at will, but only upon the application of rules and procedures.

The strong weight of authority is that students have a property interest in continuing to receive their paid-for post-secondary public education.

As the Judge Dillon held in *Doe v. Alger*, 175 F. Supp. 3d 646, 657 (W.D. Va. March 31, 2016), "[p]roperty rights to public education clearly exist when a state statute mandates a free education." *Id.* (citing *Goss v. Lopez*, 419 U.S. 565 (1975); *see also E.g.*, *Regents of the Univ. of Mich. v. Ewing,* 474 U.S. 214, 223 (1985) (assuming a "constitutionally protectable property right…in continued enrollment"); *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 84–85 (1978) (assuming a liberty or property interest in continuing a medical education); *Butler v. Rector & Bd. of Visitors of Coll. of Wm. & Mary,* 121 F. App'x 515, 518 (4th Cir. 2005) (assuming "a property interest in continued enrollment"); *Tigrett v. Rector & Visitors of Univ. of Va.*, 290 F.3d 620, 627 (4th Cir. 2002) (assuming "some constitutionally protected interest in continued enrollment"); *Henson v. Honor Comm. of Univ. of Va.*, 719 F.2d 69, 73 (4th Cir. 1983) (assuming "a protectable liberty or property interest in [disciplinary] proceeding"); *see also Krasnow v. Virginia Polytechnic Institute*, 414 F. Supp. 55, 56 (W.D. Va. 1976) ("[S]tudents enrolled in state supported institutions acquire a contractual right for the period of enrollment to attend, subject to compliance with scholastic and behavioral rules of the institution, and to dismissal for violations thereof, provided the dismissal was not arbitrary or capricious."), *aff'd*, 551 F.2d 591 (4th Cir. 1977).

Numerous other circuits have recognized a property interest in the pursuit of a public education. *See, e.g., Gaspar v. Bruton*, 513 F.2d 843, 845, 850 (10th Cir. 1975) (where student at a vocational-technical school pursuing courses in practical nursing "paid the requisite enrollment fees to the School and maintained adequate academic grade points in the objective or classroom portion of the course," court holds that "a [property] right must be recognized to have vested with [plaintiff], and the more prominently so in that she paid a specific, separate fee for enrollment and attendance at the [school]."). *Cf. Gunasekera v. Irwin*, 551 F.3d 461, 467 (6th Cir. 2009) (holding that the plaintiff professor had a property interest in his Graduate Faculty status provided he continued to meet the criteria the University generally required for that status; "an employer's custom and practice can form the basis for a protected property interest.").

Accordingly, Mr. Doe had a legitimate property interest in his continuing education that is protected by the Fourteenth Amendment. He has stated a claim for injunctive relief under Section 1983. While he cannot (and does not) assert a claim for money damages under Section 1983, he has stated a claim for injunctive relief, and the motion to dismiss should be denied.

**b.** *Virginia Tech failed to provide due process*

Mr. Doe claims he was deprived of due process during the student conduct process when he was forced to go forward with the Title IX hearing without a meaningful opportunity to prepare. Less than 24 hours to prepare for and attend a misconduct hearing is insufficient.

Mr. Doe understands that this Court does not sit as an appellate officer for the Virginia Tech Student Conduct System. It is not the role of this Court to revisit the merits of the conduct allegations against Mr. Doe. However, this Court does enforce the Constitution and determine whether Virginia Tech, in arriving at its result, complied with the Due Process Clause.

When it comes to due process, the "opportunity to be heard" is the constitutional minimum. *Grannis v. Ordean*, 234 U.S. 385, 394 (1914). Determining what being "heard" looks like in each particular case is a harder question. The Supreme Court has declined to set out a universal rule and instead instructs lower courts to consider the parties' competing interests. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *Goss v. Lopez*, 419 U.S. 565, 579 (1975).

At a minimum, a public university in the context of disciplinary proceedings must provide the accused notice of the violation and an opportunity to be heard, *Goss v. Lopez*, 419 U.S. 565, 579 (1975). The precise contours of these procedural protections remain "flexible," and may vary as the "particular situation demands." *Butler v. Rector & Bd. of Visitors of Coll. of William & Mary*, 121 F. App'x 515, 519-20 (4th Cir. 2005) (quoting *Mallette v. Arlington Cty. Employees' Supp. Retirement Sys. II*, 91 F.3d 630, 630 (4th Cir. 1996); see also *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 90 (1978). Where a student faces possible expulsion or suspension, that student must receive, at a minimum, "advance notice of the charges, a fair opportunity to be heard, and an impartial decision-maker." *Henson v. Honor Comm. of Univ. of Va.*, 719 F.2d 69, 74 (4th Cir. 1983); *see also Butler*, 121 F. App'x at 519-20.

