## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

JOHN DOE,                    )
                         )
    Plaintiff,          )
                         )
v.                        )        **Case No. 7:21cv378**
                         )
**VIRGINIA POLYTECHNIC INSTITUTE**  )
**AND STATE UNIVERSITY, et al.,**   )
                         )
    Defendants.       )

### <u>MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)</u>

Defendants Virginia Polytechnic Institute and State University ("Virginia Tech"), Timothy Sands ("Sands"), Alexey Onufriev ("Onufriev"), and Tamara Cherry-Clarke ("Cherry-Clarke") (collectively "Defendants"), by counsel, submit this brief in support of their Motion to Dismiss Pursuant to Rule 12(b)(6).

### <u>STATEMENT OF THE CASE</u>

Plaintiff's Amended Complaint—now the third iteration of his lawsuit against Defendants—challenges a professor's allocation of grant proceeds for a research position and Plaintiff's expulsion from Virginia Tech for violating Virginia Tech's sexual assault policy. ECF No. 21. Originally filed in 2020, the Court dismissed Plaintiff's first lawsuit due to Plaintiff's failure to timely serve the Defendants, failure to demonstrate good cause or excusable neglect for failing to timely serve them, and failure to proceed properly under a pseudonym. <u>Doe v. Va. Polytechnic Inst. & State Univ.</u>, No. 7:20cv711, 2021 WL 2156411, 2021 U.S. Dist. LEXIS 100649 (W.D. Va. May 27, 2021). After Plaintiff filed this action in 2021, Defendants moved to dismiss all of the claims against them, and the Court granted



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0407\
4888-2728-8841 .v5

Defendants' motion from the bench by summary order without an accompanying Memorandum Opinion. ECF No. 19; ECF No. 20.

In his Amended Complaint, Plaintiff claims his expulsion from Virginia Tech resulted in a deprivation of his rights to due process under the Fourteenth Amendment. He also alleges he suffered gender discrimination in violation of Title IX based on Onufriev's "allocation of grant funding and other educational opportunities" to a female student instead of Plaintiff. For the reasons set forth below, Plaintiff's claims *still* fail to set forth a claim for which relief can be granted, and this case must be dismissed *with prejudice*.

<u>**STATEMENT OF ALLEGED FACTS**</u>

Plaintiff was a graduate student at Virginia Tech pursuing a doctoral degree in physics. ECF No. 21, ¶ 10. Onufriev was Plaintiff's graduate advisor. <u>Id.</u>, ¶ 13. After joining Onufriev's lab, sometime in 2018 a researcher from another school approached Plaintiff and asked Plaintiff if Onufriev was "still 'chasing after'" female graduate students. <u>Id.</u>, ¶ 19.[1] At another conference, Onufriev allegedly "told [Plaintiff] *through another grad student* that they needed to go see a 'good poster,'" meaning an attractive female presenter. <u>Id.</u>, ¶ 20 (emphasis added).

Plaintiff also claims that in 2018 Onufriev allocated grant funds to a female student whose work did not involve the grant rather than to Plaintiff. In response to Plaintiff's protests about the decision, Onufriev allegedly said, "who can resist a Persian princess?" <u>Id.</u>, ¶¶ 23–24. According to Plaintiff, Onufriev continued allocating the research assistant grant funding to the female student and tried to attach the grant number to Plaintiff's



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

---

[1]  Recall Plaintiff previously alleged <u>Onufriev</u> asked Plaintiff if Plaintiff was "chasing after" female graduate students. ECF No. 1, ¶ 17.

subsequent research despite Plaintiff's refusals. Id., ¶ 27. After Plaintiff reported the matter to the Chair of the Physics Department, Plaintiff alleges Onufriev withheld "a letter certifying the completion of [Plaintiff's] Master's degree" and assigned "excessive, redundant, and contradictory research tasks; set false deadlines to publish papers, and create[ed] a hostile condition in the lab . . . ." Id., ¶¶ 28, 30.

"Then, in late-2019 and early 2020," another student accused plaintiff of making unwanted sexual advances toward her. Id., ¶ 34. The female student met with a Virginia Tech Title IX investigator in November 2019 regarding the alleged unwanted advances from Plaintiff, but she declined to pursue a formal Title IX complaint against Plaintiff at that time. Id. ¶ 41. Virginia Tech issued a no contact order to Plaintiff at the female student's request. Id. Plaintiff disputed any wrongdoing and claims he had a consensual relationship with the female student. Id., ¶¶ 36–38.

In January 2020, the female student decided to pursue a formal Title IX complaint against Plaintiff. Id., ¶ 42. On February 17, 2020, Virginia Tech's Title IX office notified Plaintiff that he was "under investigation for assault," and on February 18, Virginia Tech placed Plaintiff on an interim suspension pending the outcome of a student conduct hearing. Id., ¶¶ 43–44.[2] Subsequently, Plaintiff visited the Cook Counseling Center at Virginia Tech, was admitted to a local hospital, and received mental health treatment until his release on February 25, 2020. Id., ¶ 47.

Plaintiff met with a Title IX investigator on February 28, 2020 to discuss "the student conduct process" and, on the same day, received a letter from Cherry-Clarke, Virginia Tech's Assistant Director of Student Conduct, "formally charging him with sexual



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

---

[2] Plaintiff previously alleged the University informed him he was under investigation for sexual assault. ECF No. 1, ¶ 29.

629.0407\
4888-2728-8841 .v5

assault . . . ." Id., ¶¶ 48–49. Plaintiff met with Cherry-Clarke on March 3, 2020, and she informed him that he had been charged with violating six of the university's policies on intimate partner contact." Id., ¶ 50. On March 5, 2020, Cherry-Clarke told Plaintiff his student conduct hearing would be the next day. Id., ¶ 51. Plaintiff asked for extra time to prepare for his hearing, but Cherry-Clarke refused his request. Id., ¶¶ 37–38. Plaintiff claims he did not have sufficient time to review the investigation report the university provided him,[3] to meet with an advisor, or to retain counsel to assist at the hearing. Id., ¶ 57. Plaintiff also contends that he did not have sufficient time to make arrangements to have a witness attend the hearing, although he concedes he had sufficient time to obtain a written statement from the witness. Id., ¶ 56. Plaintiff does not allege that he made any effort to obtain a written statement from the witness or even contact that person.

