UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

JOHN DOE                                        )
                                                )
            Plaintiff,                          )
                                                )
v.                                              )
                                                )
VIRGINIA POLYTECHNIC INSTITUTE                  )
AND STATE UNIVERSITY,                           )
                                                )
TIMOTHY SANDS,                                  )      Civil Action No. 7:21-cv-00378
                                                )
ALEXEY ONUFRIEV,                                )
                                                )
and                                             )
                                                )
TAMARA CHERRY-CLARKE,                           )
                                                )
            Defendants.                         )

## SECOND AMENDED COMPLAINT

## Introduction

1.      John Doe[1], by counsel, files this action for compensatory, declaratory

and injunctive relief to vindicate Plaintiff's civil rights.

## Parties

2.      Plaintiff John Doe is an Iranian citizen who resides and is domiciled in

Montgomery County, Virginia.

3.      Defendant Virginia Tech Polytechnic Institute and State University

(hereafter "university" or "Virginia Tech") is an institution of higher education

---

[1] "John Doe" is not Plaintiff's real name. He is proceeding under a pseudonym for his privacy. Defendant will not be prejudiced by permitting him to proceed anonymously because it has knowledge of the actual identity of John Doe.

located in the city of Blacksburg, Virginia, and is part of the statewide system of public higher education operated by the Commonwealth of Virginia.

4.      Defendant Alexey Onufriev is a United States citizen who resides in and is domiciled in Montgomery County, Virginia.

5.      At all times pertinent to this action, Dr. Onufriev acted in the scope of his employment as a professor at Virginia Tech.

6.      Defendant Tamara Cherry-Clarke is a United States citizen who resides in and is domiciled in Montgomery County, Virginia.

7.      At all times pertinent to this action, Ms. Cherry-Clarke acted in the scope of her employment as Assistant Director of Student Conduct at Virginia Tech.

8.      All of the actions of Virginia Tech's employees described herein took place under color of state authority.

## Jurisdiction and Venue

9.      This action arises under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983. Jurisdiction is vested in this Court pursuant to 28 U.S.C. §§ 2201, 2202, 1331 and 1343.

10.     Venue is proper pursuant to 28 U.S.C. § 1391. Virginia Tech is a public university created under the Virginia Code, incorporated and with its principal place of business in this district. The errors and omissions giving rise to Plaintiff's claims took place in this district.

## Facts

11.    In 2013, Mr. Doe enrolled as a graduate student at Virginia Tech to pursue a PhD in physics.

12.    By accepting Virginia Tech's offer to enroll as a student, Mr. Doe and Virginia Tech agreed through its various policies and customs, that so long as Mr. Doe paid tuition, met the university's academic and conduct standards, and abided by its policies, he would be permitted to continue to enroll in subsequent semesters at the university as he pursued his graduate degree.

13.    Mr. Doe did pay tuition through the 2019-2020 academic year, meet the university's academic and conduct standards, and abided by its policies, and he reasonably expected that he would be permitted to continue to enroll in subsequent semesters at the university as he pursued his graduate degree – but for the student conduct matter that is the basis for this Complaint.

14.    In 2015, Mr. Doe began working with Dr. Alexey Onufriev, a Virginia Tech employee, as his graduate advisor.

15.    Mr. Doe's research focus was disordered proteins.

16.    Mr. Doe planned to pursue a career as a pharmaceutical scientist upon graduation in the field of drug design.

17.    Dr. Onufriev was a well-known molecular biophysicist whose research generated a considerable amount of grant funding for Virginia Tech.

18.    Mr. Doe joined Dr. Onufriev's laboratory at Virginia Tech, the Center for Theoretical and Computation Molecular Biophysics, in pursuit of his PhD.

3

19.     After joining the lab and continuing through the 2019-2020 academic year, until Mr. Doe left the university in March 2020, Mr. Doe suffered severe and intentional discrimination by Dr. Onufriev on account of his gender.

20.     For example and by way of background and context, at a poster presentation during a conference of the American Chemical Society, a researcher from another school came up to Mr. Doe to talk about his research, only to ask if Dr. Onufriev was still "chasing after" female graduate students.

21.     At another conference, Dr. Onufriev told Mr. Doe through another grad student that they needed to go see a "good poster," located elsewhere in the convention hall. When they visited the booth with the research, and discovered it was not related to their lab research, the other grad student said "good poster" was a code that Dr. Onufriev used anytime there was an attractive woman presenting.

22.     Specific to Mr. Doe, in the 2019-2020 academic years, Dr. Onufriev had received a sizable grant from the National Institutes of Health. The grant was based on research that Mr. Doe had performed in the lab.

