# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

JOHN DOE,                        )

          )

    Plaintiff,           )

          )

v.                             )        **Case No. 7:21cv378**

          )

VIRGINIA POLYTECHNIC INSTITUTE  )

AND STATE UNIVERSITY, et al.,    )

          )

    Defendants.        )

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

Defendants Virginia Polytechnic Institute and State University ("Virginia Tech"), Timothy Sands ("Sands"), Alexey Onufriev ("Onufriev"), and Tamara Cherry-Clarke ("Cherry-Clarke") (collectively "Defendants"), by counsel, submit this brief in support of their Motion to Dismiss Pursuant to Rule 12(b)(6).

### STATEMENT OF THE CASE

Plaintiff's Second Amended Complaint—now the ***fourth*** iteration of his lawsuit against Defendants—challenges a professor's allocation of grant proceeds for a research position and Plaintiff's expulsion from Virginia Tech for violating Virginia Tech's sexual assault policy. ECF No. 37. Originally filed in 2020, the Court dismissed Plaintiff's first lawsuit due to Plaintiff's failure to timely serve the Defendants, failure to demonstrate good cause or excusable neglect for failing to timely serve them, and failure to proceed properly under a pseudonym. Doe v. Va. Polytechnic Inst. & State Univ., No. 7:20cv711, 2021 WL 2156411, 2021 U.S. Dist. LEXIS 100649 (W.D. Va. May 27, 2021). After Plaintiff filed this action in 2021, Defendants moved to dismiss all of the claims against them, and



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0407\NHS
4863-2643-0768 .v7

the Court granted Defendants' motion from the bench by summary order without an accompanying Memorandum Opinion. ECF No. 19; ECF No. 20.

Plaintiff filed his First Amended Complaint, and again, Defendants moved to dismiss all claims against them. The Court granted Defendants' motion and dismissed with prejudice Plaintiff's Title IX claim "based on the allocation of the 2018-2019 academic year research grant funds" and Plaintiff's due process claim "based on his loss of a liberty interest . . . ." ECF No. 35, *34. The Court dismissed without prejudice the following claims:

> ➢ Plaintiff's due process claim based on a property interest in continued enrollment at Virginia Tech;
>
> ➢ Plaintiff's Title IX claim based on the allocation of grant funds in the 2019–2020 academic year;
>
> ➢ Hostile environment based on sex in violation of Title IX; and
>
> ➢ Retaliation in violation of Title IX.

ECF No. 35, *34.

In his Second Amended Complaint, Plaintiff again claims his expulsion from Virginia Tech resulted in a deprivation of his rights to due process under the Fourteenth Amendment. He also alleges he suffered gender discrimination in violation of Title IX based on Onufriev's "allocation of grant funding and other educational opportunities" to a female student instead of Plaintiff and that Onufriev retaliated against him when Plaintiff complained about gender bias. For the reasons set forth below, Plaintiff's claims *yet again* fail to set forth necessary facts to state a claim for which relief can be granted, and this case must be dismissed *with prejudice*.



629.0407\NHS
4863-2643-0768 .v7

<u>**STATEMENT OF ALLEGED FACTS**</u>

Plaintiff was a graduate student at Virginia Tech pursuing a doctoral degree in physics. ECF No. 37, ¶ 11. Dr. Alexey Onufriev ("Onufriev") was Plaintiff's graduate advisor. <u>Id.</u>, ¶ 14. After joining Onufriev's lab, sometime in 2018 a researcher from another school approached Plaintiff and asked Plaintiff if Onufriev was "still 'chasing after'" female graduate students. <u>Id.</u>, ¶ 20.[1] At another conference, Onufriev allegedly "told [Plaintiff] *through another grad student* that they needed to go see a 'good poster,'" meaning an attractive female presenter. <u>Id.</u>, ¶ 21 (emphasis added).

"[I]n the 2019-2020 academic years," Onufriev received a grant from the National Institutes of Health based on Plaintiff's research. Onufriev allocated some of the grant funds to a female student whose work did not involve the grant rather than to Plaintiff. <u>Id.</u>, ¶¶ 22, 24, 26. In response to Plaintiff's protests about the decision, Onufriev allegedly said, "who can resist a Persian princess?" <u>Id.</u>, ¶ 25. Specifically, "***[i]n March 2019***," Plaintiff told Onufriev: "***All I want is equality between students without respect to gender***, race, ethnic [sic] . . . Something that unfortunately, I don't see it in our group." <u>Id.</u>, ¶ 26 (emphasis added).

According to Plaintiff, he learned on August 26, 2019 that Onufriev once again allocated the research assistant grant funding to a female student. <u>Id.</u>, ¶ 28. Plaintiff claims Onufriev referred to the female student as "princess" and told Plaintiff that he "cannot compete with her, you are not at her level." <u>Id.</u>, ¶ 29. Plaintiff also claims that Onufriev gave "undue attention to the female," ignored Plaintiff's requests for meetings,



FAP

FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

---

[1]  <u>See</u> ECF No. 21, ¶ 19 (alleging incident occurred in 2018).

629.0407\NHS
4863-2643-0768 .v7

and failed to show up for scheduled meetings despite "constantly meeting with the female student at the lab." Id.

Onufriev tried to attach the grant number to Plaintiff's research despite Plaintiff's refusals. Id., ¶ 30. Because Plaintiff received none of the grant funds, he claims he had to take on a teaching assistant position. Id., ¶ 31. After Plaintiff reported the matter to the Chair of the Physics Department in December 2019, Plaintiff alleges Onufriev withheld "a letter certifying the completion of [Plaintiff's] Master's degree" and assigned "excessive, redundant, and contradictory research tasks; set false deadlines to publish papers, and create[ed] a hostile condition in the lab . . . ." Id., ¶¶ 32, 34.

"Then, in late-2019 and early 2020," another student accused Plaintiff of making unwanted sexual advances toward her. Id., ¶ 38. The female student met with a Virginia Tech Title IX investigator in November 2019 regarding the alleged unwanted advances from Plaintiff, but she declined to pursue a formal Title IX complaint against Plaintiff at that time. Id. ¶ 45. Virginia Tech issued a no contact order to Plaintiff at the female student's request. Id. Plaintiff disputed any wrongdoing and claims he had a consensual relationship with the female student. Id., ¶¶ 39–42.

On January 22, 2020, the female student decided to pursue a formal Title IX complaint against Plaintiff. Id., ¶ 46. On February 17, 2020, Virginia Tech's Title IX office notified Plaintiff that he was "under investigation for assault," and on February 18, Virginia Tech placed Plaintiff on an interim suspension "pending a student conduct hearing." Id., ¶¶ 47–48.[2] Subsequently, Plaintiff visited the Cook Counseling Center at



---

[2] Plaintiff previously alleged the University informed him he was under investigation for sexual assault. ECF No. 1, ¶ 29.

Virginia Tech, was admitted to a local hospital, and received mental health treatment until his release on February 25, 2020. Id., ¶¶ 50–51.

Plaintiff met with a Title IX investigator on February 28, 2020 to discuss "the student conduct process" and, on the same day, received a letter from Cherry-Clarke, Virginia Tech's Assistant Director of Student Conduct, "formally charging him with sexual assault . . . ." Id., ¶¶ 52–53. Plaintiff met with Cherry-Clarke on March 3, 2020, and she informed him that he had been charged with "violating six of the university's policies on intimate partner contact." Id., ¶ 50.

On March 5, 2020, Cherry-Clarke told Plaintiff his student conduct hearing would be the next day. Id., ¶ 54. Plaintiff asked for extra time to prepare for his hearing, but Cherry-Clarke refused his request. Id., ¶¶ 63–65. **Plaintiff does not allege that he informed Cherry-Clarke that he had recently been in the hospital or the mental health facility and does not allege that Cherry-Clarke independently knew about Plaintiff's hospitalization.**

Plaintiff claims he did not have sufficient time to review the investigation report the university provided him,[3] to meet with an advisor, or to retain counsel to assist at the hearing. Id., ¶ 61. Plaintiff also contends that he did not have sufficient time to make arrangements to have a witness attend the hearing, although he concedes he had sufficient time to obtain a written statement from the witness. Id., ¶¶ 57–60. Plaintiff does not allege that he made any effort to obtain a written statement from the witness or even attempt to contact that person.



