UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

| | |
|---|---|
| JOHN DOE, <br><br> Plaintiff, <br><br> v. <br><br> VIRGINIA POLYTECHNIC INSTITUTE AND STATE UNIVERSITY, et al. <br><br> Defendants. | Civil Action No. 7:21-cv-378 |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**

Plaintiff John Doe, by counsel, opposes Virginia Polytechnic Institute and State University ("Virginia Tech"), Timothy Sands, Alexey Onufriev, Tamara Cherry-Clarke's Motion to Dismiss pursuant to Rule 12(b)(6), and states as follows:

**INTRODUCTION**

Mr. Doe, a former graduate student at Virginia Tech, brings two claims in his Second Amendment Complaint. First, he alleges Dr. Sands, in his official capacity, and Ms. Cherry-Clarke, in her official and individual capacities, violated his right to due process when he was given one day's notice to defend against a charge of sexual assault at a university conduct hearing. Second, he alleges Virginia Tech and Dr. Onufriev violated his right under Title IX to be free from discrimination and retaliation in the allocation of laboratory grant funding.

The defendants contend Mr. Doe failed to allege sufficient facts to state a property interest in his continued education; that Ms. Cherry-Clarke is entitled to qualified immunity because the requisite notice for a disciplinary hearing is not clearly established; that the Title IX claim for grant funding is time-barred; and generally, that he has not alleged sufficient facts to state a claim.

For the reasons set forth below, Mr. Doe moves the Court to deny the motion.

1

**LEGAL STANDARD**

In a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a "court must regard as true all of a plaintiff's well-pleaded allegations ...as well as any facts that could be proven consistent with those allegations." *Jones v. Imaginary Images, Inc.*, 2012 WL 3257888, *5 (E.D. Va. Aug. 8, 2012). The complaint "need not be supported by evidence but must 'state a claim for relief that is plausible on its face.'" *Id.* (quoting *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009)). "If the complaint alleges....each of the elements of 'some viable legal theory,' the plaintiff should be given the opportunity to prove that claim." *Id.* (quoting *Bell Atl.Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007)).

A plaintiff need not allege facts in "painstaking detail." *Suntrust Mortgage, Inc. v. Sharpe Mortgage Lending Services of Georgia, Inc.*, 2011 WL 6178221, *3 (E.D. Va. Dec. 12, 2011). Rather, Rule 8(a) requires only a short and plain statement of facts showing that the pleader is entitled to relief. *Id.* "Determining whether a complaint states a plausible claim for relief is 'a context specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Oakes v. Patterson*, 2014 WL 1569427, *2 (W.D. Va. April 17, 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

**FACTUAL BACKGROUND**

In 2013, Mr. Doe enrolled at Virginia Tech to pursue a PhD in physics. ECF No. 37, ¶11. In 2015, he began working with Dr. Onufriev. *Id.* at ¶14. He planned to pursue a career as a pharmaceutical scientist. *Id.* at ¶15. Dr. Onufriev was a well-known molecular biophysicist whose research generated a considerable amount of grant funding for Virginia Tech. *Id.* at ¶17. Mr. Doe joined Dr. Onufriev's laboratory at Virginia Tech, the Center for Theoretical and Computation Molecular Biophysics, in pursuit of his PhD. *Id.* at ¶18.

Upon joining Dr. Onufriev's lab, Mr. Doe began suffering severe discrimination by Dr. Onufriev on account of his gender. *Id.* at ¶19. Dr. Onufriev openly favored Mr. Doe's colleague, a female graduate student, in awarding her a grant stipend and refused to pay Mr. Doe, even though Mr. Doe performed the research that supported of the grant, not the other student. *Id.* at ¶24. Mr. Doe asked why the female student received a stipend, and Dr. Onufriev reportedly told Mr. Doe, "who can resist a Persian princess?" in front of Mr. Doe and their lab colleagues. *Id.* at ¶25.

