IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JOHN DOE, ) | |
| ) | |
|    Plaintiff, ) | |
| ) | |
| v. ) | Case No. 7:21cv378 |
| ) | |
| VIRGINIA POLYTECHNIC INSTITUTE ) | |
| AND STATE UNIVERSITY, et al., ) | |
| ) | |
|    Defendants. ) | |

### REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

Defendants Virginia Polytechnic Institute and State University ("Virginia Tech"), Timothy Sands ("Sands"), Alexey Onufriev ("Onufriev"), and Tamara Cherry-Clarke ("Cherry-Clarke") (collectively "Defendants"), by counsel, submit this reply brief in response to plaintiff John Doe's ("Doe") opposition to Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

#### ARGUMENT & AUTHORITY

In his opposition to Defendants' motion to dismiss, Doe argues that he has alleged sufficient facts to state a protected property interest in his continued education, that defendant Cherry-Clarke is not entitled to qualified immunity as to the claim against her in her individual capacity, that his Title IX claim is not time-barred, and he has alleged sufficient facts to meet the 4th Circuit's pleading standard for Title IX claims as set forth in Sheppard v. Visitors of Virginia State University, 993 F.3d 230 (4th Cir. 2021). On all counts, Doe is wrong.



629.0407\NHS
4861-4005-2278 .v2

### I. There is No Property Interest in Post-Secondary Education.

In support of his property interest argument, Doe cites to the same cases he previously relied upon in his opposition to Defendants' initial motion to dismiss: Doe v. Alger, 175 F. Supp. 3d 646, 657 (W.D. Va. 2016) and Krasnow v. Virginia Polytechnic Institute & State University, 414 F. Supp. 55, 56 (W.D. Va. 1976). Neither case was persuasive then or when Doe referred to them again in response to Defendants' second motion to dismiss. The third time is not the charm either.

Neither accreditation standards, student handbooks, syllabi, nor the payment of tuition create a contract between the university and its students. See Murray v. Liberty Univ., Inc., No. 6:22-cv-00025, 2022 WL 4082483, 2022 U.S. Dist. LEXIS 160793, at *15–16 (W.D. Va. Sep. 6, 2022); Owen v. Liberty Univ., No. 6:19-cv-00007, 2020 WL 1856798, 2020 U.S. Dist. LEXIS 64579, at *21–27 (W.D. Va. Apr. 13, 2020); Jacob Doe v. Va. Tech, No. 7:19cv249, 2020 WL 1309461, 2020 U.S. Dist. LEXIS 47754, at *17 (W.D. Va. Mar. 19, 2020) (hereinafter "Jacob Doe v. Va. Tech") (citing Doe v. Washington & Lee Univ., 439 F. Supp. 3d 784 (W.D. Va. 2020); Doe v. Marymount Univ., 297 F. Supp. 3d 573, 588 (E.D. Va. 2018)); see also George v. Averett Univ. of Danville, No. 4:19cv8, 2019 WL 3241177, 2019 U.S. Dist. LEXIS 119600, at *7–8 (W.D. Va. July 18, 2019).

Indeed, in this very case, the Court previously concluded that "payment of tuition and compliance with Virginia Tech's standards and policies" do not create a "reasonable expectation of continued enrollment." Doe v. Va. Polytechnic Inst. & State Univ., No. 7:21cv378, 2022 WL 3006391, 2022 U.S. Dist. LEXIS 134267, *27–28 (W.D. Va. July 28, 2022). Notably, in Doe v. Marymount, the Eastern District of Virginia rejected the Krasnow decision. Doe v. Marymount, 297 F. Supp. 3d at 588, 588 n.21.