The Fourth Circuit has embraced, and the Western District of Virginia has consistently applied, the following due process standard further defining student due process rights:

> The notice should contain a statement of the specific charges and grounds which, if proven, would justify expulsion under the regulations of the [University]. The nature of the hearing should vary depending upon the circumstances of the particular case. The case before us requires **something more than an informal interview with an administrative authority** of the college. By its nature, a charge of misconduct, as opposed to a failure to meet the scholastic standards of the college, depends upon a collection of the facts concerning the charged misconduct, easily colored by the point of view of the witnesses. In such circumstances, a hearing which gives the…administrative authorities of the college an opportunity to **hear both sides** in **considerable detail** is best suited to protect the rights of all involved. This is **not to imply that a full-dress judicial hearing, with the right to cross-examine witnesses**, is required. Such a hearing, with the attending publicity and disturbance of college activities might be detrimental to the

7

> college's educational atmosphere and impracticable to carry out. Nevertheless, the **rudiments of an adversary proceeding may be preserved** without encroaching upon the interests of the college.

*Cobb v. Rector & Visitors of Univ. of Va.*, 69 F. Supp. 2d 815, 828-29 (W.D. Va. 1999) (emphasis added) (alteration and omissions in original) (quoting *Dixon v. Ala. State Bd. of Educ.*, 294 F.2d 150, 158-59 (5th Cir. 1961)); *see also Henson v. Honor Comm. of Univ. of Va.*, 719 F.2d 69, 74 (4th Cir. 1983) ("Although Dixon was decided more than twenty years ago, its summary of minimum due process requirements for disciplinary hearings in an academic setting is still accurate today.").

In *Dixon*, the court said that due process required an opportunity for the student to present his own defense and to produce either oral testimony or written affidavits of witnesses in his behalf. 294 F.2d at 159. In *Henson*, a student at the University of Virginia was expelled for honor code violations. 719 F.2d 69 at 74. The Fourth Circuit held that Henson had been afforded due process because, among other reasons, he was given "adequate notice of the charges against him and the opportunity to be heard by disinterested parties"; and, his accusers were required to "face the student at the hearing and state the basis of their allegations," and "submit to cross-examination by the student, or his designated student counsel, and by the members of the hearing committee." *Id.* at 73-74.

Therefore, a student at Virginia Tech accused of misconduct must receive notice of the charges; a fair opportunity to be heard; and, a decision before an impartial decision-maker. As the court held in *Dixon*, a fair opportunity to be heard means "something more than an informal interview with an administrative authority." There must be "an opportunity to hear both sides in considerable detail" and while that does not imply a full-dress judicial hearing with cross-examination, the university must at least offer "the rudiments of an adversary proceeding."

8

Within the Fourth Circuit, it seems well established that the student should at least know the evidence and witnesses against them, to be afforded with the "rudiments of an adversary proceeding" and a "fair opportunity to be heard."

In Mr. Doe's case, he was denied his due process right of a meaningful hearing because Virginia Tech declined to provide Mr. Doe with sufficient notice or time to prepare. He was hospitalized; discharged from care; told of the charges by the university and given the hearing date less than 24 hours before he was expected to show up and defend himself against a charge that could (and did) result in expulsion. While the Defendants do not at this stage challenge the sufficiency of these allegations to support a claim, Mr. Doe has nonetheless asserted sufficient facts to invoke this Court's jurisdiction.

Virginia Tech relies on *Tigrett v. Rector & Visitors of Univ. of Va.*, 290 F.3d 620, 627 (4th Cir. 2002) to contend that providing a student with less than 24 hours' notice of a Title IX hearing is constitutionally sufficient.