The student conduct hearing went forward on March 6, 2020, and on March 9, Virginia Tech found Plaintiff responsible for sexual assault and dismissed him from the university. Id., ¶¶ 63–64. Doe appealed the decision, but Virginia Tech denied the appeal. Id., ¶ 65.

**ARGUMENT & AUTHORITY**

## I.   Standard of Review

A plaintiff's complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The complaint's factual allegations must produce an inference of liability strong enough to push the



FRITH
ANDERSON
+ PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

---

[3] Plaintiff alleges he did not have sufficient time to review the report provided to him, but he does not allege when he received the report. If Plaintiff intends to base his claim, at least in part, on the lack of sufficient time to review the report, he should be required to disclose to the Court when he did in fact receive it. See ECF No. 24, 41:16–42:8. Plaintiff also had an advisor present at the hearing.

plaintiff's claims "'across the line from conceivable to plausible.'" Id. at 683 (quoting Twombly, 550 U.S. at 570); see also ACA Fin. Guar. Corp. v. City of Buena Vista, 917 F.3d 206, 211 (4th Cir. 2019). To meet the plausibility standard, there must be factual content in a complaint that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

Thus, pleadings that offer mere "'labels and conclusions'" or "'a formulaic recitation of the elements of a cause of action'" will not suffice. Id. at 678 (quoting Twombly, 550 U.S. at 555). Indeed, "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments" need not be accepted as true. Wag More Dogs, LLC v. Cozart, 680 F.3d 359, 365 (4th Cir. 2012). As such, reviewing a complaint is "a context-specific task" requiring the court to "draw on its judicial experience and common sense" in order to determine whether the "complaint states a plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Iqbal v. Hasty, 490 F.3d 143, 157 (2d Cir. 2007)). Still, "[d]istrict judges are not mind readers," ACA Financial Guaranty Corp. v. City of Buena Vista, 298 F. Supp. 3d 834, 855 (W.D. Va. 2018), and a Complaint must comply with the requirements of Rule 8 in order to "unlock the doors of discovery." ACA Fin. Guar. Corp., 917 F.3d at 212 (internal quotations omitted).

## II.  **Plaintiff Fails to State an Actionable Procedural Due Process Claim**

Count I of the Complaint fails to state a claim for relief because Plaintiff fails to allege any deprivation resulted from a custom or policy of Virginia Tech, fails to allege a recognized liberty or property interest, and he concedes he received advance notice and an opportunity to be heard prior to the adverse action.



FRITH ANDERSON +PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

**a. <u>The Official capacity suits against the individuals are duplicative.</u>**

Plaintiff previously asserted that his claims against Sands and Cherry-Clarke were in their official capacity only.[4]  If that is indeed still the case, the official capacity claims against those individual defendants are duplicative of the claim against Virginia Tech and those individuals should be dismissed.

"[A]n official-capacity suit against a state officer 'is not a suit against the official but rather is a suit against the official's office. As such it is no different from a suit against the State itself.'" <u>Hafer v. Melo</u>, 502 U.S. 21, 26 (1991) (quoting <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 71 (1989)). Indeed, an official capacity suit against a government official "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." <u>Monell v. New York Dep't of Soc. Servs.</u>, 436 U.S. 658, 690 n.55 (1978). Thus, a § 1983 claim against an individual in his official capacity is duplicative of a claim against the governmental entity named in the same lawsuit and should be dismissed. <u>Love-Lane v. Martin</u>, 355 F.3d 766, 783 (4th Cir. 2004) (citing <u>Kentucky v. Graham</u>, 473 U.S. 159, 165–66 (1985); <u>Hicks v. Halifax Cnty. Bd. of Educ.</u>, 93 F. Supp. 2d (649, 667 (E.D.N.C. 1999)); <u>see also</u> <u>Kline v. Cleveland Cnty.</u>, No. 1:19cv197, 2020 WL 2858238, 2020 U.S. Dist. LEXIS 96450, at *6 (W.D.N.C. June 2, 2020); <u>Steinberg v. Chesterfield Cnty. Planning Comm'n</u>, No. 3:06cv248, 2007 WL 9759646, 2007 U.S. Dist. LEXIS 7292, at *12 (E.D. Va. Feb. 1, 2007).

Virginia Tech is already named as a defendant in Count I and is the real party in interest for purposes of the official capacity claims. <u>See</u> <u>Kentucky v. Graham</u>, 473 U.S. 159,



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

---

[4]  Plaintiff previously conceded he was not pursuing individual capacity claims against the individual defendants. ECF No. 15, *10; ECF No. 24, 16:11–21. To the extent Plaintiff reverses course, Defendants reserve the right to raise the defense of qualified immunity, which would foreclose his due process claim entirely under <u>Sheppard v. Visitors of Va. State University</u>, 993 F.3d 230, 238, 240 (4th Cir. 2021).

166 (1985). Accordingly, the due process claims against Sands and Cherry-Clarke in their official capacities should be dismissed.

    **b.**  **Plaintiff fails to allege deprivation through a custom or policy.**

Plaintiff's due process claim fails as a matter of law because he fails to allege a deprivation of a federally protected right that resulted from an official custom or policy of Virginia Tech, a necessary element of an official capacity claim. Plaintiff's previous attempt to sidestep this problem, ECF No. 24 at 39:14–40:8, 43:10–20, represents a failure to grasp the fundamentals of 42 U.S.C. § 1983 litigation.

Because official capacity claims against individuals are truly suits against the entity of which the individual is an officer or agent, an official capacity claim "is not a suit against the official personally, for the real party in interest is the entity." Flanagan v. Scearce, No. 7:19cv413, 2021 WL 3722215, 2021 U.S. Dist. LEXIS 158809, *17–18 (W.D. Va. Aug. 23, 2021) (internal quotations omitted). Thus, governmental entities, like Virginia Tech, can be held liable under § 1983 only if the entity's official policy or custom was a "moving force" behind the deprivation. Polk Cnty. v. Dodson, 454 U.S. 312, 326 (1981).