23.     Ordinarily, a graduate student would receive a research stipend from the grant in recognition of the work that resulted in the grant award.

24.     But in the 2019-2020 academic years, up until Mr. Doe left in March 2020, Dr. Onufriev refused to pay Mr. Doe funds from the grant for work as a research assistant. Instead, he allocated the $40,000 per year research assistant stipend to a female student in the lab, whose work had not been involved in the grant. As a result of not receiving research assistance, Mr. Doe had to take on a

second, full-time job as a teaching assistant, which meant working 9a to 5p each day teaching, and then until 12a each night on research responsibilities.

25.     When Mr. Doe insisted during this time period that it was improper to allocate the research stipend to a female student in the lab whose work did not support obtaining the grant, and it would be fraudulent and misleading to report to the National Institutes of Health that Mr. Doe's subsequent work was grant-funded, when it had not been after receiving the funds, Dr. Onufriev remarked about Mr. Doe's ethnicity and also said of giving the stipend to the female lab student, "[Mr. Doe], who can resist a Persian princess?"

26.     In March 2019, Mr. Doe documented his concerns in an email to Dr. Onufriev saying, "All I want is equality between students without respect to gender, race, ethnic [sic]…Something that unfortunately, I don't see it in our group."

27.     Mr. Doe was embarrassed, ashamed, and alarmed by Dr. Onufriev's comments about the female student in front of his colleagues, and felt that she was afforded educational opportunities.

28.     The following semester, the Virginia Tech Academic Calendar began on August 26, 2019, and once more, Mr. Doe discovered he would not receive the NIH research stipend for work he was performing, even though a female student in the lab would be receiving the funds instead.

29.     With regard to the female student who did receive funding, Mr. Doe recalls Dr. Onufriev again remarked that she was a "princess" and said, "You cannot compete with her, you are not at her level." Dr. Onufriev would give undue

5

attention to the female student in his lab and ignore Mr. Doe's requests to meet for office hours to discuss his upcoming publications. Dr. Onufriev would keep Mr. Doe waiting hours for an office appointment, then not show up at all, while Mr. Doe saw Dr. Onufriev constantly meeting with the female student at the lab.

30.     Dr. Onufriev ignored Mr. Doe's concern that he was being denied a fair opportunity to obtain grant funds and opportunities in the lab on account of his gender and did not reply to the email. He continued to divert the research assistant funding to another female student, and yet Dr. Onufriev still tried to attach the grant number to Mr. Doe's subsequent research in 2019-2020 reports to the National Institutes of Health, which Mr. Doe refused to permit, because to do so would have misled the National Institutes of Health and constituted grant fraud.

31.     In the end, Dr. Onufriev never compensated Mr. Doe for the research that supported the grant stipends in the 2019-2020 academic year. As a result, the female student could focus on her research and advancing toward her doctoral degree because she received financial assistance, whereas Mr. Doe had to take on a teaching assistant position, supervising over 100 students, to make ends meet, in addition to the long hours required at the lab.

32.     In December 2019, after Mr. Doe's complaints about the research funding were ignored by Dr. Onufriev, Mr. Doe reported Dr. Onufriev's misconduct to Dr. Mark Pitt, Chair of the Physics Department at Virginia Tech.

33.     Rather than undertake an investigation of Mr. Doe's complaint, Dr. Pitt shared the details of it with Dr. Onufriev.

6

34.    Dr. Onufriev began outwardly retaliating against Mr. Doe. He had withheld a letter certifying completion of Mr. Doe's Master's degree. He assigned excessive, redundant, and contradictory research tasks; set false deadlines to publish papers; and, created a hostile condition in the lab in an effort to cause Mr. Doe to voluntarily resign from the program.

35.    Mr. Doe had developed a tremendous amount of stress, anxiety, and turmoil, due to Dr. Onufriev's unequal, gender-based treatment of him in the lab.

36.    In late-2019 and early-2020, Mr. Doe went to the university's Cook Counseling Center for help.

37.    Upon information and belief, the university's Cook Counseling Center failed to keep Mr. Doe's treatment confidential, because when Mr. Doe returned to the lab, Dr. Onufriev openly talked about Mr. Doe's parents and other matters than Mr. Doe had only shared in confidence with the university counselor.

38.    Then, in late-2019 and early-2020, Mr. Doe, who despite everything he was experiencing had nonetheless progressed toward his degree program and was on the eve of graduating, was falsely accused by another student of having made unwanted sexual advances toward her in September 2019 and November 2019.