FAP
FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

---

[3] Plaintiff alleges he did not have sufficient time to review the report provided to him, but he does not allege when he received the report. If Plaintiff intends to base his claim, at least in part, on the lack of sufficient time to review the report, he should be required to disclose to the Court when he did in fact receive it. See ECF No. 24, 41:16–42:8.

629.0407\NHS
4863-2643-0768 .v7

The student conduct hearing went forward on March 6, 2020, and on March 9, Virginia Tech found Plaintiff responsible for sexual assault and dismissed him from the university. Id., ¶¶ 68–69. Doe appealed the decision, but Virginia Tech denied the appeal. Id., ¶ 70.

**ARGUMENT & AUTHORITY**

Plaintiff asserts two causes of action in his Second Amended Complaint. Id., *12, *14. First, in Count I, Plaintiff asserts a due process claim, based on a property interest in his continued education, due to Cherry-Clarke's failure to continue the student conduct hearing date. Id., ¶¶ 76, 85. Next, in Count II, he claims Virginia Tech violated Title IX through Onufriev's "allocation of grant funding and other educational opportunities in the 2019–2020 academic year." Id., ¶ 94. Plaintiff also alleges in Count II that Onufriev retaliated against Plaintiff in violation of Title IX after Plaintiff reported the alleged unequal treatment to Dr. Pitt in the Virginia Tech Physics Department. Id., ¶ 95.

## I.  Standard of Review

A plaintiff's complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The complaint's factual allegations must produce an inference of liability strong enough to push the plaintiff's claims "'across the line from conceivable to plausible.'" Id. at 683 (quoting Twombly, 550 U.S. at 570); see also ACA Fin. Guar. Corp. v. City of Buena Vista, 917 F.3d 206, 211 (4th Cir. 2019). To meet the plausibility standard, there must be factual content in a complaint that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0407\NHS
4863-2643-0768 .v7

Thus, pleadings that offer mere "'labels and conclusions'" or "'a formulaic recitation of the elements of a cause of action'" will not suffice. Id. at 678 (quoting Twombly, 550 U.S. at 555). Indeed, "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments" need not be accepted as true. Wag More Dogs, LLC v. Cozart, 680 F.3d 359, 365 (4th Cir. 2012). As such, reviewing a complaint is "a context-specific task" requiring the court to "draw on its judicial experience and common sense" in order to determine whether the "complaint states a plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Iqbal v. Hasty, 490 F.3d 143, 157 (2d Cir. 2007)). Still, "[d]istrict judges are not mind readers," ACA Financial Guaranty Corp. v. City of Buena Vista, 298 F. Supp. 3d 834, 855 (W.D. Va. 2018), and a Complaint must comply with the requirements of Rule 8 in order to "unlock the doors of discovery." ACA Fin. Guar. Corp., 917 F.3d at 212 (internal quotations omitted).

**II.  Plaintiff Fails to State an Actionable Procedural Due Process Claim**

Count I is a procedural due process claim against Sands in his official capacity and against Cherry-Clarke in her official and individual capacity. Count I of the Complaint fails to state a claim for relief because Plaintiff fails to allege any deprivation resulted from a custom or policy of Virginia Tech, and he fails to allege a recognized property interest. Moreover, Plaintiff alleges he received advance notice and an opportunity to be heard but fails to allege that anyone at Virginia Tech was aware of his circumstances that ostensibly supported a continuance of his disciplinary hearing. Finally, qualified immunity operates to bar his individual capacity claim against Cherry-Clarke.



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0407\NHS
4863-2643-0768 .v7

### a. **The Official capacity suits against the individuals are duplicative.**

Plaintiff previously asserted that his claims against Sands and Cherry-Clarke were in their official capacity only. Now, however, he appears to be pursuing a claim against Sands in his official capacity only and against Cherry-Clarke in both her individual and official capacities. ECF No. 37, ¶ 85.[4] As previously argued, Plaintiff's official capacity claims against Sands and Cherry-Clarke are duplicative because he has already named Virginia Tech as a defendant. Therefore, the official capacity claims against those individuals should be dismissed.

"[A]n official-capacity suit against a state officer 'is not a suit against the official but rather is a suit against the official's office. As such it is no different from a suit against the State itself.'" Hafer v. Melo, 502 U.S. 21, 26 (1991) (quoting Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989)). Indeed, an official capacity suit against a government official "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." Monell v. New York Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978). Thus, a § 1983 claim against an individual in his official capacity is duplicative of a claim against the governmental entity named in the same lawsuit and should be dismissed. Love-Lane v. Martin, 355 F.3d 766, 783 (4th Cir. 2004) (citing Kentucky v. Graham, 473 U.S. 159, 165–66 (1985)); see also Bhattacharya v. Murray, No. 3:19cv54, 2022 WL 808500, 2022 U.S. Dist. LEXIS 46641, *11–12 (W.D. Va. Mar. 16, 2022); Smith v. Sch. Bd., No. 2:21cv138, 2021 WL 5163312, 2021 U.S. Dist. LEXIS 214800, *57 n.7 (E.D. Va. Nov. 5, 2021);  Booker v. City of Lynchburg, No. 6:20cv11, 2020 WL 4209057, 2020 U.S. Dist. LEXIS 128818, *15 (W.D. Va. July 22, 2020).

---

[4]  The Court will recall that Plaintiff voluntarily withdrew any individual capacity claims previously. See ECF No. 24, 16:11–21; ECF No. 14, *4–6.

Virginia Tech is already named as a defendant in Count I and is the real party in interest for purposes of the official capacity claims. See <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985). Accordingly, the due process claims against Sands and Cherry-Clarke in their official capacities should be dismissed.

**b.** **<u>Plaintiff fails to allege deprivation through a custom or policy.</u>**

Plaintiff's official capacity due process claim fails as a matter of law because he fails to allege a deprivation of a federally protected right that resulted from an official custom or policy of Virginia Tech, a necessary element of an official capacity claim. In an attempt to remedy his previous deficient iterations of his claim, Plaintiff appears to have added only a single allegation to prop up his official capacity claim. See ECF No. 37, ¶ 66. That additional allegation, however, is still insufficient to state a claim.

Because official capacity claims against individuals are truly suits against the entity of which the individual is an officer or agent, an official capacity claim "is not a suit against the official personally, for the real party in interest is the entity." <u>Flanagan v. Scearce</u>, No. 7:19cv413, 2021 WL 3722215, 2021 U.S. Dist. LEXIS 158809, *17–18 (W.D. Va. Aug. 23, 2021) (internal quotations omitted); <u>see also</u> <u>Sutherlin v. Smith</u>, 2016 U.S. Dist. LEXIS 1937, *19–20 (W.D. Va. Feb. 17, 2016) (dismissing official capacity claims against Danville Police Department officers because complaint identified "no department policy and [made] no suggestion that any department policy played a part in the alleged violations of Plaintiff's constitutional rights."). As previously explained, governmental entities, like Virginia Tech, can be held liable under § 1983 only if the entity's official policy or custom was a "moving force" behind the deprivation. <u>Polk Cnty. v. Dodson</u>, 454 U.S. 312, 326 (1981).



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0407\NHS
4863-2643-0768 .v7

Official capacity claims under § 1983 require an allegation that "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." <u>Monell</u>, 436 U.S. at 690; <u>see also</u> <u>Davison v. Randall</u>, 912 F.3d 666, 688–89 (4th Cir. 2019) (citing <u>Monell</u>, 436 U.S. at 694); <u>Stickley v. Sutherly</u>, 667 F. Supp. 2d 664, 672 n.7 (W.D. Va. 2009) (quoting <u>Kentucky v. Graham</u>, 473 U.S. at 165-66); <u>Thomas v. N.C. Dep't of Corr.</u>, No. 7:04-CV-251-F(3), 2006 U.S. Dist. LEXIS 112740, at *6 (E.D.N.C. Feb. 21, 2006); <u>Friday v. Commonwealth of Va.</u>, No. 3:00cv867, 2001 U.S. Dist. LEXIS 9896, at *10 (E.D. Va. July 12, 2001) (citations omitted).