In August 2019, Mr. Doe again discovered he would not receive a research stipend during the 2019-2020 academic year, and the above female student in the lab would receive the funds instead. *Id.* at ¶28. Dr. Onufriev again remarked that she was a "princess" and said, "You cannot compete with her, you are not at her level." *Id.* at ¶29. Dr. Onufriev gave undue attention to the female student in his lab in other ways. He ignored Mr. Doe's requests to meet for office hours to discuss upcoming publications. *Id.* He kept Mr. Doe waiting hours for appointments, then not show up at all, while Dr. Onufriev constantly met with the female student at the lab. *Id*. Ultimately, Dr. Onufriev never allocated grant funds to Mr. Doe for his research during the academic year. The female student could focus on her research and advancing toward her doctoral degree because she received financial assistance, whereas Mr. Doe had to take on a teaching position, supervising over 100 students, to make ends meet, in addition to the long hours required at the lab. *Id.* at ¶31.

In December 2019, after Mr. Doe's complaints about the research funding were ignored by Dr. Onufriev, Mr. Doe reported Dr. Onufriev's conduct to Dr. Mark Pitt, Chair of the Physics Department at Virginia Tech. *Id.* at ¶32. Dr. Pitt shared Mr. Doe's complaint with Dr. Onufriev. *Id.* at ¶33. Dr. Onufriev began retaliating against Mr. Doe, including withholding a letter certifying the completion of Mr. Doe's Master's degree; assigning excessive, redundant, and contradictory

3

research tasks; setting false deadlines to publish papers; and, creating a hostile condition in the lab in an effort to cause Mr. Doe to voluntarily resign from the program. *Id.* at ¶34.

As a result of Mr. Doe's perceived mistreatment in Dr. Onufriev's lab, he developed a tremendous amount of stress, anxiety, and turmoil, which caused him to seek counseling. *Id.* at ¶35-36. He sought medical treatment at the university's counseling center. *Id.* at ¶36. Around the same time, another student accused Mr. Doe of making unwanted advances after they met on a dating app. *Id.* at ¶38. He denied the allegations. *Id.* at ¶42. But her accusations, along with the lab conditions, further caused his mental health to spiral. *Id.* at ¶43.

On February 18, 2020, Virginia Tech interimly suspended Mr. Doe pending a student conduct hearing. *Id.* at ¶48. Mr. Doe met with his counselor and was hospitalized for an extended period of time for mental health treatment. *Id.* at ¶50. He was discharged from the hospital on February 25, 2020. *Id.* at ¶51. Three days later, Ms. Cherry-Clarke from the Virginia Tech Office of Student Conduct advised Mr. Doe that he was being charged with violating the university's Title IX policy. *Id.* at ¶53.

On March 5, 2020, Ms. Cherry-Clarke notified Mr. Doe the university would hold a hearing to adjudicate the charge the next day – giving Mr. Doe less than 24 hours to prepare. *Id.* at ¶55. Mr. Doe asked for an extension. *Id.* at ¶63. He said he did not have enough time to collect all the evidence that he needed. *Id.* at ¶56-61. Mr. Doe was an international student who spoke English as a second language, and he had just been discharged from a mental health facility - he could not be expected to meaningfully prepare for a hearing that could end his academic career, and cause him to be deported, with less than 24 hours' notice. *Id.* at ¶62. Ms. Cherry-Clarke refused. *Id.* at ¶65. She said 24 hours was enough time to prepare. *Id.* at ¶66. The hearing went forward, and Mr. Doe was expelled, one semester short of obtaining his PhD. *Id.* at ¶69.

**LAW AND ARGUMENT**

**I.      Mr. Doe's Title IX Claim is not time-barred.**

The statute of limitations for a Title IX claim is two years. Mr. Doe alleges he was denied grant funding for the 2019-2020 academic year, which began August 2019, and but for his gender and Dr. Onufriev's ongoing discrimination, he would have received it. He further alleges that he reported Dr. Onufriev's unequal treatment of men and women in the lab to Dr. Pitt in December 2019, and that shortly thereafter Dr. Onufriev retaliated against him for making a complaint. Mr. Doe filed the instant action in June 2021, less than two years after he suffered a denial of grant funding in August 2019 for the 2019-2020 academic year and a retaliation for reporting the gender discrimination to Dr. Pitt in December 2019. Therefore, the claim is not time-barred.