629.0407\NHS
4861-4005-2278 .v2

Previously, the Court found Doe's allegations insufficient when he alleged "'Virginia Tech agreed through its various policies and customs' that he would be permitted to enroll in subsequent semesters as long as he paid tuition and met academic and conduct standards" because Doe "did not describe the 'policies and customs' upon which he . . . rel[ied]." Id., *28. While Doe believes he has brought his factual assertions up to the level of the "sparse" allegations in Doe v. Alger, he is mistaken. In response to the Court's invitation to flesh out his factual allegations supporting a protected property right in continued education, Doe added the following allegations in his Second Amended Complaint:

> 78. Virginia Tech's Code of Conduct guaranteed that Mr. Doe could not be arbitrarily removed as a student, provided he continued to pay tuition, met the requirements of his classwork, and abided by the university's conduct system.
>
> 79. The Code of Conduct stated: "When a student accepts admission to Virginia Tech as an undergraduate, graduate, or professional student, they also accept membership in the university community and responsibility for upholding its shared values and expectations. The Student Code of Conduct outlines policies established by the university that set standards for students' behavior, along with procedures for adjudicating and sanctioning violations of these standards."
>
> 80. The Code of Conduct stipulated that the rules and policies set forth governing student discipline applied to all students, including Mr. Doe: "Authority to approve policies and procedures for student discipline, as outlined in the Student Code of Conduct, lies with Virginia Tech's governing body, the Board of Visitors, as authorized under the Code of Virginia. The Vice President for Student Affairs has responsibility for the university conduct system, with direct supervisory oversight of disciplinary matters assumed by the Office of Student Conduct, under the direction of the Director of Student Conduct.["]
>
> 81. Further, the Code of Conduct stated, "Virginia Tech students enjoy basic rights…Students at Virginia Tech enjoy those rights guaranteed by the Constitutions of the United States and the Commonwealth of Virginia."

ECF No. 37, *12–13. These allegations are still far too vague to meet even the "sparse" allegations in Doe v. Alger.



629.0407\NHS
4861-4005-2278 .v2

By contrast, the plaintiff in <u>Alger</u> made factual allegations going far beyond those present in Doe's Second Amended Complaint. For example, in <u>Alger</u>, the plaintiff alleged that "[i]n an effort to induce accepted students to enroll there, JMU substantially limited its ability to suspend, expel or dismiss students by adopting policies, by engaging in practices and a consistent course of conduct for many years, and by fostering understandings that it would not suspend or dismiss students without proving cause." <u>Doe v. Alger</u>, No. 5:15cv35, ECF No. 30, at *2 (W.D. Va. July 17, 2015). The <u>Alger</u> plaintiff also alleged "JMU placed substantive limits on its ability to suspend or dismiss Plaintiff by adopting policies and by continuing to follow a longstanding and consistent practice of requiring a finding of cause, as determined by a fair and impartial process which included notice of the charge, a meaningful opportunity to appear, and confront the evidence to be considered." <u>Id.</u> The <u>Alger</u> plaintiff claimed JMU never "dismissed, suspended, expelled or separated an undergraduate student for alleged misconduct without proving cause through the use of a fair and impartial process where the accused student had a meaningful opportunity to appear before the fact-finder and confront all the evidence considered." <u>Id.</u> at *3. The <u>Alger</u> plaintiff then went on to quote, at length, JMU's student rights policy, which enumerated specific entitlements JMU students have during a sexual misconduct proceeding. <u>Id.</u> at *3–4. Finally, the <u>Alger</u> plaintiff expressly alleged that he accepted JMU's offer of admission based on his reliance on JMU's aforementioned "policies, practices and understandings regarding Student Rights . . . ." <u>Id.</u> at *4.

Here, Doe still fails to provide allegations as to what *specific* policies or practices of Virginia Tech serve as the basis for establishing a constitutionally protected property right other than the general references to the Code of Conduct quoted above. As previously



- 4 -

629.0407\NHS
4861-4005-2278 .v2

noted, Doe's allegations refer only to the *existence* of a Code of Conduct, not a specific provision that might give rise to a property right in continued enrollment. Contrary to Doe's assertions, these conclusory allegations do not rise to the level of those in Alger and are insufficient as a matter of law to identify a protected property right in continued education. The mere *existence* of a code of conduct is not enough because student handbooks and codes of conduct are subject to unilateral revision by the university. As such, the majority of courts agree that they do not create an implied contract that could give rise to a property right. See Owen v. Liberty Univ., 2020 U.S. Dist. LEXIS 64579, *23–24 (collecting cases); George v. Averett Univ., 2019 U.S. Dist. LEXIS 119600, *7–8. As such, Doe's procedural due process claim should be dismissed with prejudice.