Virginia Tech omits key facts from *Tigrett* and misstates its holding. In *Tigrett*, the University of Virginia notified the defendant students on February 16, 1998, that they were being charged with sexual assault, and *scheduled the trial nine months later* on November 20, 1998. Virginia Tech suggests that the students in *Tigrett* were notified of the trial two days before. Not true. Rather, the students in *Tigrett* received an amended notice of the charges 48-hours before the trial to add a related disorderly conduct charge, which was effectively a lesser included of another charge they already knew about. The students in *Tigrett* otherwise had more than nine months to review the evidence and prepare for trial – unlike Mr. Doe, who was discharged from a psychiatric hospital and expected to defend himself with less than 24 hours' notice.

9

It strains credulity to argue the decision in *Tigrett* can be comfortably extended to cover Mr. Doe's situation. Mr. Doe received notice of the trial with less than 24 hours to prepare. That was not the situation in *Tigrett*. Rather, Mr. Doe's case is more analogous to the facts in *Tanyi v. Appalachian State Univ.*, where a student was advised of a harassment charge with less than 24 hours to prepare for a hearing the next day. 2015 U.S. Dist. LEXIS 95577 (W.D.N.C. 2015). The court in *Tanyi* denied the university's motion to dismiss, holding that "at a minimum due process requires adequate notice," and less than 24 hours to prepare is insufficient. *Id.* at *17-18. *See also* Doe v. Rector & Visitors of George Mason Univ., 149 F. Supp. 3d 602 (E.D. Va. 2016) (notice must be sufficient to allow an accused student "'a meaningful opportunity to prepare.'") (quoting citing *Flaim v. Med. Coll. Ohio*, 418 F.3d 629, 638 (6th Cir. 2005) (stating that constitutionally adequate notice must afford "a meaningful opportunity to prepare for the hearing")).

    c.    *Qualified immunity does not apply*

The Defendants raise the defense of qualified immunity to the Section 1983 claim. But, qualified immunity applies insofar as the individual defendants are sued in their individual capacities for federal civil rights violations. Here, the individual defendants are sued under Section 1983 in their official capacities for injunctive relief. Thus, the defense does not apply.

**III.**    **Mr. Doe has stated a claim under Title IX.**

Title IX prohibits federally-supported educational institutions from discrimination on the basis of sex. 20 U.S.C. § 1681(a) ("No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance …"). It is enforceable through an implied private right of action, *Cannon v. Univ. of Chicago*, 441 U.S. 677 (1979).

Mr. Doe contends that Virginia Tech discriminated against him on the basis of his gender when, first, its employee, Dr. Onufriev, favored female students in the laboratory and created a hostile condition against male students like Mr. Doe who complained, and second, Ms. Cherry-Clarke, in refusing to fairly adjudicate Mr. Doe's Title IX charge, or grant him a reasonable time to prepare, discriminated against Mr. Doe due to her propensity to support women victims of sexual assault and contrary to her role as an neutral participant in the Title IX process.

Under *Sheppard v. Visitors of Va. State Univ.*, the Fourth Circuit held that to state a Title IX in the context of university disciplinary proceedings, the question is whether, "do the alleged facts, if true, raise a plausible inference that the university discriminated against [the student] on the basis of sex?" 993 F.3d 230 (4th Cir. 2021) (citing *Doe v. Purdue Univ.*, 928 F.3d 652, 667 (7th Cir. 2019)). The plaintiff must allege sufficient facts to show a link between the student's sex and the university's proceeding. *Id.* at 236-237 (holding that "on the basis of sex" requires "but-for" causation in Title IX claims alleging discriminatory disciplinary proceedings).

Here, Mr. Doe has alleged sufficient facts to support both claims of gender discrimination at Virginia Tech. First, he has alleged enough facts to plausibly infer that Dr. Onufriev favored female students in his lab over male students like Mr. Doe. He asserts that Dr. Onufriev awarded research stipends to female students, but not male students like Mr. Doe; that Dr. Onufriev would make offensive, lewd remarks about women researchers and students in front of Mr. Doe; and, that Dr. Onufriev retaliated against Mr. Doe when he complained about favoritism. Further, Mr. Doe has alleged sufficient facts to plausibly infer that Ms. Cherry-Clarke rushed Mr. Doe's Title IX hearing and refused a reasonable request for an extension because of her advocacy for women on Virginia Tech's campus. There can be no other plausible reason to refuse Mr. Doe's request for an extension. She gave him less than 24 hours' notice for a trial, knowing he had just been

discharged from a hospital, and that 24 hours would be wholly insufficient to prepare, review evidence, draft questions for witnesses, and meaningfully defend himself. Put together, Mr. Doe has asserted enough facts to proceed on a Title IX claim against Virginia Tech.