Official capacity claims under § 1983 require an allegation that "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell, 436 U.S. at 690; see also Davison v. Randall, 912 F.3d 666, 688–89 (4th Cir. 2019) (citing Monell, 436 U.S. at 694); Stickley v. Sutherly, 667 F. Supp. 2d 664, 672 n.7 (W.D. Va. 2009) (quoting Kentucky v. Graham, 473 U.S. at 165-66); Thomas v. N.C. Dep't of Corr., No. 7:04-CV-251-F(3), 2006 U.S. Dist. LEXIS 112740, at *6 (E.D.N.C. Feb. 21, 2006); Friday v.



629.0407\
4888-2728-8841 .v5

Commonwealth of Va., No. 3:00cv867, 2001 U.S. Dist. LEXIS 9896, at *10 (E.D. Va. July 12, 2001) (citations omitted).

A custom or policy giving rise to liability includes express policies, laws, ordinances, and regulations, a "decision taken by the highest officials responsible for setting policy in that area of the government's business," or any "widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage' with the force of law." St. Louis v. Praprotnik, 485 U.S. 112, 123, 127 (1988) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 167-68 (1970)). However, an official capacity § 1983 claim cannot stand on allegations of "wrongful conduct of a single officer without any policymaking authority" or even "decisions by subordinate employees" lacking policymaking authority. Collins v. City of Harker Heights, 503 U.S. 115, 121-22 (1992) (citing Oklahoma City v. Tuttle, 471 U.S. 808 (1985); Praprotnik, 485 U.S. 112). Ultimately, even the decisions of individuals with policymaking authority may not be actionable if the decisionmaker lacks "final authority to establish municipal policy with respect to the action ordered." Davison, 912 F.3d at 689 (internal quotations and emphasis omitted).

In Flanagan v. Scearce, a former director of the Pittsylvania County Department of Social Services ("DSS") sued a member of the DSS board of directors and the Pittsylvania County Board of Supervisors for, among other claims, violation of her due process rights. Flanagan, 2021 U.S. Dist. LEXIS 158809, *1. The due process claim was brought against the defendant board member in both his individual and official capacities. Id. The board member moved for partial summary judgment. Id. Addressing the official capacity claims, the Flanagan Court noted that the plaintiff "failed to cite any policy or custom that caused



FAP

FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

or contributed to her termination and attendant constitutional injuries. To the contrary, Flanagan contends that Scearce himself, rather than a policy, played the determinative role in the alleged constitutional violation . . . in contravention of normal board practice." Id. at *18–19.

Similarly, in Davison v. Randall, the Fourth Circuit explained that even if an individual sued in his official capacity has policymaking authority, that is not always sufficient in and of itself to establish liability. Davison, 912 F.3d at 689. In that case, an individual member of the Loudon County Board of Supervisors banned the plaintiff from the member's official Facebook page. Id. at 673, 689. Because there was no evidence that the Loudon Board knew of the Facebook page, "let alone that it acquiesced in Randall's administration of the page and banning of Davison, in particular," the defendant's "one-off, unilateral decision" could not serve as the basis for an official capacity claim. Id. at 690; see also Sutherlin v. Smith, 2016 U.S. Dist. LEXIS 1937, *19–20 (W.D. Va. Feb. 17, 2016) (dismissing official capacity claims against Danville Police Department officers because complaint identified "no department policy and [made] no suggestion that any department policy played a part in the alleged violations of Plaintiff's constitutional rights.").

Here, Plaintiff's due process claim fails for the same reason as the claims in Flanagan, Davison, and Sutherlin. Plaintiff's claim stands on the single act of Cherry-Clarke's alleged denial of a continuance of the student conduct hearing. Doe does not identify any custom or policy of Virginia Tech that caused his alleged deprivation, and he does not even allege that Cherry-Clarke had policymaking authority at Virginia Tech. Doe does not even allege that anyone at Virginia Tech with policymaking authority was aware



FAP

FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0407\
4888-2728-8841 .v5

of the decision and adopted it or tacitly approved it. As such, his due process claim against Virginia Tech fails to state a claim for relief and must be dismissed.

   **c.   <u>Plaintiff fails to allege a liberty or property interest.</u>**

   As additional and alternative grounds for dismissal of Count I, Plaintiff fails to allege a protected property or liberty interest to buttress his due process claim.

   The Fourteenth Amendment provides that "no state shall make or enforce any law which shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. In order to allege a due process claim under the Fourteenth Amendment, Plaintiff must allege facts sufficient to show "(1) a cognizable liberty or property interest; (2) the deprivation of that interest by some form of state action; and (3) that the procedures employed were constitutionally inadequate." <u>Kendall v. Balcerzak</u>, 650 F.3d 515, 528 (4th Cir. 2011).

   At bottom, the deprivation of a protected interest warrants some sort of notice and opportunity to be heard. <u>Goss v. Lopez</u>, 419 U.S. 565, 579 (1975). But a procedural due process violation occurs only with respect to the deprivation of liberty and property interests that the Fourteenth Amendment actually encompasses. <u>Bd. of Regents v. Roth</u>, 408 U.S. 564, 569 (1972).

   Plaintiff describes his alleged liberty and property interests as a protected liberty and property interest in his "continued education at Virginia Tech" and a "liberty interest in his good name, reputation, and integrity." ECF No. 21, ¶¶ 71, 73. Whether he satisfactorily alleges a protected property or liberty interest is a pure question of law. <u>Tompkins v. U.S. Dep't of Veterans Affairs</u>, 16 F.4th 733, 739, n.7 (10th Cir. 2021).



FA+P

FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

- 10 -

**1. Plaintiff does not have a liberty or property interest in his education.**

First, there is no liberty interest in a college student's continued education. See Jacob Doe v. Va. Tech, No. 7:19cv249, 2020 WL 1309461, 2020 U.S. Dist. LEXIS 47754, at *12–13 (W.D. Va. Mar. 19, 2020)[5] (citing Doe v. Alger, 175 F. Supp. 3d 646, 657–58 (W.D. Va. 2016) ("Alger I"); Doe v. Va. Polytechnic Inst. & State Univ., 400 F. Supp. 3d 479, 499 (W.D. Va. 2019)[6]).