39.    Mr. Doe was devastated and shocked by the charge.

40.    Mr. Doe had met the student on a dating app and they had engaged in a consensual relationship.

41.    Mr. Doe had then seen the student later in the semester at a campus building and had a friendly conversation with her.

7

42.     Mr. Doe denied the allegation that he had assaulted the student in the strongest possible terms.

43.     Dr. Sands had delegated responsibility for adjudicating allegations of student misconduct to staff in the Virginia Tech Office of Equity and Accessibility and the Virginia Tech Office of Student Conduct.

44.     Dr. Sands ultimately was responsible for supervising and overseeing staff in the Virginia Tech Office of Equity and Accessibility and the Virginia Tech Office of Student Conduct, who were tasked with investigating and adjudicating misconduct claims and enforcing student conduct policies at the university.

45.     On November 20, 2019, the complaining student met with staff at the Virginia Tech Office of Equity and Accessibility and asked that they order Mr. Doe not to contact her. They did. She declined to pursue the matter further.

46.     On January 22, 2020, the student changed her mind and contacted the Virginia Tech Office of Equity and Accessibility to pursue a formal complaint.

47.     On February 17, 2020, an investigator with Virginia Tech Office of Equity and Accessibility notified Mr. Doe he was under investigation for assault.

48.     On February 18, 2020, the university suspended Mr. Doe on an interim basis, pending a student conduct hearing.

49.     Mr. Doe could not comprehend why this other student would make the accusation. He thought perhaps Dr. Onufriev influenced the university in pursuing the student conduct case, over the student's initial wishes, due to Mr. Doe's complaints within the department about NIH grant fraud.

8

50.     Mr. Doe returned to the Cook Counseling Center. He was admitted to a local hospital, where he received mental health treatment.

51.     Mr. Doe was taken to Southern Virginia Regional Medical Center and hospitalized for a psychiatric evaluation. He was released on February 25, 2020.

52.     On February 28, 2020, after Mr. Doe was discharged, he met with the investigator to go over the student conduct process.

53.     On February 28, 2020, Tamara Cherry-Clarke with the Virginia Tech Office of Student Conduct sent Mr. Doe a letter formally charging him with sexual assault and instructing him to meet with her to discuss the process.

54.     On March 3, 2020, Ms. Cherry-Clarke met with Mr. Doe to discuss the student conduct process. She advised that he had been accused of violating six of the university's policies on intimate partner contact.

55.     On March 5, 2020, Ms. Cherry-Clarke told Mr. Doe the hearing would take place on March 6, 2020, giving Mr. Doe less than 24 hours to prepare.

56.     Mr. Doe needed more time to prepare.

57.     Mr. Doe had learned that the allegations stemmed from allegedly touching the complainant in an elevator at the Graduate Life Center (GLC).

58.     Mr. Doe knew of a witness who was present at the GLC.

59.     Mr. Doe needed time to contact the witness to attend the hearing.

60.     But with less than 24 hours, while he could obtain a statement, he could not make arrangements for the witness to attend the hearing with him.

61.     Mr. Doe also did not have enough time to review the investigative report that the university had provided him, nor did he have enough time to meet with an advisor or retain counsel to assist at the hearing.

62.     Mr. Doe was an international student who spoke English as a second language. He had just been discharged from a mental health facility. He could not be expected to meaningfully prepare for a hearing that could end his academic career, and cause him to be deported, with less than 24 hours' notice.

63.     On March 5, 2020, Mr. Doe contacted Tamara Cherry-Clarke and asked for an extension. He advised that he did not have enough time to prepare.

64.     He emailed, "I did not have enough time to prepper [sic[ and collect all of the evidence that I need to defend my self [sic]."

65.     Ms. Cherry-Clarke refused to grant an extension. Ms. Cherry-Clarke told Mr. Doe that 24 hours was enough time to prepare.

66.     In refusing to grant an extension of time, Ms. Cherry-Clarke stated that the Title IX office first notified Mr. Doe of the charge on February 17, 2022, implying that Virginia Tech's Title IX office and its custom and policy of proceeding without delay would not permit her to grant time to prepare – despite the fact that Mr. Doe had been hospitalized and less than 24 hours was clearly not sufficient to secure an advisor, review the allegations, and prepare a defense.

67.     Ms. Cherry-Clarke's refusal to grant an extension – forcing Mr. Doe to go forward, without counsel, and with less than 24 hours to prepare – was entirely unreasonable given the severity of the charge and a deprivation of due process.

68.     On March 6, 2020, the hearing went forward and Mr. Doe appeared without counsel to defend himself against the charge.

69.     On March 9, 2020, the university's student conduct office found Mr. Doe responsible for sexual assault and dismissed him from the university.