A custom or policy giving rise to liability includes express policies, laws, ordinances, and regulations, a "decision taken by the highest officials responsible for setting policy in that area of the government's business," or any "widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage' with the force of law." <u>St. Louis v. Praprotnik</u>, 485 U.S. 112, 123, 127 (1988) (quoting <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 167-68 (1970)). However, an official capacity § 1983 claim cannot stand on allegations of "wrongful conduct of a single officer without any policymaking authority" or even "decisions by subordinate employees" lacking policymaking authority. <u>Collins v. City of Harker Heights</u>, 503 U.S. 115, 121-22 (1992) (citing <u>Oklahoma City v. Tuttle</u>, 471 U.S. 808 (1985); <u>Praprotnik</u>, 485 U.S. 112). Ultimately, even the decisions of individuals with policymaking authority may not be actionable if the decisionmaker lacks "final authority to establish municipal policy with respect to the action ordered." <u>Davison</u>, 912 F.3d at 689 (internal quotations and emphasis omitted).



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0407\NHS
4863-2643-0768 .v7

Here, Plaintiff's due process claim fails for the same reason as the claims in Flanagan, Davison, and Sutherlin. Plaintiff's claim stands on the single act of Cherry-Clarke's alleged denial of a continuance of the student conduct hearing. Once again, Plaintiff does not allege that Cherry-Clarke had policymaking authority at Virginia Tech or that anyone at Virginia Tech with policymaking authority was aware of the decision and adopted it or tacitly approved it. Thus, he must rely on an official custom or policy of Virginia Tech to proceed with his claim.

Plaintiff does not identify any custom or policy of Virginia Tech that caused his alleged deprivation. Rather, he alleges only that Cherry-Clarke's email "impl[ied] that Virginia Tech's Title IX office and its custom and policy of proceeding without delay would not permit her to grant time to prepare . . . ." ECF No. 37, ¶ 66. But the inference Plaintiff seeks to draw is not supported by the factual allegations. There is no allegation of an "express policy of Virginia Tech" regarding the timing of disciplinary hearings. See ECF No. 35, *8–9. There are no factual allegations creating an inference that Virginia Tech had a custom of "proceeding without delay" or denying all requests for continuances. There is no allegation that Cherry-Clarke referenced any such custom in her email to Plaintiff.

That Plaintiff somehow read into Cherry-Clarke's email an implication of some ethereal custom is not sufficient to satisfy his burden at the pleading stage because such self-serving opinions are not entitled to belief. Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996). As such, there are no facts to create an inference that the "decision was part of a practice so persistent and widespread as to be a custom or usage with the force of law." ECF No. 35, *9 (internal quotations and citations omitted).



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0407\NHS
4863-2643-0768 .v7

Accordingly, Plaintiff's official capacity due process claim fails to state a claim for relief and must be dismissed.

### c. **Plaintiff fails to allege a property interest.**

Plaintiff's due process claim fails further still because Plaintiff still fails to allege facts sufficient to identify a protected property interest in his continued education.

In order to allege a due process claim under the Fourteenth Amendment, Plaintiff must allege facts sufficient to show "(1) a cognizable liberty or property interest; (2) the deprivation of that interest by some form of state action; and (3) that the procedures employed were constitutionally inadequate." Kendall v. Balcerzak, 650 F.3d 515, 528 (4th Cir. 2011). Plaintiff maintains that he had a protected property interest in his "continued education at Virginia Tech" based on his payment of tuition and language found in Virginia Tech's Code of Conduct. ECF No. 37, ¶¶ 76, 78–81.

### 1. **Plaintiff does not have a property interest in his education.**

"A property interest is 'created and its dimensions are defined by an independent source such as state statutes or rules entitling the citizen to certain benefits.'" Doe v. Alger, 228 F. Supp. 3d 713, 725 (W.D. Va. 2016) ("Alger II") (internal quotations and citation omitted). Property interests are not created by unilateral expectations or abstract needs or desires. Equity in Athletics, Inc. v. Dep't of Educ., 639 F.3d 91, 109 (4th Cir. 2011) (internal quotations omitted). Rather, they must arise from "state statutes, contracts, regulations, or policies." Alger II, 228 F. Supp. 3d at 725. While a property interest may arise from a clearly implied promise of a right, "[a] person's interest in a benefit is a property interest for due process purposes if there are such *rules or mutually explicit*



FAP

FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0407\NHS
4863-2643-0768 .v7

*understandings* that support his claim of entitlement to the benefit and that he may invoke at a hearing." ECF No. 35, *14 (internal quotations and citations omitted).

Neither the Supreme Court nor the Fourth Circuit has actually recognized a property right to continued enrollment in a public college or university or that the Commonwealth of Virginia has created such a right. ECF No. 35, *13–14 (citations omitted); Sheppard v. Visitors of Va. State Univ., 933 F.3d 230, 239 (4th Cir. 2021); Doe v. Alger, 175 F. Supp. 3d 646, 657 (W.D. Va. 2016) ("Alger I").[5]

Plaintiff does not rely on a state statute or regulation to support his claimed property interest. Instead, he appears to rely on an implied contract between Plaintiff and Virginia Tech based upon his payment of tuition and unidentified "policies" of Virginia Tech. In conclusory fashion, Plaintiff claims that he

> had a reasonable expectation under the university's various enrollment policies and customs that so long as he paid tuition, met the university's academic and conduct standards, and abided by its policies . . . he would be permitted to continue to enroll in subsequent semesters at the university as he pursued his graduate degree."

ECF No. 37, ¶ 77. Ostensibly, Plaintiff supports that legal conclusion through his allegations in paragraphs 12 and 13 of the Second Amended Complaint. There, Plaintiff alleges:

> 12. By accepting Virginia Tech's offer to enroll as a student, Mr. Doe and Virginia Tech agreed through its various policies and customs, that so long as Mr. Doe paid tuition, met the university's academic and conduct standards, and abided by its policies, he would be permitted to enroll in subsequent semesters at the university as he pursued his graduate degree.



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

---

[5]  See also M.B. v. McGee, No. 3:16cv334, 2017 U.S. Dist. LEXIS 44796, at *27 (E.D. Va. Mar. 24, 2017) (quoting Alger, 175 F. Supp. 3d at 660); see also Abbas v. Woleben, No. 3:13cv147, 2013 WL 5295672, 2013 U.S. Dist. LEXIS 134446, at *19 (E.D. Va. 2013); Nofsinger v. Va. Commonwealth Univ., No. 3:12cv236, 2012 WL 2878608, 2012 U.S. Dist. LEXIS 97857, at *18–19 (E.D. Va. July 13, 2012), aff'd, 523 F. App'x 204 (4th Cir. 2013); McCoy v. E. Va. Med. Sch., No. 2:11cv494, 2012 U.S. Dist. LEXIS 25777, 2012 WL 662529, at *2 (E.D. Va. Feb. 28, 2012); Davis v. George Mason Univ., 395 F. Supp. 2d 331, 335–36 (E.D. Va. 2005), aff'd, 193 F. App'x 248 (4th Cir. 2006).

- 13 -

13. Mr. Doe did pay tuition through the 2019-2020 academic year, meet [sic] the university's academic and conduct standards, and abided by its policies, and he reasonably expected that he would be permitted to continue to enroll in subsequent semesters at the university as he pursued his graduate degree — but for the student conduct matter that is the basis for this Complaint.

Id., ¶¶ 12–13. But as the Court previously admonished, those allegations are insufficient to allege a cognizable property interest in continued education. ECF No. 35, *20; see also Jacob Doe v. Va. Polytechnic Inst. & State Univ., No. 7:19cv249, 2020 WL 1309461, 2020 U.S. Dist. LEXIS 47754, at *17 (W.D. Va. Mar. 19, 2020)[6](citing Doe v. Washington & Lee Univ., 439 F. Supp. 3d 784 (W.D. Va. 2020); Doe v. Marymount Univ., 297 F. Supp. 3d 573, 588 (E.D. Va. 2018)); see also George v. Averett Univ. of Danville, No. 4:19cv8, 2019 WL 3241177, 2019 U.S. Dist. LEXIS 119600, at *7–8 (W.D. Va. July 18, 2019) (Kiser, J.).