**II.     Mr. Doe had a property interest in his continuing education.**

In order to plead a due process claim, the plaintiff must allege facts to show that he was "deprived of life, liberty or property, by government action." *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997). "A protected property interest cannot be created by the Fourteenth Amendment itself, but rather must be created or defined by an independent source." Equity in Athletics, Inc. v. Dep't of Educ., 639 F.3d 91, 109 (4th Cir. 2011). This property interest must be "more than a mere `unilateral expectation of it' or `abstract need or desire for it.'" Id. (quoting Roth, 408 U.S. at 577, 92 S.Ct. 2701). Thus, Sheppard must show "a state created property interest in continued enrollment at a public education institution exists in Virginia." Davis v. George Mason Univ., 395 F. Supp. 2d 331, 336 (E.D. Va. 2005), aff'd per curiam, 193 F. App'x 248 (4th Cir. 2006).

The Fourth Circuit has never held whether a college student has a property interest in their continued enrollment. In *Sheppard v. Visitors of Virginia State University*, the Court seemed to acknowledge it is not yet "clearly established" yet whether such a property interest exists – but

5

that was to affirm the trial court's decision dismissing a complaint on qualified immunity grounds, and not that such a property interest could never be established. 993 F. 3d 230, 240 (4th Cir. 2021) (holding a university administrator was entitled to qualified immunity because it was not – yet – clearly established that a student enjoyed a property interest in their continued education).

However, where the Fourth Circuit has not yet spoken conclusively, prior decisions in this district have held that students have a property interest in continuing to receive their paid-for post-secondary public education when the university has established an implied expectation that so long as the student pays their tuition, follows the rules, and meets their academic requirements, they have a vested interest in continuing their education to pursue a degree. *See, e.g. Doe v. Alger*, 175 F. Supp. 3d 646, 657 (W.D. Va. March 31, 2016) ("[p]roperty rights to public education clearly exist when a state statute mandates a free education."); *Krasnow v. Virginia Polytechnic Institute*, 414 F. Supp. 55, 56 (W.D. Va. 1976) ("[S]tudents enrolled in state supported institutions acquire a contractual right for the period of enrollment to attend, subject to compliance with scholastic and behavioral rules of the institution, and to dismissal for violations thereof, provided the dismissal was not arbitrary or capricious."), *aff'd*, 551 F.2d 591 (4th Cir. 1977).

Further, numerous other circuits have recognized a property interest in the pursuit of a public education. *See, e.g., Gaspar v. Bruton*, 513 F.2d 843, 845, 850 (10th Cir. 1975) (where student at a vocational-technical school pursuing courses in practical nursing "paid the requisite enrollment fees to the School and maintained adequate academic grade points in the objective or classroom portion of the course," court holds that "a [property] right must be recognized to have vested with [plaintiff], and the more prominently so in that she paid a specific, separate fee for enrollment and attendance at the [school]."). *Cf. Gunasekera v. Irwin*, 551 F.3d 461, 467 (6th Cir. 2009) (holding that the plaintiff professor had a property interest in his Graduate Faculty status

provided he continued to meet the criteria the University generally required for that status; "an employer's custom and practice can form the basis for a protected property interest.").

Following this Court's rulings in *Alger* and *Krasnow*, Mr. Doe has alleged sufficient facts to state a property interest in his continued education. He enrolled at Virginia Tech in 2013. ECF No. 37, ¶11. By accepting Virginia Tech's offer to enroll as a student, Mr. Doe and Virginia Tech agreed through its various policies and customs that he would be permitted to continue to enroll in subsequent semesters at the university as he pursued his graduate degree, but for the conduct proceeding alleged. *Id.* at ¶12. Mr. Doe paid tuition through the 2019-2020 academic year, met the university's academic and conduct standards, and abided by its policies. *Id.* at ¶13. He had a reasonable expectation under the university's various enrollment policies and customs that so long as he paid tuition, met the university's academic and conduct standards, and abided by its policies, which he did during the times pertinent herein, he would be permitted to continue to enroll in subsequent semesters at the university as he pursued his graduate degree. *Id.* at ¶77.