## II. Doe Received Due Process.

Doe contends that he did not receive due process because he had less than twenty-four hours to prepare for and attend the student conduct hearing. But again, he knew on February 18 that he had been suspended "pending a student conduct hearing." ECF No. 37, ¶ 48. He received notice of the charges against him on February 28. Id., ¶ 53. The decisions cited by Doe himself explain that the notice requirement applies to notice of the ***charges***, not notice of the hearing date.

Doe's reference to Tanyi v. Appalachian State University is not convincing. In that case, as in Tigrett v. Rector and Visitors of the University of Virginia, 137 F. Supp. 2d 670, 679 (W.D. Va. 2001), the Tanyi Court focused its analysis on notice of the particular ***charges***, not notice of the hearing date. In Tanyi, the plaintiff claimed he learned *of a new harassment charge* "the night before the hearing"—i.e., less than twenty-four hours—"and had no time to prepare witnesses to rebut the charge." Tanyi v. Appalachian State Univ., No.



- 5 -

629.0407\NHS
4861-4005-2278 .v2

5:14cv170, 2015 WL 4478853, 2015 U.S. Dist. LEXIS 95577, *4 (W.D.N.C. July 22, 2015). After the disciplinary hearing in that case, the plaintiff was found responsible for that new harassment charge. Id. The Tanyi Court, citing the Tigrett decision, concluded that was insufficient time to receive notice of new charges. Id., *17–18. The Tanyi decision said nothing about notice of the hearing date. Here, there are no allegations that Doe received notification of any new charges the day before the hearing. Doe admits he received notice of all charges against him on February 28—seven days before the hearing took place on March 6.

And most importantly, there are no allegations that Doe told Cherry-Clarke he had recently been released from the hospital or that Cherry-Clarke independently knew that information. Thus, because the notice requirement for purposes of due process considerations hinges on notice of the charges, not the hearing date, and Cherry-Clarke had no knowledge of Doe's hospitalization, Cherry-Clarke could not have intentionally violated Doe's due process rights. See Vanderwall v. Commonwealth of Virginia, No. 1:05cv1341, 2006 WL 6093879, 2006 U.S. Dist. LEXIS 96149, *20 (E.D. Va. Aug. 9, 2006) (citing Daniels v. Williams, 474 U.S. 327, 328 (1986)) aff'd 223 F. App'x 249 (4th Cir. 2007); see also McDonald v. Dunning, 760 F. Supp. 1156, 1161 (E.D. Va. 1991) (plaintiff's 21-day imprisonment was the result of negligence and therefore not actionable under Due Process Clause).

Doe does not claim he did not receive sufficient notice of the charges against him, and the notice he received afforded him sufficient time to prepare for any hearing. Accordingly, Doe received adequate notice, and Defendants did not violate his rights to due process.



- 6 -

629.0407\NHS
4861-4005-2278 .v2

### III. Doe's Own Argument Demonstrates Qualified Immunity Applies.

Cherry-Clarke proffered two arguments as to why qualified immunity applies: (1) it is not clearly established that a university student has a protected property right to continued education; and (2) it is not clearly established how much notice is required when the student receives notice of the charges prior to a disciplinary hearing being set. In his opposition, Doe does not address the first argument. Therefore, it should be deemed well-taken and conceded.[1]

As to the latter argument, Doe fails to identify any Fourth Circuit precedent establishing a baseline for the advance notice required for a university disciplinary hearing or stating that twenty-four hours' notice—when the university officer has no knowledge of any extenuating circumstances potentially warranting additional time—is insufficient on its face. Again, Doe's reliance on Tanyi v. Appalachian State University is misplaced. First, it is a District Court decision. See Owens v. Lott, 372 F.3d 267, 279–80 (4th Cir. 2004) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 251 (4th Cir. 1999)). Second, as noted above, the Tanyi Court focused its analysis on notice of the particular *charges*, not notice of the hearing date. The Tanyi decision said *nothing* about the appropriate timeframe for notice of the hearing date. Here, there are no allegations that Doe received notification of any new charges the day before the hearing. Doe admits he received notice of all charges against him on February 28—seven days before the hearing took place on March 6. And there was no clearly established law setting the amount of prehearing notice a university

---

[1] See Harlow v. Wells Fargo & Co., No. 7:22cv267, 2022 U.S. Dist. LEXIS 109459, *23 (W.D. Va. June 21, 2022) (collecting cases); Cremium, LLC v. E. Shore Forest Prods., No. 6:18cv63, 2018 WL 5886557, 2018 U.S. Dist. LEXIS 192482, *7 (W.D. Va. Nov. 9, 2018) (collecting cases); Spellman v. Sch. Bd. of Chesapeake, No. 2:17cv635, 2018 U.S. Dist. LEXIS 73709, at *40–41 (E.D. Va. Apr. 5, 2018).