### IV. Mr. Doe has stated a claim for defamation against Dr. Onufriev

A claim for defamation requires a) publication of b) an actionable statement with c) the requisite intent. *Tharpe v. Saunders*, 285 Va. 476, 480 (2013). To be "actionable," the statement must be both false and defamatory. *Id.* at 481.

Defamatory words are those "tend[ing] so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Restatement (Second) of Torts § 559; *see Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993). Defamatory language "tends to injure one's reputation in the common estimation of mankind, to throw contumely, shame, or disgrace upon him, or which tends to hold him up to scorn, ridicule, or contempt, or which is calculated to render him infamous, odious, or ridiculous." *Moss v. Harwood*, 102 Va. 386, 392 (1904); *see Adams v. Lawson*, 58 Va. (17 Gratt.) 250, 255-56 (1867) ("It is sufficient if the language tends to injure the reputation of the party, to throw contumely, or to reflect shame and disgrace upon him, or to hold him up as an object of scorn, ridicule or contempt.").

Mr. Doe has charged Dr. Onufriev with defamation. He alleges that Dr. Onufriev made the following false statement about him: "Attempted to earn a Ph.D. in Physics; in Spring 2020, after about 7 years in the program, was dismissed from the University." He alleges that after Mr. Doe filed his initial complaint with the federal court, Dr. Onufriev posted the above statement about Mr. Doe on the lab's website. He further alleges that Dr. Onufriev knew Mr. Doe was

looking for work and given the unique spelling of Mr. Doe's name due to Mr. Doe's Iranian heritage, potential employers were likely to see the statement online.

The statement itself is false. By its use of the word "Attempt[]" and emphasis on "7 years in the program," it suggests that Mr. Doe tried, and failed, due to academic reasons to obtain his doctorate. The implication is that Mr. Doe was unqualified to earn a degree, and in turn, would be an unfit employee within the broader pharmaceutical research community. Furthermore, the statement itself violated Mr. Doe's student privacy rights under the Family Educational Rights and Privacy Act (FERPA); it failed to provide any context for Mr. Doe's dismissal, or that Mr. Doe was contesting his dismissal in federal court. Mr. Doe has struggled to find work after he was let go from Virginia Tech. That Dr. Onufriev would publicize his dismissal – and falsely suggest that it was due to reasons related to his aptitude – was done so to further harm Mr. Doe and retaliate against him for having filed a Title IX lawsuit about Dr. Onufriev's lab.

Having alleged sufficient facts to support claims under Section 1983, Title IX, and for defamation, Mr. Doe moves the Court to deny the Rule 12(b)(6) motion to dismiss.

August 30, 2021          Respectfully submitted,

                         JOHN DOE

                         By: _____
                                      Of Counsel

Robert E. Dean, Esq. (VSB No. 80288)
ROB DEAN LAW
401 Campbell Ave., Ste. 302
Roanoke, Virginia 24016
Phone:  (540) 585-1776
Fax:      (540) 301-0833
Email:   rob@robdeanlaw.com

*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 30, 2021, the foregoing pleading was filed with the Clerk of the Clerk of Court and served via CM/ECF the following counsel of record:

>Katherine C. Londos (VSB No. 36848)
>Nathan H. Schnetzler (VSB No. 86437)
>FRITH ANDERSON + PEAKE, P.C.
>29 Franklin Road, SW
>P.O. Box 1240
>Roanoke, Virginia 24006-1240 Phone: 540/772-4600
>Fax: 540/772-9167
>Email: klondos@faplawfirm.com
>nschnetzler@faplawfirm.com
>
>Kay Heidbreder (VSB No. 22288)
>M. Hudson McClanahan (VSB No. 46363)
>Kristina J. Hartman (VSB No. 92279)
>University Legal Counsel (0121)
>800 Drillfield Drive
>Blacksburg, VA 24061
>Phone: (540) 231-6293
>Fax: (540) 231-6474
>Email: heidbred@vt.edu
>Email: hud3@vt.edu
>Email: kjhart06@vt.edu
>
>*Counsel for Defendants*