As to Plaintiff's alleged property interest in his continued education, "[a] property interest is 'created and its dimensions are defined by an independent source such as state statutes or rules entitling the citizen to certain benefits.'" Doe v. Alger, 228 F. Supp. 3d 713, 725 (W.D. Va. 2016) ("Alger II") (internal quotations and citation omitted). Property interests are not created by abstract needs or desires. Rather, they must arise from "state statutes, contracts, regulations, or policies." Id.

Plaintiff does not rely on a state statute or regulation to support his claimed property interest. Instead, he appears to rely on an implied contract between Plaintiff and Virginia Tech based upon his payment of tuition and unidentified "policies" of Virginia Tech.

> In conclusory fashion, Plaintiff claims only that he
>
> had a reasonable expectation under the university's various enrollment policies and customs that so long as he paid tuition, met the university's academic and conduct standards, and abided by its policies . . . he would be permitted to continue to enroll in subsequent semesters at the university as he pursued his graduate degree."

ECF No. 21, ¶ 72. Ostensibly, Plaintiff supports that legal conclusion through his allegations in paragraphs 11 and 12 of the Amended Complaint. There, Plaintiff alleges:

---

[5] Hereinafter "Jacob Doe v. Va. Tech".
[6] Hereinafter "Doe v. Va. Tech".

629.0407\
4888-2728-8841 .v5



FAP
FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

11. By accepting Virginia Tech's offer to enroll as a student, Mr. Doe and Virginia Tech agreed through its various policies and customs, that so long as Mr. Doe paid tuition, met the university's academic and conduct standards, and abided by its policies, he would be permitted to enroll in subsequent semesters at the university as he pursued his graduate degree.

12. Mr. Doe did pay tuition through the 2019-2020 academic year, meet [sic] the university's academic and conduct standards, and abided by its policies, and he reasonably expected that he would be permitted to continue to enroll in subsequent semesters at the university as he pursued his graduate degree — but for the student conduct matter that is the basis for this Complaint.

Id. Still, Plaintiff's allegations are insufficient to allege a cognizable property interest in continued education because the Amended Complaint is entirely devoid of any factual allegations raising any inference that Plaintiff has a property interest in his continued education at a public university.

Of course, neither the Supreme Court nor the Fourth Circuit has actually recognized a property right to continued enrollment in a public college or university. Sheppard v. Visitors of Va. State Univ., 933 F.3d 230, 239 (4th Cir. 2021). Nor have they recognized "that the Commonwealth of Virginia has created such a right." Alger I, 175 F. Supp. 3d at 657. Indeed, Plaintiff's Amended Complaint fails to allege deprivation of a constitutionally protected liberty or property interest without due process because there is "'no statutory right to be a public or private college or university student.'" M.B. v. McGee, No. 3:16cv334, 2017 U.S. Dist. LEXIS 44796, at *27 (E.D. Va. Mar. 24, 2017) (quoting Alger, 175 F. Supp. 3d at 660); see also Abbas v. Woleben, No. 3:13cv147, 2013 WL 5295672, 2013 U.S. Dist. LEXIS 134446, at *19 (E.D. Va. 2013); Nofsinger v. Va. Commonwealth Univ., No. 3:12cv236, 2012 WL 2878608, 2012 U.S. Dist. LEXIS 97857, at *18–19 (E.D. Va. July 13, 2012), aff'd, 523 F. App'x 204 (4th Cir. 2013); McCoy v. E. Va. Med. Sch., No. 2:11cv494, 2012 U.S. Dist. LEXIS 25777, 2012 WL 662529, at *2 (E.D. Va.


FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

Feb. 28, 2012); <u>Davis v. George Mason Univ.</u>, 395 F. Supp. 2d 331, 335–36 (E.D. Va. 2005),

<u>aff'd</u>, 193 F. App'x 248 (4th Cir. 2006).

In <u>Alger I</u>, this Court permitted a plaintiff's procedural due process claim to survive

a motion to dismiss. <u>Id.</u> at 658. But that plaintiff alleged that James Madison University

("JMU") created a property right in the plaintiff's continued education by adopting policies

allowing for dismissal, suspension, or expulsion of students only for cause. <u>Id.</u> at 657. The

plaintiff in <u>Alger I</u> also claimed that the university's student rights policy served as a basis

for his entitlement to continued enrollment. <u>Id.</u> at 658. In fact, the allegations in <u>Alger I</u>

regarding the plaintiff's alleged property interest spanned approximately four single-

spaced pages, and he attached and quoted extensively from JMU's Policy on Student

Rights to buttress his claim. See <u>Doe v. Alger</u>, No. 5:15cv35, ECF No. 30, at *2–4, 18–19

(July 17, 2015). By comparison, those allegations stand in stark contrast to the meager,

conclusory allegations present here.

The <u>Alger I</u> Court allowed the due process claim to proceed and gave that plaintiff

the opportunity "to prove the legitimacy of his claim to a property right . . . ." <u>Id.</u> at 658.

The Court later denied JMU's summary judgment motion on the due process claim

because JMU admitted that *(a)* theplaintiff had "a legitimate claim of entitlement to

continued enrollment," and *(b)* the plaintiff had a contractual relationship stemming from

the money exchanged for his education and JMU's policies and practices in its handbook.

<u>Alger II</u>, 228 F. Supp. 3d at 726–27.

In <u>Doe v. Va. Tech</u>, the Court clarified that the <u>Alger I</u> decision "did not hold at that

time that Doe had any 'legitimate claim of entitlement to continued enrollment' . . . but it

gave him the opportunity to prove the legitimacy of his claim to a property right 'in light



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

of the policies and practices of the institution.'" <u>Doe v. Va. Tech</u>, 400 F. Supp. 3d at 500 (quoting <u>Alger</u>, 175 F. Supp. 3d at 658); <u>see also</u> <u>Jacob Doe v. Va. Tech</u>, 2020 U.S. Dist. LEXIS 47754, at *15–17. Because JMU conceded the point, the <u>Alger</u> Court never ultimately decided the question of whether that JMU student had a protected property interest.