70.     Mr. Doe appealed the university's decision to the Dean of Student Affairs, and it was denied.

71.     As a result of the university's unequal, gender-based treatment, which ultimately resulted in Mr. Doe's dismissal from the university, Mr. Doe now faces deportation to his home country of Iran due to the expiration of his student visa.

72.     Mr. Doe is gravely concerned about his physical safety should he be deported to Iran, based on the current state of the country's politics.

73.     Prior to this incident, Mr. Doe was a confident, trusting, caring person, who dreamed of a successful career in scientific research. But now, Mr. Doe has suffered an extraordinary loss of earnings; loss of funds to pursue a graduate education; loss of reputation and good name; loss of future earnings; mental and physical suffering; and, stress, emotional hurt, and humiliation. Mr. Doe has been severely and irreparably damaged.

74.     Mr. Doe now brings this action to remedy the unequal treatment he received at Virginia Tech and vindicate his civil rights.

## COUNT I – VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION PURSUANT TO 42 U.S.C. § 1983

## (Against Dr. Sands, in his Official Capacity, and Ms. Cherry-Clarke, in her Official and Individual Capacity)

75.     Mr. Doe realleges the foregoing paragraphs.

76.     Mr. Doe had a protected interest in his continued education at Virginia Tech, including the various educational and training programs it supports.

77.     Mr. Doe had a reasonable expectation under the university's various enrollment policies and customs that so long as he paid tuition, met the university's academic and conduct standards, and abided by its policies, which he did during the times pertinent herein, he would be permitted to continue to enroll in subsequent semesters at the university as he pursued his graduate degree.

78.     Virginia Tech's Code of Conduct guaranteed that Mr. Doe could not arbitrarily be removed as a student, provided he continued to pay tuition, met the requirements of his classwork, and abided by the university's conduct system.

79.     The Code of Conduct stated: "When a student accepts admission to Virginia Tech as an undergraduate, graduate, or professional student, they also accept membership in the university community and responsibility for upholding its shared values and expectations. The Student Code of Conduct outlines policies established by the university that set standards for students' behavior, along with procedures for adjudicating and sanctioning violations of these standards."

80.     The Code of Conduct stipulated that the rules and policies set forth governing student discipline applied to all students, including Mr. Doe: "Authority

12

to approve policies and procedures for student discipline, as outlined in the Student Code of Conduct, lies with Virginia Tech's governing body, the Board of Visitors, as authorized under the Code of Virginia. The Vice President for Student Affairs has responsibility for the university conduct system, with direct supervisory oversight of disciplinary matters assumed by the Office of Student Conduct, under the direction of the Director of Student Conduct. "

81.    Further, the Code of Conduct stated, "Virginia Tech students enjoy basic rights…Students at Virginia Tech enjoy those rights guaranteed by the Constitutions of the United States and the Commonwealth of Virginia."

82.    Therefore, in accordance with the Code of Conduct, the due process provisions of the Fourteenth Amendment to the United States Constitution applied to the disciplinary process used by Virginia Tech against Mr. Doe.

83.    Mr. Doe was entitled to process commensurate with the seriousness of the charge of sexual assault and the potential discipline and sanctions he faced. The allegation was very serious and resulted in harsh sanctions, as well as the prospect of a lifelong stigma that will foreclose future educational and work opportunities.

84.    Mr. Doe was entitled to fundamentally fair procedures to determine whether he was responsible for the alleged assault.

85.    Ms. Cherry-Clarke, acting both in her official capacity in applying the University's policy to expeditiously process Title IX claims, and in her individual capacity subject to Section 1983, failed to provide adequate due process when she neglected to afford Mr. Doe sufficient time to prepare for the hearing. The speed

13

with which Virginia Tech scheduled the hearing – less than 24 hours – and her refusal to grant a reasonable request was a denial of Mr. Doe's right to have a meaningful opportunity to prepare and be heard. The right to a hearing and an opportunity to be heard required sufficient time to prepare.

86.     As a result of the due process violations herein, Mr. Doe was wrongly disciplined and suffers ongoing harm to his good name and educational progress.

## COUNT II – VIOLATION OF TITLE IX
### (Against Virginia Tech and Dr. Onufriev)

87.     Mr. Doe realleges the foregoing paragraphs.

88.     Title IX, 20 U.S.C. § 1681, et seq., states, in pertinent part:

"No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program receiving Federal financial assistance."

89.     Virginia Tech constitutes an education program that receives federal financial assistance, including but not limited to millions of dollars in federal aid awarded to its students each year.