Plaintiff tries to supplement his previous allegations supporting his purported property interest in continued education by referencing Virginia Tech's Code of Conduct. ECF No. 37, ¶¶ 78–81. To that end, Plaintiff alleges that the Code of Conduct "guaranteed that [Plaintiff] could not arbitrarily be removed as a student . . . ." Id., ¶ 78. Plaintiff bases this contention on three provisions allegedly contained in the Code of Conduct. Those provisions are:

➢ "When a student accepts admission to Virginia Tech as an undergraduate, graduate, or professional student, they also accept membership in the university community and responsibility for upholding its shared values and expectations. The Student Code of Conduct outlines policies established by the university that set standards for students' behavior, along with procedures for adjudicating and sanctioning violations of these standards."

➢ "Authority to approve policies and procedures for student discipline, as outlined in the Student Code of Conduct, lies with Virginia Tech's governing body, the Board of Visitors, as authorized under the Code of Virginia. The Vice President for Student Affairs has responsibility for the



FAP
FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

---

[6] Hereinafter "Jacob Doe v. Va. Tech".

629.0407\NHS
4863-2643-0768 .v7

> university conduct system, with direct supervisory oversight of disciplinary matters assumed by the Office of Student Conduct, under the direction of the Director of Student Conduct."[7]

> ➢ "Virginia Tech students enjoy basic rights . . . Students at Virginia Tech enjoy those rights guaranteed by the Constitutions of the United States and the Commonwealth of Virginia."

Id., ¶¶ 79–81. But these statements allegedly contained in the Code of Conduct speak only in generalities that are insufficient to create a cognizable property interest. A comparison to the allegations in Alger I, illustrates this critical shortcoming.[8]

The Alger I Court permitted a plaintiff's procedural due process claim to survive a motion to dismiss. Id. at 658. But that plaintiff alleged that James Madison University ("JMU") created a property right in the plaintiff's continued education by adopting policies allowing for dismissal, suspension, or expulsion of students only for cause. Id. at 657. The plaintiff in Alger I also claimed that JMU's student rights policy served as a basis for his entitlement to continued enrollment. Id. at 658. In fact, the allegations in Alger I regarding the plaintiff's alleged property interest spanned approximately four single-spaced pages, and he attached and quoted extensively from JMU's Policy on Student Rights to buttress his claim. See Doe v. Alger, No. 5:15cv35, ECF No. 30, at *2–4, 18–19 (W.D. Va. July 17, 2015). As opposed to the allegations here, the allegations in Alger I went well beyond generalities or the plaintiff's mere expectations.

For example, in Alger I, the plaintiff alleged that "[i]n an effort to induce accepted students to enroll there, JMU substantially limited its ability to suspend, expel or dismiss students by adopting policies, by engaging in practices and a consistent course of conduct



FAP
FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

---

[7] Plaintiff's Second Amended Complaint makes no reference to any individual serving as either the Vice President for Student Affairs or the Director of Student Conduct.

[8] And as discussed *supra*, neither the United State Constitution nor the Constitution of Virginia guarantees a property right in post-secondary education.

629.0407\NHS
4863-2643-0768 .v7

for many years, and by fostering understandings that it would not suspend or dismiss students without proving cause." <u>Doe v. Alger</u>, No. 5:15cv35, ECF No. 30, at *2 (W.D. Va. July 17, 2015). That plaintiff also alleged "JMU placed substantive limits on its ability to suspend or dismiss Plaintiff by adopting policies and by continuing to follow a longstanding and consistent practice of requiring a finding of cause, as determined by a fair and impartial process which included notice of the charge, a meaningful opportunity to appear, and confront the evidence to be considered." <u>Id.</u>

The <u>Alger I</u> plaintiff claimed JMU never "dismissed, suspended, expelled or separated an undergraduate student for alleged misconduct without proving cause through the use of a fair and impartial process where the accused student had a meaningful opportunity to appear before the fact-finder and confront all the evidence considered." <u>Id.</u> at *3. The <u>Alger I</u> plaintiff then went on to quote, at length, JMU's student rights policy, which enumerated specific entitlements JMU students have during a sexual misconduct proceeding. <u>Id.</u> at *3–4. Finally, the <u>Alger I</u> plaintiff expressly alleged that he accepted JMU's offer of admission based on his reliance on JMU's "policies, practices and understandings regarding Student Rights . . . ." <u>Id.</u> at *4. Still, Judge Dillon later characterized those allegations as "sparse." <u>Doe v. Va. Polytechnic Inst. & State Univ.</u>, 400 F. Supp. 3d 479, 500 (W.D. Va. 2019).[9]

By comparison, the <u>Alger I</u> allegations stand in stark contrast to the meager, generalized, and conclusory allegations present here. In particular, there are no allegations as to what specific policies of Virginia Tech serve as the basis for establishing a constitutionally protected property right. The allegations upon which Plaintiff now relies

---

[9] Hereinafter "<u>Doe I v. Va. Tech</u>".

speak merely to the existence of a Code of Conduct, not any specific policy provisions, practices, or understandings.

As the Court previously noted, ECF No. 35, *15, the <u>Alger I</u> Court relied on the Supreme Court's decision in <u>Perry v. Sinderman</u>, 408 U.S. 593 (1972), when it denied JMU's motion to dismiss. In <u>Perry</u>, a professor at Odessa Junior College, a public junior college, alleged he had a protected property interest in his continued employment at the college. 408 U.S. at 599. Rather than relying on "a formal contractual tenure provision," the professor claimed the college had a *de facto* tenure program affording him tenure. <u>Id.</u> at 600. The professor alleged "that he and others legitimately relied upon an unusual provision that had been in the college's official Faculty Guide for many years" that stated as follows:

> *Teacher Tenure*: Odessa College has no tenure system. The Administration of the College wishes the faculty member to feel that he has permanent tenure as long as his teaching services are satisfactory and as long as he displays a cooperative attitude toward his co-workers and his superiors, and as long as he is happy in his work.

<u>Id.</u> (internal quotations omitted). The professor also identified "guidelines promulgated by the Coordinating Board of the Texas College and University System that provided that a person, like himself, who had been employed as a teacher in the state college and university system for seven years or more has some form of job tenure." <u>Id.</u> By contrast, Plaintiff points to no specific provisions of the Code of Conduct—or anything else for that matter—giving rise to a protected property interest in his continued enrollment.

The allegations here are quite similar to those in <u>Abbas v. Woleben</u>, No. 3:13cv147, 2013 WL 5295672, 2013 U.S. Dist. LEXIS 134446 (E.D. Va. Sept. 18, 2013), another case where a student failed to allege facts demonstrating a protected property interest. In



FRITH ANDERSON +PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0407\NHS
4863-2643-0768 .v7

Abbas, the plaintiff relied on an implied contract theory in support of his procedural due process claim against the Medical College of Virginia ("MCV") at Virginia Commonwealth University and its employees. Id. at *19–21. Along with his reliance on the payment of tuition and fees, that plaintiff alleged that his dismissal from MCV was "not in accordance with the student handbook." Id., at *10. The Abbas Court rejected that argument because university handbooks and catalogs are subject to revision at any time and do not bind the university. Id. at *11 (citing Davis v. George Mason Univ., 395 F. Supp. 2d 331, 337 (E.D. Va. 2005); Brown v. Rector & Visitors of Univ. of Va., No. 3:07cv30, 2008 U.S. Dist. LEXIS 36427, 2008 WL 1943956, at *6 (W.D. Va. May 2, 2008)).