Further, Virginia Tech's Code of Conduct guaranteed that Mr. Doe could not arbitrarily be removed as a student, provided he continued to pay tuition, met the requirements of his classwork, and abided by the university's conduct system. *Id.* at ¶78. Code of Conduct stated: "When a student accepts admission to Virginia Tech as an undergraduate, graduate, or professional student, they also accept membership in the university community and responsibility for upholding its shared values and expectations. The Student Code of Conduct outlines policies established by the university that set standards for students' behavior, along with procedures for adjudicating and sanctioning violations of these standards." *Id.* at ¶79. The Code stipulated that the rules and policies set forth governing student discipline applied to all students, including Mr. Doe: "Authority to approve policies and procedures for student discipline, as outlined in the Student

Code of Conduct, lies with Virginia Tech's governing body, the Board of Visitors, as authorized under the Code of Virginia. The Vice President for Student Affairs has responsibility for the university conduct system, with direct supervisory oversight of disciplinary matters assumed by the Office of Student Conduct, under the direction of the Director of Student Conduct." *Id.* at ¶80. Moreover, the Code of Conduct stated, "***Virginia Tech students enjoy basic rights…Students at Virginia Tech enjoy those rights guaranteed by the Constitutions of the United States and the Commonwealth of Virginia.***" *Id.* at ¶81. Thus, in accordance with the Code of Conduct, the due process provisions of the Fourteenth Amendment to the United States Constitution applied to the disciplinary process used by Virginia Tech against Mr. Doe. *Id.* at ¶82. Mr. Doe was entitled to process commensurate with the seriousness of the charge of sexual assault and the potential discipline and sanctions he faced. The allegation was very serious and resulted in harsh sanctions, as well as the prospect of a lifelong stigma that will foreclose future educational and work opportunities. *Id.* at ¶83.

While a Code of Conduct manual – *by itself* – does not confer a property right, because it is not a contract, the "lack of a statute and a contract provision *did not necessarily mean* there was no property right." *Alger*, 175 F. Supp. 3d at 657 (emphasis added). As the Court held in *Alger*, the parties' "rules" and "understandings" may form the basis of a property interest. *Id.* (citing *Perry v. Sindermann*, 408 U.S. 593 (1972) (holding that a junior college professor had a property right in continued employment where no state statute existed to provide that right and his contract did not contain such a right). The student in *Alger* whom the Court held may have a legitimate claim of entitlement to continued enrollment sufficient to survive a motion to dismiss is no different than Mr. Doe: both were students at Virginia public universities where, through policies

and practices, the schools (Virginia Tech and JMU) had adopted a system of expelling, suspending, or dismissing students only after a finding for cause set forth in Code of Conduct policies.

Therefore, just as this Court concluded in *Krasnow* and *Alger*, Mr. Doe has stated a claim for a property interest in his continued enrollment.

### III. Virginia Tech failed to provide due process.

Mr. Doe claims he was deprived of due process during the student conduct process when he was forced to go forward with the conduct hearing without a meaningful opportunity to prepare. Less than 24 hours to prepare for and attend a misconduct hearing is insufficient.

Mr. Doe understands this Court does not sit as an appellate officer for the Virginia Tech Student Conduct System. It is not the role of this Court to revisit the merits of the conduct allegations against Mr. Doe. However, this Court does enforce the Constitution and determine whether Virginia Tech, in arriving at its result, complied with the Due Process Clause.

When it comes to due process, the "opportunity to be heard" is the constitutional minimum. *Grannis v. Ordean*, 234 U.S. 385, 394 (1914). Determining what being "heard" looks like in each particular case is a harder question. The Supreme Court has declined to set out a universal rule and instead instructs lower courts to consider the parties' competing interests. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *Goss v. Lopez*, 419 U.S. 565, 579 (1975).

At a minimum, a public university in the context of disciplinary proceedings must provide the accused notice of the violation and an opportunity to be heard, *Goss v. Lopez*, 419 U.S. 565, 579 (1975). The precise contours of these procedural protections remain "flexible," and may vary as the "particular situation demands." *Butler v. Rector & Bd. of Visitors of Coll. of William & Mary*, 121 F. App'x 515, 519-20 (4th Cir. 2005) (quoting *Mallette v. Arlington Cty. Employees' Supp. Retirement Sys. II*, 91 F.3d 630, 630 (4th Cir. 1996); see also *Bd. of Curators of Univ. of*

9

*Mo. v. Horowitz*, 435 U.S. 78, 90 (1978). Where a student faces possible expulsion or suspension, that student must receive, at a minimum, "advance notice of the charges, a fair opportunity to be heard, and an impartial decision-maker." *Henson v. Honor Comm. of Univ. of Va.*, 719 F.2d 69, 74 (4th Cir. 1983); *see also Butler*, 121 F. App'x at 519-20.