629.0407\NHS
4861-4005-2278 .v2

student must receive for purposes of a student disciplinary hearing, particularly given the factual circumstances here where Cherry-Clarke had no knowledge of Doe's hospitalization. Accordingly, Cherry-Clarke is entitled to qualified immunity for the claim against her in her individual capacity.

**IV. Title IX**

    **a. The Title IX grant allocation claim is barred based on Doe's own allegations.**

Doe failed to offer any substantive response to Virginia Tech's argument that the 2019-2020 grant funding did not represent a "continuing violation"—to the extent the doctrine even applies in the Title IX context—and has therefore conceded that argument.

In any event, the crux here is that Doe does not allege that there was a separate grant award or different work involved with the grant from 2018 to 2019. Thus, the circumstances here are precisely like those in A Society Without a Name for People Without a Home, Millennium Future-Present v. Virginia. In that case, the statute of limitations was not extended even though the homeless center continued to make decisions to add new services for the homeless at the center. A Soc'y Without a Name, 699 F. Supp. 2d 787, 800, 2010 U.S. Dist. LEXIS 23783 (E.D. Va. Feb. 17, 2010). Here, the same is true. Any alleged decision to allocate the 2019-2020 grant funds to the female student did not constitute "continual unlawful discrimination" for statute of limitations purposes. Rather, it constituted "continual ill effects" from the original award of the grant in 2018 and the decision to allocate the funds in 2018. See Weis-Buy Servs., Inc. v. Paglia, 411 F.3d 415, 423 (3d Cir. 2005); Jersey Heights Neighborhood Ass'n v. Glendening, 174 F.3d 180, 189 (4th Cir. 1999). That the allocation continued into 2019-2020 implicates the issue of damages, not a separate wrongful act. This concept harkens back to the notion that the proper focus



is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts become most painful. Doe I v. Va. Tech, 400 F. Supp. 3d 479, 485, 490–92, 494 (W.D. Va. 2019). The alleged discriminatory act occurred in 2018, only the effects of that decision carried forward into 2019.

Further, Doe cannot rely on the allegation of retaliation to sidestep Defendants' statute of limitations argument because as Defendants already addressed with the Court and Doe, a Title IX retaliation claim is a separate cause of action, not a pattern of discriminatory acts for purposes of the continuing violation doctrine. Accordingly, Doe's claim regarding the allocation of grant funding is time-barred.

**b. Doe's allegations do not meet the "but for" test for gender discrimination.**

Doe argues that "he has alleged enough facts to plausibly infer that Dr. Onufriev favored female students in his lab over male students . . . ." But that inference is not borne out by the allegations in the Second Amended Complaint. Doe points to only one female student that he alleges Dr. Onufriev treated differently. To that end, Doe alleges that Dr. Onufriev believed that Doe could not "compete with her" and that Doe was "not at her level." ECF No. 37, ¶ 29. These allegations do not raise a plausible inference of gender bias. Rather, the reasonable inference to be drawn from such allegations are that Doe's academic prowess did not match that of the female student. Simply that Doe believed that Dr. Onufriev chose to allocate the grant funds to the female student because she was a female is not sufficient to satisfy the 4th Circuit's pleading requirements for a gender discrimination claim under Title IX. Sheppard v. Visitors of Va. State Univ., 993 F.3d 230, 238 (4th Cir. 2021).