Here, just like the plaintiffs in <u>Doe v. Va. Tech</u>, <u>Jacob Doe v. Va. Tech</u>, <u>Abbas</u>, <u>Nofsinger</u>, and <u>Davis</u>, Plaintiff does not allege any facts undergirding his alleged property interest in his education. Plaintiff appears to contend that his property right arises as a result of some sort of contractual relationship between Plaintiff and Virginia Tech. <u>See</u> ECF No. 21, ¶ 11 ("Mr. Doe and Virginia Tech agreed through its various policies and customs, that so long as Mr. Doe paid tuition, met the university's academic and conduct standards, and abided by its policies, he would be permitted to enroll in subsequent semesters"). That very same argument has been rejected time and time again.

First, the payment of tuition does not create an express or implied contract. <u>See</u> <u>Jacob Doe v. Va. Tech</u>, 2020 U.S. Dist. LEXIS 47754, at *17 (citing <u>Doe v. Washington & Lee Univ.</u>, 439 F. Supp. 3d 784 (W.D. Va. 2020); <u>Doe v. Marymount Univ.</u>, 297 F. Supp. 3d 573, 588 (E.D. Va. 2018)); <u>see also</u> <u>George v. Averett Univ. of Danville</u>, No. 4:19cv8, 2019 WL 3241177, 2019 U.S. Dist. LEXIS 119600, at *7–8 (W.D. Va. July 18, 2019) (Kiser, J.).

Second, Plaintiff's reliance on his vague reference to Virginia Tech's "various polices and customs" is ill-fated too. "Virginia courts have consistently found that college codes of conduct lack [the] mutuality requirement . . . they do not purport to bind the college and can be changed at any time by the college" and cannot serve as the basis for a contractual relationship. <u>Doe v. Washington & Lee Univ.</u>, 439 F. Supp. 3d at 792 (citing



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0407\
4888-2728-8841 .v5

Jackson v. Liberty Univ., No. 6:17cv41, 2017 WL 3326972, 2017 U.S. Dist. LEXIS 122104, at *17 (W.D. Va. Aug. 3, 2017)); see also Brown v. Porter, No. 2:19cv376, 2020 U.S. Dist. LEXIS 245054, at *34–35 (E.D. Va. Oct. 20, 2020) adopted by 2020 WL 7226143, 2020 U.S. Dist. LEXIS (E.D. Va. Dec. 8, 2020). Codes of conduct, sexual misconduct policies, and student handbooks are "'guidelines' for students rather than reciprocal agreements." Id.; see also Sheppard, 993 F.3d at 239–40 (codes of conduct and university procedures do not implicate interests that trigger a federal due process claim).

Plaintiff's attempt to assert a property interest in his continued education based upon the payment of tuition and certain unidentified policies of Virginia Tech is not well-grounded in the law or even in his own factual allegations. As such, Plaintiff fails to allege a cognizable liberty or property interest in his continued education.

### 2. Plaintiff does not have a protected liberty interest.

Plaintiff also fails to allege a liberty interest to support a due process claim because there is no protected liberty or property interest in good name, reputation, and integrity. See ECF No. 24, 43:21–44:6.[7] Under Paul v. Davis, 424 U.S. 693 (1976), reputation injury must be accompanied by some "state action that distinctly altered or extinguished a legal status or right . . . ." Alger I, 175 F. Supp. 3d at 660 (citing Shirvinski v. U.S. Coast Guard, 673 F.3d 308, 315 (4th Cir. 2012); Doe v. Rector & Visitors of George Mason Univ., 132 F. Supp. 3d 712, 722 (E.D. Va. 2015)).

---

[7] Paul v. Davis, 424 U.S. 693, 712 (1976) ("interest in reputation is simply one of a number which the State may protect against injury by virtue of its tort law, providing a forum for vindication of those interests by means of damages actions. And any harm or injury to that interest, even whereas here inflicted by an officer of the State, does not result in a deprivation of any 'liberty' or 'property' recognized by state or federal law").

629.0407\
4888-2728-8841 .v5

In <u>Doe v. Va. Tech</u> and <u>Jacob Doe v. Va. Tech</u>, this Court concluded—once again— that an expelled university student failed to state a claim for a deprivation of a liberty interest. <u>Jacob Doe v. Va. Tech</u>, 2020 U.S. Dist LEXIS 47754, at *12–13; <u>Doe v. Va. Tech</u>, 400 F. Supp. 3d at 499. Both cases relied on the <u>Alger I</u> Court's analysis. <u>Id.</u>

In <u>Alger I</u>, this Court concluded that allegations more substantial than those in Plaintiff's Complaint were still insufficient to state a claim for deprivation of a liberty interest. <u>Alger I</u>, 175 F. Supp. 3d at 658. The plaintiff in <u>Alger I</u> maintained that "he had 'a protected liberty interest in his good name, reputation, honor, and integrity,'" claimed that "stigmatizing information [would] be part of his permanent record and . . . shared with other colleges and universities." <u>Id.</u> Finding Fourth Circuit precedent in the government employment context distinguishable, the <u>Alger I</u> Court concluded those allegations failed to state a constitutionally protected liberty interest. <u>Id.</u> at 661.

Here, the Complaint in this case is similarly ill-fated: Plaintiff alleges damage to his reputation only. Other than the cursory, passing reference to his alleged liberty interest, Doe offers no factual allegations to support that claim. He does not even allege harm similar to that alleged in <u>Alger I</u>. Thus, Plaintiff fails to allege sufficient facts to state a prima facie procedural due process claim, and Count I must be dismissed.

### d. **Plaintiff received due process.**

Even if Plaintiff has alleged a protected liberty or property interest, his claim still fails because he fails to allege facts showing a deprivation of the constitutionally required due process for student discipline.

The fundamental requirements of due process are fair notice and an opportunity to be heard. <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 546 (1985); <u>see also</u>



629.0407\
4888-2728-8841 .v5

Mathews v. Eldridge, 424 U.S. 319, 333 (1976). But what process is due is a "flexible" inquiry and depends on the "particular situation" at hand. Morrissey v. Brewer, 408 U.S. 471, 481 (1972).