90.     Under Title IX, a school must "adopt and publish grievance procedures providing for prompt and equitable resolution of student…complaints alleging any action which would be prohibited by" Title IX or the regulations thereunder, including all forms of sexual harassment or sexual assault. See 34 C.F.R. § 106.8(b) (Dept. of Education); 28 C.F.R. § 54.135(b) (Dept. of Justice).

91.     The procedures adopted by the school must "ensure the Title IX rights of the complainant" and "accord[] due process to both parties involved…" See, U.S. Dept. of Education, Office for Civil Rights, Revised Sexual Harassment Guidance:

14

Harassment of Students by School Employees, Other Students, or Third Parties –
Title IX (2001), p. 22.

92.    Schools must implement procedures that, at a minimum, provide
"adequate, reliable, and impartial investigation of complaints, including the
opportunity to present witnesses and other evidence." *Id.* at 20 (emphasis added).

93.    Virginia Tech deprived Mr. Doe, on the basis of his gender, of his rights
of due process and equal protection through its improper application and
administration of its policies to Mr. Doe in the pursuit of his degree program.

94.    Virginia Tech, through Dr. Onufriev, favored a female student in Mr.
Doe's laboratory, over a male student, Mr. Doe, in the allocation of grant funding
and other educational opportunities in the 2019-2020 academic year, and such
discrimination was because of Mr. Doe's gender.

95.    Furthermore, when Mr. Doe reported unequal treatment to Dr. Pitt in
the Virginia Tech Physics Department, Dr. Onufriev retaliated against Mr. Doe in
violation of Title IX. He withheld a letter certifying completion of Mr. Doe's Master's
degree. He assigned excessive, redundant, and contradictory research tasks; set
false deadlines to publish papers; and, created a hostile condition in the lab in an
effort to cause Mr. Doe to voluntarily resign from the program.

96.    As a direct and proximate result of the above conduct, Mr. Doe
sustained tremendous damages, including, without limitation, emotional distress,
loss of educational and athletic opportunities, economic injuries, reputational
damages, and other direct and consequential damages.

97.     As a result of the foregoing facts, Mr. Doe is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs, and disbursements.

## <u>DEMAND FOR JUDGMENT</u>

WHEREFORE, Mr. Doe requests the Court award the following relief, and enter a judgment against the Defendants:

a.      An award in the amount to be determined at trial in actual damages as compensation to Mr. Doe's reputation, and in compensation for the damage done to his mental, emotional, and physical health and well-being, plus punitive damages, prejudgment interest, attorneys' fees, expenses, and court costs;

b.      A declaratory judgment that Virginia Tech violated Mr. Doe's rights to due process;

c.      A permanent injunction requiring Virginia Tech, all other officers, employees, or agents of Virginia, and all other persons in active concert or participation with them, to expunge Mr. Doe's records at Virginia Tech of any indication of a finding that he committed an act of assault or was dismissed from the university, and further, to refrain from (i) continuing to enforce any sanction against Mr. Doe for alleged assault; (ii) making any notation in Mr. Doe's educational records related to the incidents described in this Complaint; and, (iii) making any disclosure

to a third party that any adverse disciplinary action was taken against

Mr. Doe arising out of the incidents described in this Complaint;

d.    An award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988, 28

U.S.C. § 1920, and any other appropriate authority; and

e.    Any other further relief as the Court deems just and appropriate.

August 26, 2022        Respectfully submitted,

JOHN DOE

By: _____
                  Of Counsel

Robert E. Dean, Esq. (VSB No. 80288)
ROB DEAN LAW
401 Campbell Ave., Ste. 302
Roanoke, Virginia 24016
Phone:  (540) 585-1776
Fax:     (540) 301-0833
Email:  rob@robdeanlaw.com

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 26, 2022, the foregoing pleading was filed

with the Clerk of the Clerk of Court and served via CM/ECF the following counsel of

record:

Katherine C. Londos (VSB No. 36848)
Nathan H. Schnetzler (VSB No. 86437)
FRITH ANDERSON + PEAKE, P.C.
29 Franklin Road, SW
P.O. Box 1240
Roanoke, Virginia 24006-1240 Phone: 540/772-4600
Fax: 540/772-9167
Email: klondos@faplawfirm.com
nschnetzler@faplawfirm.com

Kay Heidbreder (VSB No. 22288)
M. Hudson McClanahan (VSB No. 46363)
Kristina J. Hartman (VSB No. 92279)
University Legal Counsel (0121)
800 Drillfield Drive
Blacksburg, VA 24061
Phone: (540) 231-6293
Fax: (540) 231-6474
Email: heidbred@vt.edu
Email: hud3@vt.edu
Email: kjhart06@vt.edu

*Counsel for Defendants*