Since Abbas, other courts have described the right of unilateral revision of such policies and handbooks as a lack of mutuality that is a condition precedent to the formation of an express or implied contract. See Doe v. Washington & Lee Univ., 439 F. Supp. 3d at 792 (citing Jackson v. Liberty Univ., No. 6:17cv41, 2017 WL 3326972, 2017 U.S. Dist. LEXIS 122104, at *17 (W.D. Va. Aug. 3, 2017)); see also Brown v. Porter, No. 2:19cv376, 2020 U.S. Dist. LEXIS 245054, at *34–35 (E.D. Va. Oct. 20, 2020) adopted by 2020 WL 7226143, 2020 U.S. Dist. LEXIS (E.D. Va. Dec. 8, 2020). Codes of conduct, sexual misconduct policies, and student handbooks are "'guidelines' for students rather than reciprocal agreements." Id.; see also Sheppard v. Visitors of Va. State Univ., 993 F.3d 230, 239–40 (4th Cir. 2021) (codes of conduct and university procedures do not implicate interests that trigger a federal due process claim); Doe v. Marymount Univ., 297 F. Supp. 3d 573, 588 (E.D. Va. 2018); Doe v. Washington & Lee Univ., No. 6:14cv52, 2015 U.S. Dist. LEXIS 102426, 2015 WL 4647996, at *11 (W.D. Va. Aug. 5, 2015)).



629.0407\NHS
4863-2643-0768 .v7

Here, even if the Code of Conduct could form the basis of a property interest claim, Plaintiff's general references to its mere existence do not shed any light on how a property interest arises from it. Unlike in <u>Alger I</u>, Plaintiff points to no express provisions of the Code of Conduct or even any patterns and practices of Virginia Tech. Plaintiff does not allege he accepted admission to Virginia Tech because of his reliance on Virginia Tech's policies regarding student rights. Plaintiff does not claim Virginia Tech never disciplined a student for alleged misconduct without proving cause through a fair and impartial process. Plaintiff does not reference any specific rights listed in Virginia Tech's student rights policy. Plaintiff utterly fails, again, to identify specific facts undergirding his alleged property interest in continued enrollment at Virginia Tech. Indeed, Plaintiff's allegations do not come anywhere close to the "sparse" allegations the Court found barely acceptable in <u>Alger I</u>. As such, Plaintiff's Second Amended Complaint fails to allege a protected property interest supporting his procedural due process claim, and that claim should be dismissed with prejudice.

**d.** **<u>Plaintiff received due process.</u>**

Even if Plaintiff has alleged a protected property interest, his claim still fails because he fails to allege facts showing a deprivation of the constitutionally required due process for student discipline. The fundamental requirements of due process are fair notice and an opportunity to be heard. <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 546 (1985); <u>see</u> <u>also</u> <u>Mathews v. Eldridge</u>, 424 U.S. 319, 333 (1976). But what process is due is a "flexible" inquiry and depends on the "particular situation" at hand. <u>Morrissey v. Brewer</u>, 408 U.S. 471, 481 (1972).



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

- 19 -

Defendants acknowledge that the Court concluded that Plaintiff's First Amended Complaint "stated a claim that Virginia Tech did not employ constitutionally adequate procedures when it gave [Plaintiff] one day's notice of the hearing." ECF No. 35, *25. That determination stemmed, at least in part, from the fact that after he learned he had been accused of sexual assault and would be suspended pending a forthcoming hearing, Plaintiff "spent part of the following week receiving in-patient mental health care." Id. Notably absent from either the First Amended Complaint or the Second Amended Complaint, however, is any allegation that Cherry-Clarke **knew** that Plaintiff had been in the hospital and an in-patient mental health facility when Cherry-Clarke (a) told Plaintiff about the upcoming hearing date; and (b) denied Plaintiff's request for an extension.

There are no allegations that Plaintiff informed anyone at Virginia Tech in advance of the hearing or during the investigation that he had just been discharged from a mental health facility or been in the hospital. Rather, he simply told Cherry-Clarke, "I did not have enough time to [prepare] and collect all of the evidence that I need to defend [myself]." Id., ¶¶ 63–64. If the inquiry as to what process is due is indeed "flexible" and depends on the "particular situation" at hand, Morrisey, 408 U.S. at 481, the lack of any knowledge on Cherry-Clarke's part is critical to this analysis. For the foregoing reasons and the reasons set forth in Defendants' prior memoranda, see ECF Nos. 13, 16, and 27, Virginia Tech provided Doe adequate notice and a meaningful hearing.[10] For these reasons, in addition to those stated above, Plaintiff's due process claim fails as a matter of law.

---

[10] Tigrett v. Rector & Visitors of Univ. of Va., 290 F.3d 620, 627 (4th Cir. 2002); Butler v. Rector & Bd. of Visitors of the College of William & Mary, 121 F. App'x 515, 520 (4th Cir. 2005); Cobb v. Rector & Visitors of the Univ. of Va., 69 F. Supp. 2d 815, 829 (W.D. Va. 1999).

629.0407\NHS
4863-2643-0768 .v7

**e.** __Qualified immunity__

Even if the Court disagrees with the above, Cherry-Clarke enjoys the benefit of qualified immunity against Plaintiff's due process claim against her in her individual capacity. First, there is no clearly established right to continued enrollment at a university for purposes of Plaintiff's asserted property interest. Second, the amount of advance notice required before a student disciplinary proceeding—when the student has sufficient notice of the charges he faces—was not clearly established at the time of the events in the Complaint.

**1.  Qualified immunity standard**

Qualified immunity serves the dual purpose of holding "'public officials accountable when they exercise power irresponsibly and . . . shield[ing] officials from harassment, distraction, and liability when they perform their duties reasonably.'" <u>Danser v. Stansberry</u>, 772 F.3d 340, 345 (4th Cir. 2014) (quoting <u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009)). The defense applies so long as the defendant's conduct does not violate a clearly established right of which a reasonable person would have known. <u>Id.</u> (citing <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). Because qualified immunity provides "'immunity from suit rather than a mere defense to liability,'" it is imperative that a ruling on the issue "be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001) (quoting <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985)).

When a defendant asserts a qualified immunity defense, the court must conduct a two-pronged analysis which addresses (1) whether the defendant violated the plaintiff's constitutional rights; and (2) if so, whether at the time of the alleged violation the right



FRITH
ANDERSON
+ PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

- 21 -

was clearly established. Danser, 772 F.3d at 345–46 (citing Meyers v. Baltimore Cnty., Md., 713 F.3d 723, 731 (4th Cir. 2013)). The Court may address either prong first in its qualified immunity analysis. Hensley v. Price, 876 F.3d 573, 580 (4th Cir. 2014) (citing Pearson, 555 U.S. at 236).

The second element of the qualified immunity analysis requires the court to determine, without the benefit of hindsight, whether "'the contours of the right . . . [were] sufficiently clear [such] that [a] reasonable official would understand that what he is doing violates that right.'" Brown v. Ray, 695 F. Supp. 2d 292, 304 (W.D. Va. 2010) (quoting Brosseau v. Haugen, 543 U.S. 194, 198 (2004)). Indeed, the question is not whether the official's actions were correct but, rather, whether those actions were reasonable under the circumstances. Id.

In the Fourth Circuit, whether a right is clearly established hinges on "'the decisions of the Supreme Court, [the Fourth Circuit Court of Appeals], and the highest court of the state in which the case arose.'" Owens v. Lott, 372 F.3d 267, 279–80 (4th Cir. 2004) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 251 (4th Cir. 1999)). When no controlling authority exists, a court "may look to 'a consensus of persuasive authority' from other jurisdictions if such exists." Id. (quoting Wilson v. Layne, 526 U.S. 603, 617 (1999)). While not conclusive, "'[i]f a right is recognized in some other circuit, but not in this one, an official will ordinarily retain the immunity defense.'" Edwards, 178 F.3d at 251 (quoting Jean v. Collins, 155 F.3d 701, 709 (4th Cir. 1998) (en banc)). The Court may, however, construe a particular right as clearly established if a "'a consensus of cases of persuasive authority' from other jurisdictions . . . exists." Booker v. S.C. Dep't of Corr., 855



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

F.3d 533, 539 (4th Cir. 2017) (quoting <u>Owens ex rel Owens v. Lott</u>, 372 F.3d 267, 280 (4th Cir. 2004)).