The Fourth Circuit has embraced, and the Western District of Virginia has consistently applied, the following due process standard further defining student due process rights:

> The notice should contain a statement of the specific charges and grounds which, if proven, would justify expulsion under the regulations of the [University]. The nature of the hearing should vary depending upon the circumstances of the particular case. The case before us requires **something more than an informal interview with an administrative authority** of the college. By its nature, a charge of misconduct, as opposed to a failure to meet the scholastic standards of the college, depends upon a collection of the facts concerning the charged misconduct, easily colored by the point of view of the witnesses.
>
> In such circumstances, a hearing which gives the...administrative authorities of the college an opportunity to **hear both sides** in **considerable detail** is best suited to protect the rights of all involved. This is **not to imply that a full-dress judicial hearing, with the right to cross-examine witnesses**, is required. Such a hearing, with the attending publicity and disturbance of college activities might be detrimental to the college's educational atmosphere and impracticable to carry out. Nevertheless, the **rudiments of an adversary proceeding may be preserved** without encroaching upon the interests of the college.

*Cobb v. Rector & Visitors of Univ. of Va.*, 69 F. Supp. 2d 815, 828-29 (W.D. Va. 1999) (emphasis added) (alteration and omissions in original) (quoting *Dixon v. Ala. State Bd. of Educ.*, 294 F.2d 150, 158-59 (5th Cir. 1961)); *see also Henson v. Honor Comm. of Univ. of Va.*, 719 F.2d 69, 74 (4th Cir. 1983) ("Although Dixon was decided more than twenty years ago, its summary of minimum due process requirements for disciplinary hearings in an academic setting is still accurate today.").

In *Dixon*, the court said that due process required an opportunity for the student to present his own defense and to produce either oral testimony or written affidavits of witnesses in his behalf.

294 F.2d at 159. In *Henson*, a student at the University of Virginia was expelled for honor code violations. 719 F.2d 69 at 74. The Fourth Circuit held that Henson had been afforded due process because, among other reasons, he was given "adequate notice of the charges against him and the opportunity to be heard by disinterested parties"; and, his accusers were required to "face the student at the hearing and state the basis of their allegations," and "submit to cross- examination by the student, or his designated student counsel, and by the members of the hearing committee." *Id.* at 73-74.

Therefore, a student at Virginia Tech accused of misconduct must receive notice of the charges; a fair opportunity to be heard; and, a decision before an impartial decision-maker. As the court held in *Dixon*, a fair opportunity to be heard means "something more than an informal interview with an administrative authority." There must be "an opportunity to hear both sides in considerable detail" and while that does not imply a full-dress judicial hearing with cross-examination, the university must at least offer "the rudiments of an adversary proceeding."

Within the Fourth Circuit, it seems well established that the student should at least know the evidence and witnesses against them, to be afforded with the "rudiments of an adversary proceeding" and a "fair opportunity to be heard."

In Mr. Doe's case, he was denied his due process right of a meaningful hearing because Virginia Tech declined to provide Mr. Doe with sufficient notice or time to prepare. He was hospitalized; discharged from care; told of the charges by the university and given the hearing date less than 24 hours before he was expected to show up and defend himself against a charge that could (and did) result in expulsion. While the Defendants do not at this stage challenge the sufficiency of these allegations to support a claim, Mr. Doe has nonetheless asserted sufficient facts to invoke this Court's jurisdiction.

Defendants have relied on *Tigrett v. Rector & Visitors of Univ. of Va.*, 290 F.3d 620, 627 (4th Cir. 2002) to contend that providing a student with less than 24 hours' notice of a Title IX hearing is constitutionally sufficient.