The allegations as to gender bias in the Second Amended Complaint are no different than the deficient allegations in the First Amended Complaint and Doe's original Complaint. They have never sufficed to state a claim for relief and still do not. Accordingly, the Title IX claim in regard to grant funding should be dismissed with prejudice.

c. **Doe's hostile work environment and retaliation claims still fail to state a claim.**

In the Court's Memorandum Opinion dismissing Doe's Title IX hostile work environment and retaliation claims, it made the following observations:

> Here, however, although Doe uses the phrase "hostile condition," he described no facts to support the claim. He simply makes a conclusory allegation that Onufriev "created a hostile condition in the lab in an effort to cause Mr. Doe to voluntarily resign from the program." Am. Compl., ECF No. 21 ¶ 30. That allegation is insufficient to state a claim . . . .
>
> * * * *
>
> Doe states that Onufriev withheld a letter certifying completion of Doe's Master's degree, assigned excessive, redundant, and contradictory research tasks, and set false deadlines to publish papers. Am. Compl., ECF No. 21, ¶ 30. Doe does not allege that any of the actions are attributable to Virginia Tech. . . . Accordingly, any claim Doe makes based on retaliation is **DISMISSED** without prejudice for failure to state a claim.

ECF No. 35, *33. Just like the gender bias claim, nothing has changed from the First Amended Complaint to the Second Amended Complaint in regard to the factual allegations of hostile work environment and retaliation. Indeed, paragraph 30 of the First Amended Complaint and paragraph 34 of the Second Amended Complaint are identical:

> 30. Dr. Onufriev began outwardly retaliating against Mr. Doe. He had withheld a letter certifying completion of Mr. Doe's Master's degree. He assigned excessive, redundant, and contradictory research tasks; set false deadlines to publish papers; and, created a hostile condition in the lab in an effort to cause Mr. Doe to voluntarily resign from the program.



- 10 -

ECF No. 21, ¶ 30.

> 34. Dr. Onufriev began outwardly retaliating against Mr. Doe. He had withheld a letter certifying completion of Mr. Doe's Master's degree. He assigned excessive, redundant, and contradictory research tasks; set false deadlines to publish papers; and, created a hostile condition in the lab in an effort to cause Mr. Doe to voluntarily resign from the program.

ECF No. 37, ¶ 34. Therefore, the Second Amended Complaint offers no basis for the Court to change its mind that Doe has failed to state a claim for hostile work environment and failed to state a claim for retaliation.

### Conclusion

After three attempts, Doe still fails to state a claim for relief under the Due Process Clause of the Fourteenth Amendment or Title IX. For the foregoing reasons, Defendants respectfully request entry of an Order granting their Motion to Dismiss, dismissing this case with prejudice, striking it from the active docket of this Court, and granting such further relief as the Court deems just and proper.

Respectfully submitted,

VIRGINIA POLYTECHNIC INSTITUTE AND STATE UNIVERSITY, TIMOTHY SANDS, ALEXEY ONUFRIEV, and TAMARA CHERRY-CLARKE



FRITH ANDERSON + PEAKE PC
ATTORNEYS AT LAW

629.0407\NHS
4861-4005-2278 .v2

/s/_____
Katherine C. Londos (VSB #: 36848)
Nathan H. Schnetzler (VSB #: 86437)
FRITH ANDERSON + PEAKE, P.C.
29 Franklin Road, SW
P.O. Box 1240
Roanoke, Virginia 24006-1240
Phone: 540/772-4600
Fax:     540/772-9167
Email: klondos@faplawfirm.com
            nschnetzler@faplawfirm.com

Kay Heidbreder (VSB No.: 22288)
University Legal Counsel and
Senior Assistant Attorney General
*heidbred@vt.edu*
M. Hudson McClanahan (VSB No.: 46363)
*hud3@vt.edu*
Kristina J. Hartman (VSB No.: 92279)
*kjhart06@vt.edu*
Stephen F. Capaldo (VSB No.: 74045)
*scapaldo@vt.edu*
Associate University Legal Counsel and
Assistant Attorney General
University Legal Counsel (0121)
Burruss Hall, Suite 236, Virginia Tech
800 Drillfield Drive
Blacksburg, VA  24060
Phone: (540) 231-6293
Fax: (540) 231-6474

*Counsel for Defendants*



629.0407\NHS
4861-4005-2278 .v2

**CERTIFICATE OF SERVICE**

  I hereby certify that on October 7, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send notification of such filing to all counsel of record.

                /s/ Nathan H. Schnetzler
                   Of Counsel



629.0407\NHS
4861-4005-2278 .v2