Doe alleges Defendants failed to give him a meaningful opportunity to be heard because he had less than twenty-four hours' notice before the hearing. ECF No. 21, ¶ 76. But Doe does not (1) dispute that he received notice of the charges against him weeks prior to the disciplinary hearing or (2) challenge the procedures followed during the disciplinary hearing itself for purposes of his due process claim.

Defendants afforded Plaintiff the "rudiments of procedural due process--notice and an opportunity to be heard." Butler v. Rector & Bd. of the Coll. of William & Mary, 121 F. App'x 515, 520 (4th Cir. 2005). To meet that standard, "[t]he proceedings need not . . . take the form of a judicial or quasi-judicial trial; so long as the student is given notice of the charges against him, notice of the time of the hearing, and a full opportunity to be heard . . . ." B.S. v. Bd. of Sch. Trs., 255 F. Supp. 2d 891, 898 (N.D. Ind. 2003). In the context of student discipline, the Supreme Court has stated with respect to short suspension cases that "there need be no delay between the time notice [of the charge] is given and the time of the hearing." Goss v. Lopez, 419 U.S. 565, 582 (1975). While this is not a suspension case, that statement from Goss provides a benchmark for purposes of the analysis here where the claim stems from an alleged lack of sufficient notice of the hearing date, not lack of notice of the charges Plaintiff faced.

Plaintiff claims "in late-2019 and early-2020" he was accused of having made unwanted sexual advances toward another student. ECF No. 21, ¶ 34. In November 2019, Virginia Tech ordered Plaintiff to refrain from having any contact with the complaining



629.0407\
4888-2728-8841 .v5

student. <u>Id.</u>, ¶ 41. On February 17, 2020, Plaintiff received formal notification that he was under investigation for assault. <u>Id.</u>, ¶ 43. Virginia Tech suspended Plaintiff the next day pending the outcome of a student conduct hearing. <u>Id.</u>, ¶ 44. So, Plaintiff knew at least as early as February 18, 2020 that there would be a forthcoming student conduct hearing regarding the alleged assault.

Doe went to a local hospital to receive mental health treatment and was released on February 25. <u>Id.</u>, ¶¶ 46–47. He met with the Title IX investigator on February 28 "to go over the student conduct process." <u>Id.</u>, 48. That same day, Cherry-Clarke sent Plaintiff a letter formally charging him with sexual assault and instructing him to meet with her to discuss the process. <u>Id.</u>, ¶ 49. Doe met with Cherry-Clarke on March 3, and on March 5—seventeen days after he received notification of the investigation and more than two weeks after receiving notice that he was suspended pending a student conduct hearing—Plaintiff received notice that his student conduct hearing would be held the following day. <u>Id.</u>, ¶¶ 50–51.

Plaintiff does not allege that he was deprived of all notice of the charges against him or deprived of any opportunity to be heard. Instead, Plaintiff claims he did not have adequate time to "have a meaningful opportunity to prepare and be heard." <u>Id.</u>, ¶ 37. Yet, Plaintiff had been aware of the charges for over two weeks and by his own allegations, <u>see id.</u>, ¶¶ 22–26, knew he had been accused of sexual assault well before February 17, 2020.

Plaintiff laments that he did not have sufficient time to retain counsel and had to go forward without counsel. <u>Id.</u>, ¶¶ 62–63. But there is no right to counsel in a student discipline proceeding. Therefore, that fact does not suffice to show that Plaintiff lacked a meaningful opportunity to be heard. Plaintiff also complains that he did not have



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

- 18 -

sufficient time to contact a witness to attend the hearing with less than 24 hours' notice of the hearing date. Id., ¶ 56. It belies credulity to suggest that Plaintiff needed more than 24 hours to even *contact* the witness by phone, email, text, or otherwise. Further, Plaintiff does not allege that he actually *attempted* to contact the witness, and he acknowledges he could have obtained a written statement from the witness to submit at the hearing. Id., ¶ 56.

Plaintiff's claim that his recent release from receiving mental health treatment warranted giving him more time to prepare also rings hollow because he does not allege that he informed anyone at Virginia Tech in advance of the hearing or during the investigation that he had just been discharged from a "mental health facility." Rather, he simply told Cherry-Clarke, "I did not have enough time to [prepare] and collect all of the evidence that I need to defend [myself]." Id., ¶¶ 58–60. That Plaintiff speaks English as a second language is another red herring as he was a doctoral student in the field of biophysics. Id., ¶¶ 10, 17, 57. Clearly, he was proficient enough to reach—and almost complete—an advanced degree program in a highly specialized field. Finally, he claims he did not have sufficient time to review the investigation report, but he does not allege when he actually received it. Notably, Plaintiff does not allege he received the investigation report the day before the hearing. The reasonable inference then is that he received it at some point prior to the March 5 meeting with Cherry-Clarke.

Simply put, by Plaintiff's own allegations, he had at least two-weeks' notice of the charges against him and knew that a student conduct proceeding would be held. He received twenty-four hours' advance notice of the hearing date. That was more than adequate time to prepare his defense and contact any witnesses—which he failed to even



629.0407\
4888-2728-8841 .v5

attempt to do. Accordingly, Plaintiff fails to allege sufficient facts to suggest Virginia Tech denied him adequate notice and a meaningful opportunity to be heard.

The Amended Complaint confirms Virginia Tech performed an investigation, provided Plaintiff with notice of the specific charges against him two weeks before his hearing, provided him approximately twenty-four hours' notice before his hearing, held a hearing on March 6, 2020, and provided Plaintiff a right to appeal. Taken together, these allegations show that Virginia Tech provided Doe adequate notice and a "meaningful hearing." Tigrett v. Rector & Visitors of Univ. of Va., 290 F.3d 620, 627 (4th Cir. 2002); Butler v. Rector & Bd. of Visitors of the College of William & Mary, 121 F. App'x 515, 520 (4th Cir. 2005); Cobb v. Rector & Visitors of the Univ. of Va., 69 F. Supp. 2d 815, 829 (W.D. Va. 1999). The Constitution does not promise him anything more than Virginia Tech provided. For these reasons, in addition to those stated above, Plaintiff's due process claim fails as a matter of law.