It is a "longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" <u>White v. Pauly</u>, 580 U.S. 73, 79 (2017) (per curiam) (quoting <u>Ashcroft</u>, 563 U.S. at 742). Thus, before holding a government officer liable for breaching a clearly established right, the Court must "identify a case where [a defendant] acting under similar circumstances . . . was held to have violated" the plaintiff's rights. <u>Id.</u> This analysis does not require that the "'exact conduct at issue' . . . previously have been deemed unlawful for the law governing [a defendant's] action to be clearly established." <u>Sims v. Labowitz</u>, 885 F.3d 254, 263 (4th Cir. 2018) (quoting <u>Amaechi v. West</u>, 237 F.3d 356, 362 (4th Cir. 2001)). But there must be clearly established law that is "particularized to the facts of the case' so as to avoid transforming qualified immunity into 'a rule of virtually unqualified immunity." <u>Safar v. Tingle</u>, 859 F.3d 241, 246 (4th Cir. 2017) (internal quotations omitted)

> **2. It is not clearly established that university students have a constitutionally protected property right in continued enrollment**

This past April, the United States Court of Appeals for the Fourth Circuit ruled in a published decision that it is not clearly established that a university student has a right to continued education. <u>Sheppard</u>, 993 F.3d at 240. Accordingly, on that basis alone, Cherry-Clarke is entitled to qualified immunity for the claim against her in her individual capacity.



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

**3. What constitutes an adequate amount of notice required before a disciplinary hearing is not clearly established.**

While it is clear that a university student is entitled to advance notice of the charges against him before a disciplinary hearing, it is not clearly established how much notice is required when the student receives notice of the charges prior to a disciplinary hearing being set. As the <u>Tigrett</u> Court noted, the focus of the analysis is notice of the *charges*, not notice of the hearing time. Further, as noted above, ***there are no allegations*** that Cherry-Clarke (or anyone at Virginia Tech for that matter) knew that Plaintiff had been in the hospital and an in-patient mental health facility when Plaintiff requested an extension of the hearing date. If qualified immunity is truly intended to protect "bad guesses in gray areas," then under the alleged facts here, Cherry-Clarke is entitled to qualified immunity for her decision not to continue the hearing date when there are no allegations she had any knowledge about Plaintiff's hospitalization.

**III. <u>Plaintiff's Title IX Claim is Time-Barred</u>**

Plaintiff expressly alleges that in March 2019 he emailed Onufriev to complain about the allocation of the grant funds. ECF No. 37, ¶ 26. Plaintiff's Title IX claim is time-barred in its entirety for two reasons. First, Plaintiff knew (and complained) about the perceived gender bias in the allocation of the grant funds in March 2019 but did not file this action until June 2021. Second, the continuing violation doctrine does not apply to Title IX claims for statute of limitations purposes. As such, Plaintiff's Title IX gender discrimination claim for "grant funding and educational opportunities" is time-barred.

**a. Title IX's Statute of Limitations is Two Years**

Claims under Title IX have a two-year statute of limitations. <u>Doe I v. Va. Tech</u>, 400 F. Supp. 3d at 495–96; Va. Code § 8.01-243(A). When exactly a Title IX claim accrues for



629.0407\NHS
4863-2643-0768 .v7

purposes of the statute of limitations rests in federal law. <u>Doe I v. Va. Tech</u>, 400 F. Supp. 3d at 489–90, 494 (citations omitted).

> [T]he touchstone for determining the commencement of the limitations period is *notice*: a cause of action generally accrues when a plaintiff knows or has reason to know of the injury which is the basis of his action. The proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful.

<u>Samuelson v. Oregon State Univ.</u>, 162 F. Supp. 3d 1123, 1134 (D. Or. 2016), <u>aff'd</u>, 725 F. App'x 598 (9th Cir. 2018) (emphasis added); <u>Stanley v. Trustees of California State University,</u> 433 F.3d 1129, 1136 (9th Cir. 2006) (quoting <u>Hoesterey v. City of Cathedral City,</u> 945 F.2d 317, 319 (9th Cir. 1991) (internal quotations and citations omitted)). So, when a "plaintiff possesses sufficient facts about the harm done to him [such] that a reasonable inquiry will reveal his cause of action," the statute of limitations clock starts counting down. <u>Nasim v. Warden, Md. House of Correction</u>, 64 F.3d 951, 955 (4th Cir. 1995) (en banc).

For purposes of accrual, the statute of limitations for Plaintiff's Title IX claim regarding "grant funding and educational opportunities" began to run no later than when Plaintiff himself complained about the allocation of the grant funds to the female. See <u>Doe I v. Va. Tech</u>, 400 F. Supp. 3d at 490–91.[11]

In <u>Doe I v. Va. Tech</u>, Judge Dillon ruled that Title IX gender discrimination claims accrue upon notice of the discriminatory act, not when the consequences of that act become most painful. <u>Doe I v. Va. Tech</u>, 400 F. Supp. 3d at 485, 490–92, 494 (citing



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

---

[11] <u>See also</u> <u>Lendo v. Garrett Cnty. Bd. of Educ.</u>, 820 F.2d 1365, 1367 (4th Cir. 1987); <u>Endres v. Ne. Oh. Med. Univ.</u>, No. 5:17cv2408, 2018 U.S. Dist. LEXIS 142745, 2018 WL 4002613, at *16–17 (N.D. Ohio Aug. 22, 2018); <u>Tolliver v. Prairie View A&M Univ.</u>, NO. H-18-1192, 2018 U.S. Dist. LEXIS 169031, 2018 WL 4701571, at *4 (S.D. Tex. Oct. 1, 2018); <u>Martin v. Clemson Univ.</u>, 654 F. Supp. 2d 410, 421–22 (D.S.C. 2009); <u>Siblerud v. Co. State Bd. of Agriculture</u>, 896 F. Supp. 1056 (D. Colo. 1995); <u>Morris v. Government Dev. Bank</u>, 27 F.3d 746, 749 (1st Cir. 1994).

<u>Delaware State College v. Ricks</u>, 449 U.S. 250 (1980)); ECF No. 35, *27–28. The same reasoning is applicable here.

Here, Plaintiff expressly alleges that he complained to Onufriev in March 2019 about perceived gender bias in Onufriev's allocation of grant funds for a research assistant position. ECF No. 37, ¶¶ 24–26. Plaintiff was aware of the allocation at that time and even disputed it as improper. <u>Id.</u>, ¶ 25. He sent an email to Onufriev in March 2019 "document[ing] his concerns" about unequal treatment of students of different gender, race, and ethnicity. <u>Id.</u> Thus, *at that time*, Plaintiff had "sufficient facts about the harm done to him [such] that a reasonable inquiry [would] reveal his cause of action." <u>Nasim</u>, 64 F.3d at 955. Plaintiff had notice of the alleged discriminatory act in March 2019 by his own allegations, and he concedes he felt he had been treated differently based on his gender at least as early as that time. ***Plaintiff does not allege that Onufriev received a new or different grant after that time that served as the source of the funding for the research assistant position.*** Because the statute of limitations period commenced more than two years prior to when Plaintiff filed his original Complaint in June 2021, his Title IX claim based on the allocation of grant funding is time-barred *in its entirety*.

**b.  The Continuing Violation Doctrine Does Not Apply to Title IX**

To the extent even argued, although never previously raised by Plaintiff, there was no continuing violation so as to effectively toll the statute of limitations in this case.[12] In <u>Doe I v. Va. Tech</u>, the Court rejected the application of the continuing violation theory to a Title IX claim—which, again, has never even been advanced by Plaintiff in this case.



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

---

[12] It is unclear as to whether the continuing violation doctrine even applies to Title IX claims. <u>See</u> <u>Doe v. Mercy Catholic Med. Ctr.</u>, 850 F.3d 545, 566 (3d Cir. 2017); <u>Dibbern v. Univ. of Mich.</u>, No. 12-15632, 2016 WL 2894491, at *19, 2016 U.S. Dist. LEXIS 65129, at *55–56 (E.D. Mich. May 18, 2016); <u>Papelino v. Albany Coll. Of Pharmacy of Union Univ.</u>, 633 F.3d 81, 91 (2d Cir. 2011).