Defendants omitted key facts from *Tigrett* and misstated its holding. In *Tigrett*, the University of Virginia notified the defendant students on February 16, 1998, that they were being charged with sexual assault, and *scheduled the trial nine months later* on November 20, 1998. Virginia Tech suggests that the students in *Tigrett* were notified of the trial two days before. Not true. Rather, the students in *Tigrett* received an amended notice of the charges 48-hours before the trial to add a related disorderly conduct charge, which was effectively a lesser included of another charge they already knew about. The students in *Tigrett* otherwise had more than nine months to review the evidence and prepare for trial – unlike Mr. Doe, who was discharged from a psychiatric hospital and expected to defend himself with less than 24 hours' notice.

It strains credulity to argue the decision in *Tigrett* can be comfortably extended to cover Mr. Doe's situation. Mr. Doe received notice of the trial with less than 24 hours to prepare. That was not the situation in *Tigrett*. Rather, Mr. Doe's case is more analogous to the facts in *Tanyi v. Appalachian State Univ.*, where a student was advised of a harassment charge with less than 24 hours to prepare for a hearing the next day. 2015 U.S. Dist. LEXIS 95577 (W.D.N.C. 2015). The court in *Tanyi* denied the university's motion to dismiss, holding that "at a minimum due process requires adequate notice," and less than 24 hours to prepare is insufficient. *Id.* at *17-18. *See also Doe v. Rector & Visitors of George Mason Univ.,* 149 F. Supp. 3d 602 (E.D. Va. 2016) (notice must be sufficient to allow an accused student "'a meaningful opportunity to prepare.'") (quoting citing *Flaim v. Med. Coll. Ohio*, 418 F.3d 629, 638 (6th Cir. 2005) (stating that constitutionally adequate notice must afford "a meaningful opportunity to prepare for the hearing")).

### IV.     Ms. Cherry-Clarke is not entitled to qualified immunity.

Officials sued in their individual capacity for violations of civil rights are entitled to qualified immunity if the right was not clearly established at the time of the violation. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001)). To determine whether qualified immunity applies, the court must consider whether (1) the facts "make out a violation of a constitutional right" and (2) whether that right was "clearly established" at the time of the defendant's alleged misconduct. *Pearson*, 555 U.S. at 232.

Here, it was clearly established at the time of Ms. Cherry-Clarke's decision to refuse more than 24 hours to prepare for the conduct hearing that a student accused of misconduct was entitled to more time to prepare. Courts in the Fourth Circuit had already firmly established that the notice requirement of student due process required, at a minimum, a meaningful opportunity to prepare – especially when a student like Mr. Doe faced expulsion. *See, e.g. Tanyi*, 2015 U.S. Dist. LEXIS 95577 (W.D.N.C. 2015) (denying the university's motion to dismiss a student due process claim and holding that "at a minimum due process requires adequate notice," and less than 24 hours to prepare is insufficient); *Doe v. Rector & Visitors of George Mason Univ.,* 149 F. Supp. 3d 602 (E.D. Va. 2016) (notice must be sufficient to allow an accused student "'a meaningful opportunity to prepare.'") (quoting citing *Flaim v. Med. Coll. Ohio*, 418 F.3d 629, 638 (6th Cir. 2005) (stating that constitutionally adequate notice must afford "a meaningful opportunity to prepare for the hearing")). Qualified immunity is available when a government official does not clearly appreciate their actions are violating a constitutional rule. But here, Ms. Cherry-Clarke ought to have known that expecting Mr. Doe to be prepared for a sexual assault hearing with less than a day to prepare was inconsistent with notions of due process, and therefore, qualified immunity does not apply.

## V.     Mr. Doe has stated a claim under Title IX.

Title IX prohibits federally-supported educational institutions from discrimination on the basis of sex. 20 U.S.C. § 1681(a) ("No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance ..."). It is enforceable through an implied private right of action, *Cannon v. Univ. of Chicago*, 441 U.S. 677 (1979).

Mr. Doe contends that Virginia Tech discriminated against him on the basis of his gender when, first, its employee, Dr. Onufriev, favored a female colleague in the laboratory and created a hostile condition against a male student like Mr. Doe who complained, and second, when Dr. Onufriev retaliated against him for making a complaint to the department chair.