### III.   Plaintiff's Title IX Claim is Time-Barred

While often not suited for determination at the motion to dismiss stage, the affirmative defense that a claim is time-barred may be decided under Rule 12(b)(6) "if all facts necessary to the affirmative defense clearly appear[ ] on the face of the complaint." Goodman v. PraxAir, Inc., 494 F.3d 458, 464 (4th Cir. 2007). Here, Plaintiff expressly alleges that in 2018 Virginia Tech—through Onufriev—denied him "grant funding and educational opportunities" in violation of Title IX. ECF No. 21, ¶¶ 23, 85; see also ECF No. 1, ¶¶ 17.c. and 17.d.[8] Because Plaintiff did not file this action until June 2021, Plaintiff's

---

[8]   Plaintiff has again named Onufriev as a defendant for purposes of the Title IX claim. As argued previously, ECF No. 11, at *3–4, individuals are not proper parties for claims brought under Title IX. Fitzgerald v. Barnstable School Comm., 555 U.S. 246, 247 (2009).

629.0407\
4888-2728-8841 .v5

Title IX gender discrimination claim for "grant funding and educational opportunities" is time-barred.

"Title IX does not contain an express statute of limitations . . . ." <u>Doe v. Bd. of Educ. of Prince George's Cnty.</u>, 888 F. Supp. 2d 659, 663 (D. Md. 2012) (quoting <u>Wilmink v. Kanawha Cnty. Bd. of Educ.</u>, 214 F. App'x. 294, 296 n. 3 (4th Cir. 2007)). Most courts apply the forum state's statute of limitations for personal injury claims to a plaintiff's claim under Title IX. <u>Doe v. Va. Tech</u>, 400 F. Supp. 3d at 495–96; Va. Code § 8.01-243(A).

When exactly a Title IX claim accrues for purposes of the statute of limitations rests in federal law. <u>Doe v. Va. Tech</u>, 400 F. Supp. 3d at 489–90, 494 (citations omitted).

> [T]he touchstone for determining the commencement of the limitations period is *notice*: a cause of action generally accrues when a plaintiff knows or has reason to know of the injury which is the basis of his action. The proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful.

<u>Samuelson v. Oregon State Univ.</u>, 162 F. Supp. 3d 1123, 1134 (D. Or. 2016), <u>aff'd</u>, 725 F. App'x 598 (9th Cir. 2018) (emphasis added); <u>Stanley v. Trustees of California State University,</u> 433 F.3d 1129, 1136 (9th Cir. 2006) (quoting <u>Hoesterey v. City of Cathedral City,</u> 945 F.2d 317, 319 (9th Cir. 1991) (internal quotations and citations omitted)). So, when a "plaintiff possesses sufficient facts about the harm done to him [such] that a reasonable inquiry will reveal his cause of action," the statute of limitations clock starts counting down. <u>Nasim v. Warden, Md. House of Correction</u>, 64 F.3d 951, 955 (4th Cir. 1995) (en banc).

For purposes of accrual, the statute of limitations for Plaintiff's Title IX claim regarding "grant funding and educational opportunities" began to run on the date Plaintiff



FAP

FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

received notice of the decision to give the grant-funded research assistant position to another student—sometime in 2018. See Doe v. Va. Tech, 400 F. Supp. 3d at 490–91.[9]

In Doe v. Va. Tech, another judge of this Court joined the great weight of authority that Title IX gender discrimination claims accrue upon notice of the discriminatory act, not when the consequences of that act become most painful. In those cases, consolidated for purposes of the Court's decision on Virginia Tech's motions to dismiss, former Virginia Tech students alleged gender bias in Virginia Tech's student conduct process. Doe v. Va. Tech, 400 F. Supp. 3d at 485. The Court had to address the issue of when those claims accrued for purposes of Virginia Tech's statute of limitations defense. Id. at 490, 494.

In their briefing on the issue of accrual, the parties in Doe v. Va. Tech addressed at length the Supreme Court's decision in Delaware State College v. Ricks, 449 U.S. 250 (1980). Id. In Ricks, the Supreme Court held that the applicable statute of limitations began to run for a professor's Title VII claim when the college denied the professor tenure and notified him of that decision—not when the professor felt the final effects of the decision. Ricks, 449 U.S. at 258, 261. The Doe v. Va. Tech Court found the Ricks decision directly applicable, along with several other district court cases from across the country. Doe v. Va. Tech, 400 F. Supp. 3d at 490–92. The same reasoning is applicable here.

Here, Plaintiff expressly alleges that Onufriev received a grant in 2018 from the National Institute of Health, refused to pay Plaintiff any funds from the grant, and allocated the $40,000 research assistant stipend associated with the grant to another



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

---

[9]  See also Lendo v. Garrett Cnty. Bd. of Educ., 820 F.2d 1365, 1367 (4th Cir. 1987); Endres v. Ne. Oh. Med. Univ., No. 5:17cv2408, 2018 U.S. Dist. LEXIS 142745, 2018 WL 4002613, at *16–17 (N.D. Ohio Aug. 22, 2018); Tolliver v. Prairie View A&M Univ., NO. H-18-1192, 2018 U.S. Dist. LEXIS 169031, 2018 WL 4701571, at *4 (S.D. Tex. Oct. 1, 2018); Martin v. Clemson Univ., 654 F. Supp. 2d 410, 421–22 (D.S.C. 2009); Siblerud v. Co. State Bd. of Agriculture, 896 F. Supp. 1056 (D. Colo. 1995); Morris v. Government Dev. Bank, 27 F.3d 746, 749 (1st Cir. 1994).

student. ECF No. 21, ¶ 23. Plaintiff was aware of the allocation at that time and even disputed it as improper. <u>Id.</u>, ¶ 24. He even alleges he sent an email to Onufriev in March 2019 "document[ing] his concerns" about unequal treatment of students of different gender, race, and ethnicity. <u>Id.</u>, ¶ 25. Thus, Plaintiff had "sufficient facts about the harm done to him [such] that a reasonable inquiry [would] reveal his cause of action." <u>Nasim</u>, 64 F.3d at 955. Plaintiff had notice of the alleged discriminatory act in 2018 by his own allegations, and he concedes he felt he had been treated differently based on his gender at least as early as March 2019. The statute of limitations period commenced more than two years prior to Plaintiff filing his original Complaint in June 2021, and his Title IX claim is time barred.