629.0407\NHS
4863-2643-0768 .v7

The continuing violation doctrine focuses on "continual unlawful acts, not continual ill effects from an original violation." <u>Weis-Buy Servs., Inc. v. Paglia</u>, 411 F.3d 415, 423 (3d Cir. 2005); <u>A Soc'y Without a Name</u>, 655 F.3d at 348–49 ("But continual unlawful acts are distinguishable from the continuing ill effects of an original violation because the latter do not constitute a continuing violation.") (citation omitted).

In <u>A Society Without a Name</u>, an apt comparison to the circumstances in this case, the plaintiff contended that the construction of a homeless services center was not compliant with the Americans with Disabilities Act. <u>A Soc'y Without a Name for People Without a Home, Millennium Future-Present v. Virginia</u>, 699. F. Supp. 2d 787, 800, 2010 U.S. Dist. LEXIS 23783 (E.D. Va. Feb. 17, 2010). In an attempt to avoid a statute of limitations defense, the plaintiff in that case argued that the center's continued provision of services constituted a continuing violation so as to extend the limitations period. <u>Id.</u> The district court disagreed, refusing to conclude that "*each decision to add a new service for the homeless at the Conrad Center constitutes a continuation of unlawful discrimination under the ADA.*" <u>Id.</u> at 800, 2010 U.S. Dist. LEXIS 23783 (emphasis added), <u>adopted</u> <u>by</u>, 699 F. Supp. 2d 787, 789, 2010 U.S. Dist. LEXIS 23807 (E.D. Va. Mar. 15, 2010). The Fourth Circuit affirmed. <u>A Soc'y Without a Name</u>, 655 F.3d at 348–49; <u>see also</u> <u>Jersey Heights Neighborhood Ass'n v. Glendening</u>, 174 F.3d 180, 189 (4th Cir. 1999) ("At bottom, appellants' continuing violation argument rests on the alleged ongoing effects of the original decision to locate the highway in proximity to Jersey Heights.").

Here, the same is true. Plaintiff's Second Amended Complaint does not allege continual unlawful acts. Rather, he alleges continuing ill effects of the original decision to allocate the grant funding to another student. Just like in <u>A Society Without a Name</u>, the



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0407\NHS
4863-2643-0768 .v7

decision to allocate the funding to another student in 2019–2020 did not constitute a
"continuation of unlawful discrimination." Rather, Plaintiff's claim "rests on the alleged
ongoing effects of the *original decision*" to allocate the funds to another student, which
Plaintiff was aware of and contested in March 2019. Plaintiff has not alleged the sort of
facts that demonstrate "a *pattern* of discriminatory acts" so as to warrant application of
the continuing violation principle. As such, the continuing violation theory, even if
applicable to a Title IX claim, would not operate to extend the statute of limitations so as
to make Plaintiff's claim timely in this case.

**IV. <u>Plaintiff Fails to Allege Facts Showing a Violation of Title IX.</u>**

Title IX of the Education Amendments of 1972 provides that:

> No person in the United States shall, on the basis of sex, be excluded from
> participation in, be denied the benefits of, or be subjected to discrimination
> under any education program or activity receiving Federal Financial
> assistance.

20 U.S.C. § 1681(a).

In <u>Sheppard v. Visitors of Virginia State University</u>, the Fourth Circuit agreed—in
part—with the pleading standard for Title IX cases adopted by the Seventh Circuit, which
asks whether "the alleged facts, if true, raise a plausible inference that the university
discriminated against the student on the basis of sex?" <u>Sheppard</u>, 993 F.3d at 236
(internal quotations omitted).[13] The <u>Sheppard</u> Court clarified, however, that "a Title IX
plaintiff [must] adequately plead causation—that is, a causal link between the student's
sex and the university's challenged [decision]." <u>Id.</u> That causal link requires "'but-for'

---

[13] Prior to the decision in <u>Sheppard</u>, courts in the Western District of Virginia generally followed the
analysis set forth in <u>Yusuf v. Vassar College</u>, 35 F.3d 709 (2d Cir. 1994) for analyzing Title IX claims. <u>Doe I
v. Va. Tech</u>, 400 F. Supp. 3d at 502–03. The <u>Sheppard</u> Court explained that the "selective enforcement" and
"erroneous outcome" theories in <u>Yusuf</u> could be avenues to establish the requisite "but for" causation.
<u>Sheppard</u>, 993 F.3d at 236.

causation," which means that the plaintiff's "gender was the 'but-for' cause of his treatment . . . ." Id. at 236–37, 238 (citations omitted). To meet that standard, the plaintiff must identify "sufficiently particularized allegations of gender discrimination" such as statements or "patterns of decision-making that also tend to show the influence of gender." Doe I v. Va. Tech, 400 F. Supp. 3d at 503 (internal quotations and citation omitted).

Mere conjecture and speculation of discrimination based on sex, however, fails to state a claim under Title IX. Yusuf, 35 F.3d at 715. That a plaintiff believes that his gender was the reason for the alleged discriminatory action, "absent more, does not suffice to render his claim plausible." Sheppard, 993 F.3d at 238. Indeed, mere conclusory allegations are insufficient to make it plausible that gender bias was a but for cause of an alleged erroneous outcome of a disciplinary proceeding. See Doe v. W. New Eng. Univ., 228 F. Supp. 3d 154, 190 (D. Mass. 2016), adopted by 228 F. Supp. 3d 154 (D. Mass. 2017); Sahm v. Miami Univ., 110 F. Supp. 3d 774, 778–80 (dismissing plaintiff's Title IX claim because the complaint failed to allege any statements of members of the disciplinary body or university officials or any patterns of conduct that permitted the court to infer bias against male students); Doe v. Univ. of Mass-Amherst, No. 14-30143, 2015 WL 4306521, 2015 U.S. Dist. LEXIS 65452, at *27 (D. Mass. July 14, 2015); Harris v. St. Joseph's Univ., 2014 WL 1910242, 2014 U.S. Dist. LEXIS 65452, at *16–17 (E.D. Pa. May 13, 2014) (dismissing plaintiff's Title IX claim due to his failure to allege sufficient facts to support his claim that gender bias was a motivating factor in the university's decision); see also King v. DePauw Univ., No. 2:14cv70, 2014 U.S. Dist. LEXIS 117075, 2014 WL 4197507, at *10 (S.D. Ind. Aug. 22, 2014) (denying plaintiff's motion for a preliminary injunction based



FRITH ANDERSON +PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

on an alleged violation of Title IX due to the absence of any evidence that "plaintiff's gender was a motivating factor in any of [the university's] actions").

Plaintiff sums up his Title IX claim as follows:

> 93. Virginia Tech deprived Mr. Doe, on the basis of his gender, of his rights of due process and equal protection through its improper application and administration of its policies to Mr. Doe in the pursuit of his degree program.
>
> 94. Virginia Tech, through Dr. Onufriev, favored a female student in Mr. Doe's laboratory, over a male student, Mr. Doe, in the allocation of grant funding and other educational opportunities in the 2019–2020 academic year, and such discrimination was because of Mr. Doe's gender.

ECF No. 37, ¶¶ 93–94. A review of Plaintiff's factual allegations, however, does not lend support to these legal conclusions.

First, as to Plaintiff's claim that Virginia Tech discriminated against him "through its improper application and administration of its policies," Plaintiff does not identify any policies of Virginia Tech in his Second Amended Complaint, much less offer factual allegations as to how any such policies were improperly applied. Thus, the conclusion in paragraph 93 of the Second Amended Complaint lacks any factual support and does not serve as a basis for a Title IX claim against the university.

Second, Plaintiff fails to plead facts satisfying the steep "but for" causal link for his conclusory allegation that Onufriev's decision to allocate the grant funds to a female was due to gender bias. To meet that standard, he must point to "sufficiently particularized allegations of gender discrimination" such as statements or "patterns of decision-making that also tend to show the influence of gender." Doe I v. Va. Tech, 400 F. Supp. 3d at 503 (internal quotations and citation omitted). Doe fails to identify any statements showing the influence of gender bias in Onufriev's classroom and lab and fails to identify any



FAP

FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

"patterns" of decisions by Onufriev showing the influence of gender. The fact that Doe believes that his gender was the reason Onufriev gave the research position to another student, "absent more, does not suffice to render his claim plausible." <u>Sheppard</u>, 993 F.3d at 238. Without factual allegations to demonstrate the steep causation requirement that gender bias was "***the*** but-for" cause of the university's decision, Plaintiff fails to state a claim under Title IX for the alleged discrimination in regard to grant funding and educational opportunities.