Under *Sheppard v. Visitors of Va. State Univ.*, the Fourth Circuit held that to state a Title IX in the context of university disciplinary proceedings, the question is whether, "do the alleged facts, if true, raise a plausible inference that the university discriminated against [the student] on the basis of sex?" 993 F.3d 230 (4th Cir. 2021) (citing *Doe v. Purdue Univ.*, 928 F.3d 652, 667 (7th Cir. 2019)). The plaintiff must allege sufficient facts to show a link between the student's sex and the university's proceeding. *Id.* at 236-237 (holding that "on the basis of sex" requires "but-for" causation in Title IX claims alleging discriminatory disciplinary proceedings).

Mr. Doe has alleged sufficient facts to support both claims of gender discrimination.

First, he has alleged enough facts to plausibly infer that Dr. Onufriev favored female students in his lab over male students like Mr. Doe. In August 2019, Mr. Doe discovered he would not receive a research stipend during the 2019-2020 academic year, and a female colleague in the lab would receive the funds instead, even though she was not involved in the research supporting the grant. *Id.* at ¶28. Dr. Onufriev remarked that she was a "princess" and said, "You cannot

14

Case 7:21-cv-00378-MFU   Document 47   Filed 09/30/22   Page 15 of 17   Pageid#: 404

compete with her, you are not at her level." *Id.* at ¶29. Dr. Onufriev ignored Mr. Doe's requests to meet for office hours to discuss upcoming publications – but made time for the female student. *Id.* He kept Mr. Doe waiting hours for appointments, then would not show up at all, while Dr. Onufriev consistently met with the female student at the lab. *Id*. Ultimately, Dr. Onufriev never allocated grant funds to Mr. Doe for his research during entirety of the academic year. The female student could focus on her research and advancing toward her doctoral degree because she received financial assistance, whereas Mr. Doe had to take on a teaching position, supervising over 100 students, to make ends meet, in addition to the long hours required at the lab. *Id.* at ¶31.

Virginia Tech also retaliated when he raised a complaint about unequal treatment. In December 2019, after Mr. Doe's complaints about the research funding were ignored by Dr. Onufriev, Mr. Doe reported Dr. Onufriev's conduct to Dr. Mark Pitt, Chair of the Physics Department at Virginia Tech. *Id.* at ¶32. Dr. Pitt shared Mr. Doe's complaint with Dr. Onufriev. *Id.* at ¶33. Dr. Onufriev began retaliating against Mr. Doe, including withholding a letter certifying the completion of Mr. Doe's Master's degree; assigning excessive, redundant, and contradictory research tasks; setting false deadlines to publish papers; and, creating a hostile condition in the lab in an effort to cause Mr. Doe to voluntarily resign from the program. *Id.* at ¶34.

Having now alleged sufficient facts to state a claim against Virginia Tech and Dr. Onufriev for violations of Mr. Doe's rights under Title IX, Mr. Doe moves the Court to deny the motion.

September 30, 2022                 Respectfully submitted,

                                   JOHN DOE

                                   By: /s/ *[signature]*
                                   Of Counsel

Robert E. Dean, Esq. (VSB No. 80288)
ROB DEAN LAW
401 Campbell Ave., Ste. 302
Roanoke, Virginia 24016
Phone: (540) 585-1776
Fax: (540) 301-0833
Email: rob@robdeanlaw.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2022, the foregoing pleading was filed with the Clerk of the Clerk of Court and served via CM/ECF the following counsel of record:

> Katherine C. Londos (VSB No. 36848)
> Nathan H. Schnetzler (VSB No. 86437)
> FRITH ANDERSON + PEAKE, P.C.
> 29 Franklin Road, SW
> P.O. Box 1240
> Roanoke, Virginia 24006-1240 Phone: 540/772-4600
> Fax: 540/772-9167
> Email: klondos@faplawfirm.com
> nschnetzler@faplawfirm.com
>
> Kay Heidbreder (VSB No. 22288)
> M. Hudson McClanahan (VSB No. 46363)
> Kristina J. Hartman (VSB No. 92279)
> University Legal Counsel (0121)
> 800 Drillfield Drive
> Blacksburg, VA 24061
> Phone: (540) 231-6293
> Fax: (540) 231-6474
> Email: heidbred@vt.edu
> Email: hud3@vt.edu
> Email: kjhart06@vt.edu
>
> *Counsel for Defendants*