**IV.  <u>Plaintiff Fails to Allege Facts Showing a Violation of Title IX.</u>**

> Title IX states that:
>
> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal Financial assistance.

20 U.S.C. § 1681(a). While unclear, Doe still seems to contend that he suffered gender bias during the student conduct process. <u>See</u> ECF No. 21, ¶¶ 81–83. These allegations appear extraneous when reading the Amended Complaint as a whole, however. To the extent that Doe does still intend to allege that gender bias was "the but for cause" for his dismissal, the Amended Complaint is wholly void of any factual allegations to support such a claim and even omits the allegations Plaintiff previously relied upon to support such a claim. <u>Compare</u> ECF No. 21 <u>with</u> ECF No. 1. So, any Title IX claim based on the disciplinary process fails as a matter of law. Reading the Amended Complaint as a whole, the crux of Plaintiff's Title IX claim is as follows: "Virginia Tech, through Dr. Onufriev, favored a



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

- 23 -

female student in Mr. Doe's laboratory, over a male student, Mr. Doe, in the allocation of grant funding and other educational opportunities in the 2018-2019 and 2019-2020 academic years, and such discrimination was because of Mr. Doe's gender." ECF No. 21, ¶ 85. A review of Doe's factual allegations, however, does not lend support to that legal conclusion.

In Sheppard, the Fourth Circuit clarified the pleading standard for individual Title IX claims in the Fourth Circuit. Sheppard, 993 F.3d at 235–37. Prior to the decision in Sheppard, courts in the Western District of Virginia generally followed the analysis set forth in Yusuf v. Vassar College, 35 F.3d 709 (2d Cir. 1994) for analyzing Title IX claims. Doe v. Va. Tech, 400 F. Supp. 3d at 502–03.

In Sheppard v. Visitors of Virginia State University, the Fourth Circuit agreed—in part—with the approach to Title IX cases adopted by the Seventh Circuit, which asks whether "the alleged facts, if true, raise a plausible inference that the university discriminated against the student on the basis of sex?" Sheppard, 993 F.3d at 236 (internal quotations omitted). The Sheppard Court clarified, however, that "a Title IX plaintiff [must] adequately plead causation—that is, a causal link between the student's sex and the university's challenged [decision]." Id. That causal link requires "'but-for' causation," which means that the plaintiff's "gender was **the** 'but-for' cause of his treatment . . . ." Id. at 236–37, 238 (citations omitted) (emphasis added).

Plaintiff claims that "Virginia Tech deprived [Plaintiff], on the basis of his gender, of his rights of due process and equal protection through its improper application and administration of its policies to [Plaintiff] in the pursuit of his degree program."  ECF No. 21, ¶ 84. These acts manifested in the form of "favor[ing] a female student in [Plaintiff's]



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0407\
4888-2728-8841 .v5

laboratory, over a male student . . . in the allocation of grant funding and other educational opportunities . . . ." Id., ¶ 85. But Plaintiff fails to plead facts satisfying the steep "but for" causal link for these conclusory assertions. To meet that standard, he must point to "sufficiently particularized allegations of gender discrimination" such as statements or "patterns of decision-making that also tend to show the influence of gender." Doe v. Va. Tech, 400 F. Supp. 3d at 503 (internal quotations and citation omitted). Doe fails to identify any statements showing the influence of gender in Onufriev's classroom and lab and fails to identify any "patterns" of decisions by Onufriev showing the influence of gender. The fact that Doe believes that his gender was the reason Onufriev gave the research position to another student, "absent more, does not suffice to render his claim plausible." Sheppard, 993 F.3d at 238.

Without factual allegations to demonstrate the steep causation requirement that gender bias was "*the* but-for" cause of the university's decision, Plaintiff fails to state a claim under Title IX for the alleged discrimination in regard to grant funding and educational opportunities.

**C<small>ONCLUSION</small>**

WHEREFORE, defendants Virginia Polytechnic Institute and State University, Timothy Sands, Alexey Onufriev, and Tamara Cherry-Clarke, by counsel, respectfully request entry of an Order granting Defendants' Motion to Dismiss, dismissing this case with prejudice, and granting such further relief as the Court deems just and proper.

Respectfully submitted,

VIRGINIA POLYTECHNIC INSTITUTE AND STATE UNIVERSITY, TIMOTHY SANDS, ALEXEY ONUFRIEV, and TAMARA CHERRY-CLARKE



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

- 25 -

/s/_____
Katherine C. Londos (VSB #: 36848)
Nathan H. Schnetzler (VSB #: 86437)
FRITH ANDERSON + PEAKE, P.C.
29 Franklin Road, SW
P.O. Box 1240
Roanoke, Virginia 24006-1240
Phone: 540/772-4600
Fax:     540/772-9167
Email: klondos@faplawfirm.com
           nschnetzler@faplawfirm.com

Kay Heidbreder (VSB No.: 22288)
University Legal Counsel and
Senior Assistant Attorney General
*heidbred@vt.edu*
M. Hudson McClanahan (VSB No.: 46363)
*hud3@vt.edu*
Kristina J. Hartman (VSB No.: 92279)
*kjhart06@vt.edu*
Stephen F. Capaldo (VSB No.: 74045)
*scapaldo@vt.edu*
Associate University Legal Counsel and
Assistant Attorney General
University Legal Counsel (0121)
Burruss Hall, Suite 236, Virginia Tech
800 Drillfield Drive
Blacksburg, VA  24060
Phone: (540) 231-6293
Fax: (540) 231-6474

*Counsel for Defendants*



- 26 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 24, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send notification of such filing to all counsel of record.

/s/ Nathan H. Schnetzler
Of Counsel

FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0407\
4888-2728-8841 .v5