Plaintiff's Title IX claim has rested on the same essential facts since the filing of his original complaint in this action. To summarize, at an academic conference *another researcher* asked Plaintiff if Onufriev "was still 'chasing after' female graduate students." ECF No. 37, ¶ 20. At a different conference, Onufriev allegedly told Plaintiff, through another student, that there was an attractive woman presenting at the conference. <u>Id.</u>, ¶ 21. Onufriev referred to the female student who received the research stipend as a "Persian princess." <u>Id.</u>, ¶ 25. But Onufriev told Plaintiff that Plaintiff could not "***compete with [the female student], you are not at her level.***" <u>Id.</u>, ¶ 29 (emphasis added). Finally, Onufriev allegedly "constantly" met with the female student but ignored Plaintiff's requests for meetings. <u>Id.</u>

Plaintiff's own allegations belie his Title IX claim. Indeed, by Plaintiff's allegations, <u>id.</u>, ¶ 29, Onufriev did not feel that Plaintiff was as *academically* qualified as the female student, which is not indicative of bias against males. <u>Accord</u> <u>Doe v. Fairfax Cnty. Sch. Bd.</u>, 403 F. Supp. 3d 508, 519 (E.D. Va. 2019) (bias in favor of alleged victims of sexual assault and against alleged perpetrators is not the equivalent of bias against males) (collecting cases). The allegations insinuating that Onufriev is physically attracted to females cannot



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0407\NHS
4863-2643-0768 .v7

support a Title IX claim either, as that would result in an unconscionable and illogical result. Lastly, Plaintiff's complaints about the number of meetings between Onufriev and the female student fails to account for the non-gender based factor that the female student was serving as Onufriev's research assistant at the time as opposed to Plaintiff who was not a research assistant. Thus, Plaintiff fails to state a claim under Title IX regarding the allocation of grant funding.

**V.   <u>Plaintiff Fails to State a Claim for Retaliation Under Title IX</u>**

Although not asserted in a separate count, Plaintiff claims Onufriev retaliated against him after Plaintiff complained of gender bias in the physics lab. ECF No. 37, ¶ 95.

Title IX's implied private right of action includes claims for retaliation. <u>Jackson v. Birmingham Bd. of Educ.</u>, 544 U.S. 167, 171 (2005). To state a claim for retaliation under Title IX, a plaintiff "must allege that [he] engaged in protected activity under Title IX, and second, [he] suffered an adverse action attributable to the defendant educational institution." <u>Feminist Majority Found. v. Hurley</u>, 911 F.3d 674, 694 (4th Cir. 2018) (citations omitted). A retaliation claim under Title IX is a *separate cause of action* from a Title IX discrimination claim because a plaintiff claiming retaliation "must show a retaliatory motive." <u>Id.</u> at 696.

But not all retaliatory conduct is actionable. <u>Id.</u> at 694. Instead, the retaliatory conduct must be "materially adverse" such that it would "dissuade a reasonable person from making or supporting a charge of discrimination." <u>Id.</u> (internal quotations and citation omitted). "Retaliatory harassment *may* constitute a materially adverse action." <u>Id.</u>

Plaintiff alleges that he complained to Onufriev in March 2019 about perceived gender bias. Yet, Plaintiff does not allege that Onufriev retaliated against Plaintiff in any



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0407\NHS
4863-2643-0768 .v7

way after Plaintiff complained. Indeed, Plaintiff alleges that Onufriev "*ignored*" Plaintiff's complaints. ECF No. 37, ¶ 32. Then, Plaintiff complained to the chair of the department in December 2019, nine months after he complained to Onufriev. Id., ¶ 32. At that time, Plaintiff claims Onufriev retaliated against him by (1) withholding a letter certifying completion of Plaintiff's Master's degree; (2) assigning "excessive, redundant, and contradictory research tasks"; (3) setting "false deadlines to publish papers"; and (4) creating "a hostile condition in the lab . . . ." Id., ¶ 34.[14]

Notably, there are *no facts* describing how Onufriev created a "hostile condition in the lab." Thus, that conclusory allegation cannot substantiate a retaliation claim. Moreover, the Court previously concluded that Plaintiff's allegations regarding retaliation did not allege any basis suggesting that Onufriev's actions were "attributable to Virginia Tech." ECF No. 35, *33. Indeed, to impute liability to the university, there must be facts sufficient to draw an inference that the university was deliberately indifferent to the retaliatory conduct. Feminist Majority Found., 911 F.3d at 695; see also Litman v. George Mason Univ., 131 F. Supp. 2d 795, 801 (E.D. Va. 2001) (plaintiff claiming retaliation under Title IX must prove institution had notice of retaliatory behavior). The allegations regarding retaliation have not changed from the First Amended Complaint to the Second Amended Complaint. Compare ECF No. 21, ¶¶ 28–30 with ECF No. 37, ¶¶ 32–34. The Second Amended Complaint lacks any facts suggesting Virginia Tech was deliberately indifferent. It appears the only direction Plaintiff took from the Court was to add an allegation of retaliation under Count II in his Second Amended Complaint. See ECF No. 37, ¶ 95; ECF No. 35, *33 ("Moreover, Doe did not plead a retaliation claim as part of his Title

---

[14] These allegations essentially mirror those in Plaintiff's First Amended Complaint. See ECF No. 21, ¶¶ 28–30.

629.0407\NHS
4863-2643-0768 .v7

IX cause of action."). Thus, Plaintiff has provided no basis for the Court to change its ruling that Plaintiff fails to allege facts to impute Onufriev's alleged actions to Virginia Tech. <u>See</u> ECF No. 35, *33; <u>Clehm v. BAE Sys. Ordnance Sys.</u>, 786 F. App'x 391, 394 (4th Cir. 2019) (per curiam). Accordingly, Plaintiff's Title IX retaliation claim should be dismissed with prejudice.

**CONCLUSION**

WHEREFORE, defendants Virginia Polytechnic Institute and State University, Timothy Sands, Alexey Onufriev, and Tamara Cherry-Clarke, by counsel, respectfully request entry of an Order granting Defendants' Motion to Dismiss, dismissing this case with prejudice, and granting such further relief as the Court deems just and proper.

Respectfully submitted,

VIRGINIA POLYTECHNIC INSTITUTE AND
STATE UNIVERSITY, TIMOTHY SANDS, ALEXEY
ONUFRIEV, and TAMARA CHERRY-CLARKE

/s/_____
Katherine C. Londos (VSB #: 36848)
Nathan H. Schnetzler (VSB #: 86437)
FRITH ANDERSON + PEAKE, P.C.
29 Franklin Road, SW
P.O. Box 1240
Roanoke, Virginia 24006-1240
Phone: 540/772-4600
Fax:    540/772-9167
Email: klondos@faplawfirm.com
        nschnetzler@faplawfirm.com



629.0407\NHS
4863-2643-0768 .v7

Kay Heidbreder (VSB No.: 22288)
University Legal Counsel and
Senior Assistant Attorney General
*heidbred@vt.edu*
M. Hudson McClanahan (VSB No.: 46363)
*hud3@vt.edu*
Kristina J. Hartman (VSB No.: 92279)
*kjhart06@vt.edu*
Stephen F. Capaldo (VSB No.: 74045)
*scapaldo@vt.edu*
Associate University Legal Counsel and
Assistant Attorney General
University Legal Counsel (0121)
Burruss Hall, Suite 236, Virginia Tech
800 Drillfield Drive
Blacksburg, VA  24060
Phone: (540) 231-6293
Fax: (540) 231-6474

*Counsel for Defendants*



629.0407\NHS
4863-2643-0768 .v7

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 9, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send notification of such filing to all counsel of record.

/s/ Nathan H. Schnetzler
Of Counsel

FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0407\NHS
4863-2643-0768 .v7