**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | | |
|---|---|---|
| **JOHN DOE,** | ) | |
| | ) | |
|    **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 7:21cv378** |
| | ) | |
| **VIRGINIA POLYTECHNIC INSTITUTE** | ) | |
| **AND STATE UNIVERSITY, et al.,** | ) | |
| | ) | |
|    **Defendants.** | ) | |

### MEMORANDUM IN SUPPORT OF
### MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

Defendants Virginia Polytechnic Institute and State University ("Virginia Tech"), Timothy Sands ("Sands"), and Tamara Cherry-Clarke ("Cherry-Clarke") (collectively "Defendants"), by counsel, submit this brief in support of their Motion to Dismiss Pursuant to Rule 12(b)(6).

### STATEMENT OF THE CASE

Plaintiff's Third Amended Complaint—now the ***fifth*** iteration of his lawsuit against Defendants—arises from a professor's allocation of grant proceeds for a research assistant position and Plaintiff's expulsion from Virginia Tech for violating Virginia Tech's sexual assault policy. ECF No. 86.

Originally filed in 2020, Judge Cullen dismissed Plaintiff's first lawsuit due to Plaintiff's failure to timely serve the Defendants, failure to demonstrate good cause or excusable neglect for failing to timely serve them, and failure to proceed properly under a pseudonym. Doe v. Va. Polytechnic Inst. & State Univ., No. 7:20cv711, 2021 WL 2156411, 2021 U.S. Dist. LEXIS 100649 (W.D. Va. May 27, 2021). After Plaintiff filed this action in



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

- 1 -

2021, Defendants moved to dismiss all of the claims against them, and the Court granted Defendants' motion from the bench by summary order without an accompanying Memorandum Opinion. ECF No. 19; ECF No. 20.

Plaintiff then filed his First Amended Complaint, ECF No. 21, and again, Defendants moved to dismiss all claims against them. The Court granted Defendants' motion and dismissed with prejudice Plaintiff's Title IX claim "based on the allocation of the 2018-2019 academic year research grant funds" and Plaintiff's due process claim "based on his loss of a liberty interest . . . ." ECF No. 35, *34; ECF No. 36. The Court dismissed the following claims without prejudice:

> ➢ Plaintiff's due process claim based on a property interest in continued enrollment at Virginia Tech;
>
> ➢ Plaintiff's Title IX claim based on the allocation of grant funds in the 2019–2020 academic year;
>
> ➢ Hostile environment based on sex in violation of Title IX; and
>
> ➢ Retaliation in violation of Title IX.

ECF No. 35, *34.

In his Second Amended Complaint, ECF No. 37, Plaintiff again claimed his expulsion from Virginia Tech resulted in a deprivation of his rights to due process under the Fourteenth Amendment. He also alleged he suffered gender discrimination in violation of Title IX based on his professor's "allocation of grant funding and other educational opportunities" to a female student instead of Plaintiff and that the professor retaliated against him when Plaintiff complained about gender bias. Defendants again moved to dismiss all claims, and the Court dismissed the following claims with prejudice:

> ➢ Violation of due process rights against Virginia Tech, Cherry-Clarke in her official and individual capacity, and Sands in his official capacity;



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

> ➢ A Title IX claim against Plaintiff's professor; and

> ➢ A Title IX claim based on a hostile environment.

ECF No. 59, *18, *22; ECF No. 60. The Court also allowed Plaintiff's then counsel to withdraw from representation and allowed Plaintiff time to retain new counsel. ECF No. 60. After Plaintiff failed to retain new counsel, Defendants attempted to proceed with litigating the remaining aspects of the case—claims under Title IX based on grant funding and retaliation—but were stonewalled by Plaintiff in their attempt to have a modified scheduling order entered.

After Defendants filed a motion to modify the Court's original scheduling order, the Court requested a status conference with the parties. After a lengthy hearing, the Court entered an Order permitting Plaintiff to file another amended complaint and directing the Clerk to contact a local attorney to potentially represent Plaintiff going forward. ECF No. 79. As to the filing of another amended complaint, the Court specifically stated:

> The court initially *considered* treating the most recent of these largely identical filings, ECF No. 72, as a pro se motion to reconsider the court's February 23, 2023, decision. However, during the status conference, Doe indicated that his former counsel *did not include certain information [Doe] deemed pertinent in the original or amended complaint[s]*. In order to fully address all of Doe's allegations against *Virginia Tech* at one time, the court determined, in the interest of justice, to GRANT Doe permission to file a [Third] Amended Complaint in this case.

ECF No. 79, *2 (emphasis added).

Plaintiff eventually filed his Third Amended Complaint. ECF No. 86. In it, Plaintiff reasserted his due process claims against Cherry-Clarke and Sands. Id., *12. He also maintains his Title IX claim based on grant funding and retaliation. Id., ¶¶ 105–06.

On September 19, the Court conducted a Status Conference at the parties' request to address the Court's Order, ECF No. 79, and Plaintiff's attempt to revive claims



FA P
FRITH
ANDERSON
+ PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

- 3 -

previously dismissed with prejudice. After the Status Conference, the Court entered an Oral Order, ECF No. 91, amending its February 23, 2023, Order, ECF No. 60, to reflect that the dismissal of Plaintiff's due process claims was without prejudice. The Court's Oral Order, ECF No. 91, did not amend the February 23, 2023, Order to reflect that the Title IX claim against Plaintiff's professor of the Title IX hostile environment claim were now dismissed without prejudice. ECF No. 91.

Feeling much like Sisyphus, Defendants yet again move to dismiss this suit for failure to state a claim. For the reasons set forth below, Plaintiff's claims fail to set forth necessary facts to state a claim for which relief can be granted, and this case must be dismissed *with prejudice*.

### STATEMENT OF *ALLEGED* FACTS[1]

Plaintiff was a graduate student at Virginia Tech pursuing a doctoral degree in physics. ECF No. 86, ¶ 8. Dr. Alexey Onufriev ("Onufriev") was Plaintiff's graduate advisor. Id., ¶ 9. After joining Onufriev's lab, a researcher from another school approached Plaintiff and asked Plaintiff if Onufriev was "still 'chasing after'" female graduate students. Id., ¶ 16.[2] At another conference, Onufriev allegedly "told [Plaintiff] *through another grad student* that they needed to go see a 'good poster,'" meaning an attractive female presenter. Id., ¶ 17 (emphasis added).

"[I]n the 2019-2020 academic years," Onufriev received a grant from the National Institutes of Health based on Plaintiff's research. Onufriev allocated some of the grant



FAP
FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

---

[1] Defendants strongly refute the factual allegations in the Third Amended Complaint and have apprised Plaintiff of several material misstatements of fact contained in the Third Amended Complaint. Defendants expect Plaintiff will be correcting those misstatements prior to completion of briefing on Defendants' Motion to Dismiss.
[2] See ECF No. 21, ¶ 19 (alleging incident occurred in 2018).

funds to a female student whose work did not involve the grant rather than to Plaintiff. Id., ¶¶ 18, 20. In response to Plaintiff's protests about the decision, Onufriev allegedly said, "who can resist a Persian princess?" Id., ¶ 22. Further, "[i]n March 2019," Plaintiff told Onufriev: "All I want is equality between students without respect to gender, race, ethnic [sic] . . . Something that unfortunately, I don't see it in our group." Id., ¶ 23.

According to Plaintiff, he learned on August 26, 2019 that Onufriev once again allocated the research assistant grant funding to a female student. Id., ¶ 25. Plaintiff claims Onufriev again referred to the female student as "princess" and told Plaintiff that he "cannot compete with her, you are not at her level." Id., ¶ 26. Plaintiff also claims that Onufriev gave "undue attention to the female," ignored Plaintiff's requests for meetings, and failed to show up for scheduled meetings. Id.

Onufriev tried to attach the grant number to Plaintiff's research despite Plaintiff's refusals. Id., ¶ 28. Because Plaintiff received none of the grant funds, he claims he had to take on a teaching assistant position. Id., ¶ 21. After Plaintiff reported the matter to the Chair of the Physics Department in December 2019, Plaintiff alleges Onufriev withheld "a recommendation for [Plaintiff's] green card application and a letter certifying the completion of [Plaintiff's] Master's degree" and assigned "excessive, redundant, and contradictory research tasks; set false deadlines to publish papers, and create[ed] a hostile condition in the lab . . . ." Id., ¶¶ 32, 34.

"Then, in late-2019 and early 2020," another student accused Plaintiff of making unwanted sexual advances toward her. Id., ¶ 39. The female student met with a Virginia Tech Title IX investigator in November 2019 regarding the alleged unwanted advances from Plaintiff, but she declined to pursue a formal Title IX complaint against Plaintiff at



FAP

FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

that time. Id. ¶ 46. Virginia Tech issued a no contact order to Plaintiff at the female student's request. Id. Plaintiff disputed any wrongdoing and claims he had a consensual relationship with the female student. Id., ¶¶ 40–43.

On January 22, 2020, the female student decided to pursue a formal Title IX complaint against Plaintiff. Id., ¶ 47. On February 17, 2020, Virginia Tech's Title IX office notified Plaintiff that he was "under investigation for assault," and on February 18, Virginia Tech placed Plaintiff on an interim suspension "pending a student conduct hearing." Id., ¶¶ 48–49.[3] Subsequently, Plaintiff visited the Cook Counseling Center at Virginia Tech. He was later admitted to a local hospital and then received mental health treatment at Southern Virginia Regional Medical Center until his release on February 25, 2020. Id., ¶¶ 51–52. ***Plaintiff does not allege that anyone at Virginia Tech in a decision-making capacity was aware of his admission to the local hospital or Southern Virginia Regional Medical Center.***

Plaintiff met with a Title IX investigator on February 28, 2020 to discuss "the student conduct process" and, on the same day, received a letter from Cherry-Clarke, Virginia Tech's Assistant Director of Student Conduct, "formally charging him with sexual assault . . . ." Id., ¶¶ 53–54. Plaintiff met with Cherry-Clarke on March 3, 2020, and she informed him that he had been charged with "violating six of the university's policies on intimate partner contact." Id., ¶ 55.

On March 5, 2020, Cherry-Clarke told Plaintiff his student conduct hearing would be the next day. Id., ¶ 56. Plaintiff asked for extra time to prepare for his hearing, but Cherry-Clarke refused his request. Id., ¶¶ 64–65. ***Plaintiff does not allege that he***


FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

---

[3] Plaintiff previously alleged the University informed him he was under investigation for sexual assault. ECF No. 1, ¶ 29.

629.0407\NHS
4893-7838-6047 .v3

***informed Cherry-Clarke that he had recently been in the hospital or the mental health facility and does not allege that Cherry-Clarke independently knew about Plaintiff's hospitalization.***

Plaintiff claims he did not have sufficient time to review the investigation report the university provided him,[4] to meet with an advisor, or to retain counsel to assist at the hearing. Id., ¶ 61. Plaintiff also contends that he did not have sufficient time to make arrangements to have a witness attend the hearing, although he concedes he had sufficient time to obtain a written statement from the witness. Id., ¶¶ 58–62. ***Plaintiff does not allege that he made any effort to obtain a written statement from the witness or even attempt to contact that person.***

The student conduct hearing went forward on March 6, 2020. Id., ¶ 68. Plaintiff does not allege that he objected to the timing of the hearing or his inability to call witnesses on his behalf. On March 9, Virginia Tech found Plaintiff responsible for sexual assault and dismissed him from the university. Id., ¶ 70. Doe appealed the decision, but Virginia Tech denied the appeal. Id., ¶ 71.

## ARGUMENT & AUTHORITY

Plaintiff asserts two causes of action in his Third Amended Complaint. Id., *12, *16. First, in Count I, Plaintiff asserts a due process claim, based on a property interest in his continued education, due to Cherry-Clarke's failure to continue the student conduct hearing date. Id., ¶¶ 90, 95. Next, in Count II, he claims Virginia Tech violated Title IX



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

---

[4] Plaintiff alleges he did not have sufficient time to review the report provided to him, but he does not allege when he received the report. If Plaintiff intends to base his claim, at least in part, on the lack of sufficient time to review the report, he should be required to disclose to the Court when he did in fact receive it. See ECF No. 24, 41:16–42:8; see also Doe v. Va. Polytechnic Inst. & State University, 77 F.4th 231, 2023 U.S. App. LEXIS 20476, *16 (4th Cir. Aug. 8, 2023) ("Doe is entitled to reasonable inferences from the facts in the complaint, but we won't infer a due-process violation from [Doe's] silence.").

- 7 -

through Onufriev's "allocation of grant funding and other educational opportunities in the 2019–2020 academic year." Id., ¶ 105. Plaintiff also alleges in Count II that Onufriev retaliated against Plaintiff in violation of Title IX after Plaintiff reported the alleged unequal treatment to Dr. Pitt in the Virginia Tech Physics Department. Id., ¶ 106.

## I.   **Standard of Review**

A plaintiff's complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The complaint's factual allegations must produce an inference of liability strong enough to push the plaintiff's claims "'across the line from conceivable to plausible.'" Id. at 683 (quoting Twombly, 550 U.S. at 570); see also ACA Fin. Guar. Corp. v. City of Buena Vista, 917 F.3d 206, 211 (4th Cir. 2019). To meet the plausibility standard, there must be factual content in a complaint that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.[5]

Thus, pleadings that offer mere "'labels and conclusions'" or "'a formulaic recitation of the elements of a cause of action'" will not suffice. Id. at 678 (quoting Twombly, 550 U.S. at 555). Indeed, "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments" need not be accepted as true. Wag More Dogs, LLC v. Cozart, 680 F.3d 359, 365 (4th Cir. 2012). As such, reviewing a complaint is "a context-specific task" requiring the court to "draw on its judicial

---

[5] The court may also "take judicial notice of matters of public record, documents attached to the complaint, and documents attached to the motion to dismiss 'so long as they are integral to the complaint and authentic'" without converting a motion to dismiss into one for summary judgment. Parker v. Austin, 105 F. Supp. 3d 592, 596 n.2 (W.D. Va. 2015) (quoting Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009)). This includes newspaper articles that "discuss the subject matter of the case." Gilmore v. Jones, 370 F. Supp. 3d 630, 668 n.41 (W.D. Va. 2019) (quoting AdvanFort Co. v. Int'l Registries, Inc., No. 1:15cv220, 2015 U.S. Dist. LEXIS 62125, 2015 WL 2238076, at *10 n.10 (E.D. Va. May 12, 2015)).

experience and common sense" in order to determine whether the "complaint states a plausible claim for relief." <u>Iqbal</u>, 556 U.S. at 679 (citing <u>Iqbal v. Hasty</u>, 490 F.3d 143, 157 (2d Cir. 2007)). Still, "[d]istrict judges are not mind readers," <u>ACA Financial Guaranty Corp. v. City of Buena Vista</u>, 298 F. Supp. 3d 834, 855 (W.D. Va. 2018), and a Complaint must comply with the requirements of Rule 8 in order to "unlock the doors of discovery." <u>ACA Fin. Guar. Corp.</u>, 917 F.3d at 212 (internal quotations omitted).

## II.   <u>Neither the Plaintiff, Nor the Court, Can Revive Plaintiff's Due Process Claim</u>

Plaintiff's Third Amended Complaint attempts to revive his due process claims against Sands and Cherry-Clarke and, by implication, Virginia Tech. Because Plaintiff's due process claims were dismissed with prejudice, however, neither the Court's granting of leave to amend, ECF No. 79, nor the Court's Order, ECF No. 91, amending its partial dismissal Order can revive Plaintiff's due process claims.

Courts have held that, unless otherwise specified, a dismissal for failure to state a claim under Rule 12(b)(6) is presumed to be both a judgment on the merits and to be rendered with prejudice. <u>See</u> <u>Federated Dep't Stores, Inc. v. Moitie</u>, 452 U.S. 394, 399 n.3, 101 S. Ct. 2424, 69 L. Ed. 2d 103 (1981) ("The dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a 'judgment on the merits.'"); <u>Carter v. Norfolk Cmty. Hosp. Ass'n</u>, 761 F.2d 970, 974 (4th Cir. 1985) ("A district court's dismissal under Rule 12(b)(6) is, of course, with prejudice unless it specifically orders dismissal without prejudice."); <u>U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.</u>, 360 F.3d 220, 241 (1st Cir. 2004) ("[I]n the absence of a clear statement to the contrary, a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) is presumed to be with prejudice.").



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

In <u>Sims v. Hampton Roads Regional Jail Authority</u>, Civil Action No. 2:20-cv-00620, 2022 WL 696464, 2022 U.S. Dist. LEXIS 41409, at *5-6 (E.D. Va. Mar. 8, 2022), the Court concluded that an Order dismissing some, but not all claims, with prejudice barred the plaintiff from further asserting those claims in an amended complaint under the doctrine of *res judicata*. Thus, prior to the Court's Oral Order, ECF No. 91, there could be no question that Plaintiff's due process claim was barred.

While Rule 59(e) and Rule 60 provide relief from "final judgments," the Court's partial dismissal Order was interlocutory in nature. Thus, neither Rule provides an avenue for amending the Court's partial dismissal Order. Rule 54(b), however, provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities. <u>American Canoe Ass'n v. Murphy Farms, Inc.</u>, 326 F.3d 505, 514–15 (4th Cir. 2003).

Under Rule 54(b), a District Court has broader flexibility to revise interlocutory orders, but that discretion "is not limitless" and is "cabined . . . by treating interlocutory orders as law of the case." <u>U.S. Tobacco Coop. Inc. v. Big South Wholesale of Va., LLC</u>, 899 F.3d 236, 256–57 (4th Cir. 2018) (internal quotations omitted). This is because when "litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." <u>Id.</u> at 257. Therefore, an interlocutory order may be revised under only three circumstances: "(1) a subsequent trial producing substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice." <u>Id.</u> (internal quotations omitted). This standard



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0407\NHS
4893-7838-6047 .v3

departs from the Rule 59(e) standard "by accounting for potentially different evidence *discovered during litigation* as opposed to discovery of new evidence not available at trial." Id. (emphasis added).

Circumstance (2) above does not apply here because there has been no change in the applicable law pertinent to Plaintiff's due process claim. Thus, the only basis for reconsidering the prior dismissal order must rest on circumstances (1) or (3).

As to circumstance (1), "evidence discovered during litigation" does not mean "material that a party could have offered initially, but chose not to." Norris v. PNC Bank, N.A., No. 20-3315, 2022 WL 5054099, 2022 U.S. Dist. LEXIS 182325, *15 (D. Md. Oct. 4, 2022) (citing Carlson v. Boston Sci. Corp., 856 F.3d 320, 326 (4th Cir. 2017)); Knox v. United States, No. 0:17cv36, 2018 WL 4020209, 2018 U.S. Dist. LEXIS 143512, *6–7 (D.S.C. Aug. 23, 2018) (attempt to make new arguments based on previously available evidence was not a proper basis for alteration of interlocutory order).

As to circumstance (3), this is a high burden "'because the error in question must strike [the Court] as wrong with the force of a five-week-old unrefrigerated dead fish.'" Pro-Concepts, LLC v. Resh, No. 2:12cv573, 2014 U.S. Dist. LEXIS 189512, *5 (E.D. Va. May 23, 2014) (quoting TFWS, Inc. v. Franchot, 572 F.3d 186, 194 (4th Cir. 2009)); U.S. Tobacco, 899 F.3d at 258. "In other words, it must be dead wrong." Id.

Here, the intended purpose of the Court's Order modifying the partial dismissal Order was to allow Plaintiff to file a Third Amended Complaint with the "facts" he claimed his lawyer omitted previously. See ECF No. 79; ECF No. 91. But Plaintiff did not even do that. There are no new facts pertaining to the due process claim.



FRITH
ANDERSON
+ PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

- 11 -

Even assuming arguendo that Plaintiff has alleged new facts relevant to the due process claim, they were available to him (and his counsel) during the drafting of the three prior iterations of the complaint in this action and the prior lawsuit dismissed by Judge Cullen. Thus, they are material facts that a party could have offered initially but chose not to. In addition, a client's blamelessness does not serve as an excuse. As the Supreme Court has stated,

> A party voluntarily chooses her attorney in civil litigation, and she therefore cannot later "avoid the consequences of the acts or omissions of this freely selected agent." Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship 507 U.S. 380, 396 (1993) (quoting Link v. Wabash R.R. Co., 370 U.S. 626, 633-634 (1962)). This principle "requires that [a party] be held accountable for the acts and omissions of their chosen counsel." Id. at 397.

German v. Akal Sec., Inc., No. CCB-11-1242, 2012 WL 1203942, 2012 U.S. Dist. LEXIS 50107, at *8 (D. Md. Apr. 10, 2012). Plaintiff claimed at the Status Conference that his former counsel failed to include certain facts in the lawsuit. These were not facts discovered during the litigation but rather allegations Plaintiff's former lawyer apparently chose to omit from the prior iterations of this lawsuit. Thus, circumstance (1) is not satisfied in this case. Moreover, in light of existing precedent, the Court's partial dismissal Order dismissing the due process claim with prejudice was not "dead wrong." Thus, because there was no "clear error" in the Court's partial dismissal Order, circumstance (3) is not satisfied either.

Accordingly, the Court's Order, ECF No. 91, amending the partial dismissal Order was wrong and must be vacated. While Defendants understand the sympathy one might have for a plaintiff who claims his lawyer failed to allege facts pertinent to the lawsuit in multiple prior iterations of the suit, it is not the Court's role to remedy such errors after



FAP

FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0407\NHS
4893-7838-6047 .v3

entering a partial dismissal with prejudice absent sufficient circumstances.[6] See <u>Pang v.</u> <u>Adult Day Health, Inc.</u>, No. 19-2283, 2022 WL 2869161, 2022 U.S. Dist. LEXIS 130440, *10–11 (D. Md. July 21, 2022) (Court's sympathy for plaintiff's health problems, standing alone, was insufficient to warrant reconsideration of interlocutory order). Instead, the Court's Order amending the partial dismissal Order operated to the detriment of substantive rights of Dr. Sands, Ms. Cherry-Clarke, and Virginia Tech without a basis meeting the standard set forth in <u>U.S. Tobacco</u>.

For these reasons, the Court's Order ECF No. 91, must be vacated, and Plaintiff's due process claim must be summarily dismissed as barred.

### III. <u>Plaintiff Fails to State an Actionable Procedural Due Process Claim</u>

Count I is a procedural due process claim against Sands in his official capacity and against Cherry-Clarke in her official and individual capacity. Count I of the Complaint fails to state a claim for relief because Plaintiff fails to allege a recognized property interest. Moreover, Plaintiff alleges he received advance notice and an opportunity to be heard but fails to allege that anyone at Virginia Tech was aware of his circumstances that ostensibly supported a continuance of his disciplinary hearing. Finally, qualified immunity operates to bar his individual capacity claim against Cherry-Clarke.

#### a. <u>The Official capacity suits against the individuals are duplicative.</u>

Plaintiff asserts a claim against Sands in his official capacity only and against Cherry-Clarke in both her individual and official capacities. ECF No. 86, *12. As previously argued, Plaintiff's official capacity claims against Sands and Cherry-Clarke are duplicative because he has already named Virginia Tech as a defendant. Therefore, to the extent any



FA+P

FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

---

[6] And under Virginia professional liability law, Plaintiff is not left without an avenue to pursue a remedy for his former lawyer's failures.

- 13 -

due process claim was viable, the official capacity claims against those individuals should be dismissed.

"[A]n official-capacity suit against a state officer 'is not a suit against the official but rather is a suit against the official's office. As such it is no different from a suit against the State itself.'" Hafer v. Melo, 502 U.S. 21, 26 (1991) (quoting Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989)). Indeed, an official capacity suit against a government official "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." Monell v. New York Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978). Thus, a § 1983 claim against an individual in his official capacity is duplicative of a claim against the governmental entity named in the same lawsuit and should be dismissed. Love-Lane v. Martin, 355 F.3d 766, 783 (4th Cir. 2004) (citing Kentucky v. Graham, 473 U.S. 159, 165–66 (1985)); see also Bhattacharya v. Murray, No. 3:19cv54, 2022 WL 808500, 2022 U.S. Dist. LEXIS 46641, *11–12 (W.D. Va. Mar. 16, 2022);  Smith v. Sch. Bd., No. 2:21cv138, 2021 WL 5163312, 2021 U.S. Dist. LEXIS 214800, *57 n.7 (E.D. Va. Nov. 5, 2021);   Booker v. City of Lynchburg, No. 6:20cv11, 2020 WL 4209057, 2020 U.S. Dist. LEXIS 128818, *15 (W.D. Va. July 22, 2020).

Virginia Tech is already named as a defendant in this case and is the real party in interest for purposes of the official capacity claims. See Kentucky v. Graham, 473 U.S. 159, 166 (1985). Accordingly, the due process claims against Sands and Cherry-Clarke in their official capacities should be dismissed as Virginia Tech is the real party in interest.[7]

---

[7] To the extent that Plaintiff's request for monetary damages in his prayer for relief can be construed as a request for monetary damages from Virginia Tech for his due process claim, such a claim fails as a matter of law because Virginia Tech enjoys Eleventh Amendment immunity from suits for money damages under 42 U.S.C. § 1983.

- 14 -

**b.  Plaintiff fails to allege a property interest.**

Plaintiff's due process claim fails further still because Plaintiff still fails to allege facts sufficient to identify a protected property interest in his continued education.

In order to allege a due process claim under the Fourteenth Amendment, Plaintiff must allege facts sufficient to show "(1) a cognizable liberty or property interest; (2) the deprivation of that interest by some form of state action; and (3) that the procedures employed were constitutionally inadequate." Doe v. Va. Polytechnic Inst. & State Univ., 77 F.4th 231, 2023 U.S. App. LEXIS 20476, *9 (4th Cir. Aug. 8, 2023) (internal quotations omitted). Plaintiff maintains that he had a protected property interest in his "continued education at Virginia Tech" based on his payment of tuition and language allegedly found in Virginia Tech's Code of Conduct. ECF No. 86, ¶¶ 78, 80–88.

Plaintiff is wrong.

**1.  Plaintiff does not have a property interest in his education.**

"A property interest is 'created and its dimensions are defined by an independent source such as state statutes or rules entitling the citizen to certain benefits.'" Doe v. Alger, 228 F. Supp. 3d 713, 725 (W.D. Va. 2016) ("Alger II") (internal quotations and citation omitted). Property interests are not created by unilateral expectations or abstract needs or desires. Equity in Athletics, Inc. v. Dep't of Educ., 639 F.3d 91, 109 (4th Cir. 2011) (internal quotations omitted). Rather, they must arise from "state statutes, contracts, regulations, or policies." Alger II, 228 F. Supp. 3d at 725. While a property interest may arise from a clearly implied promise of a right, "[a] person's interest in a benefit is a property interest for due process purposes if there are such *rules or mutually explicit*



629.0407\NHS
4893-7838-6047 .v3

*understandings* that support his claim of entitlement to the benefit and that he may invoke at a hearing." ECF No. 35, *14 (internal quotations and citations omitted).

Neither the Supreme Court nor the Fourth Circuit has actually recognized a property right to continued enrollment in a public college or university or that the Commonwealth of Virginia has created such a right. ECF No. 35, *13–14 (citations omitted); Sheppard v. Visitors of Va. State Univ., 933 F.3d 230, 239 (4th Cir. 2021); Doe v. Alger, 175 F. Supp. 3d 646, 657 (W.D. Va. 2016) ("Alger I").[8]

### 2. Plaintiff relies on Code of Conduct language that did not apply during his enrollment.

Plaintiff's Third Amended Complaint contains multiple quotations and references to the Virginia Tech Student Code of Conduct to support his alleged property interest. Doe admits in the Third Amended Complaint that he was dismissed from the University in March of 2020. ECF No. 86, ¶ 70. The language upon which Plaintiff relies, however, comes from Virginia Tech's Code of Conduct that went into effect in June of 2020. See **Ex. A** (scanned using Optical Character Recognition ("OCR")).[9] No such language appears in the Code of Conduct effective at the time of Plaintiff's dismissal. See **Ex. B** (scanned using OCR).[10]

As public records under Virginia law, Va. Code § 42.1-77, the Court may consider these documents without converting Defendant's motion from a motion to dismiss to a



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

---

[8] See also M.B. v. McGee, No. 3:16cv334, 2017 U.S. Dist. LEXIS 44796, at *27 (E.D. Va. Mar. 24, 2017) (quoting Alger, 175 F. Supp. 3d at 660); see also Abbas v. Woleben, No. 3:13cv147, 2013 WL 5295672, 2013 U.S. Dist. LEXIS 134446, at *19 (E.D. Va. 2013); Nofsinger v. Va. Commonwealth Univ., No. 3:12cv236, 2012 WL 2878608, 2012 U.S. Dist. LEXIS 97857, at *18–19 (E.D. Va. July 13, 2012), aff'd, 523 F. App'x 204 (4th Cir. 2013); McCoy v. E. Va. Med. Sch., No. 2:11cv494, 2012 U.S. Dist. LEXIS 25777, 2012 WL 662529, at *2 (E.D. Va. Feb. 28, 2012); Davis v. George Mason Univ., 395 F. Supp. 2d 331, 335–36 (E.D. Va. 2005), aff'd, 193 F. App'x 248 (4th Cir. 2006).

[9] Maintained at: https://vtechworks.lib.vt.edu/handle/10919/99429 (last visited September 26, 2023).

[10] Maintained at: https://vtechworks.lib.vt.edu/handle/10919/94326 (last visited September 26, 2023).

629.0407\NHS
4893-7838-6047 .v3

motion for summary judgment because their "mere existence, and not the mere information [they] contain, gives rise to the legal rights asserted" and because "the legal rights at issue in the complaint rely heavily upon [their] terms and effect." Doe v. Univ. of Virginia, No. 3:22cv64, __ F. Supp. 3d __, 2023 WL 2873379, 2023 U.S. Dist. LEXIS 63108, *13 n.2 (W.D. Va. Apr. 10, 2023) (internal quotations omitted); Davis v. George Mason Univ., 395 F. Supp. 2d 331, 335, 336–37 (E.D. Va. 2005) (considering official publications of George Mason University for purposes of Rule 12(b)(6) motion).

Specifically, the language relied upon by Plaintiff in paragraphs 80, 81, 83 (language regarding five business days' advance notice), and 84 is found in the June 2020 version of the Code of Conduct, not the 2019 version applicable during Plaintiff's last period of enrollment. Thus, because the language referenced in the Third Amended Complaint was not even contained in the effective version of the student code during Plaintiff's enrollment, it is impossible that Plaintiff formed any "understanding" based on the "procedural guarantees and opportunities provided for by the Student Code of Conduct" referenced in his Third Amended Complaint. ECF No. 86, ¶ 86. And as a result, Plaintiff cannot claim to have a property interest in his continued enrollment based on language that did not even exist during his enrollment at Virginia Tech.

### 3. Plaintiff's references to the Code of Conduct are insufficient to allege a property interest.

Even assuming, *arguendo*, that the Court must consider the incorrect language quoted by Plaintiff from the Code of Conduct, the language is insufficient to raise an inference that Plaintiff has a protected property interest in his continued enrollment at Virginia Tech.



629.0407\NHS
4893-7838-6047 .v3

Plaintiff does not rely on a state statute or regulation to support his claimed property interest. Instead, he appears to rely on an alleged implied contract between Plaintiff and Virginia Tech based upon his payment of tuition, the aforementioned "policies" of Virginia Tech, and the alleged "value" of his doctoral degree. ECF No. 86, ¶¶ 78, 85–89.

But as the Court previously admonished, those allegations are insufficient to allege a cognizable property interest in continued education. ECF No. 59, *16–18; ECF No. 35, *20; see also Jacob Doe v. Va. Polytechnic Inst. & State Univ., No. 7:19cv249, 2020 WL 1309461, 2020 U.S. Dist. LEXIS 47754, at *17 (W.D. Va. Mar. 19, 2020)[11](citing Doe v. Washington & Lee Univ., 439 F. Supp. 3d 784 (W.D. Va. 2020); Doe v. Marymount Univ., 297 F. Supp. 3d 573, 588 (E.D. Va. 2018)); George v. Averett Univ. of Danville, No. 4:19cv8, 2019 WL 3241177, 2019 U.S. Dist. LEXIS 119600, at *7–8 (W.D. Va. July 18, 2019) (Kiser, J.).

Plaintiff tries to supplement his previous allegations supporting his purported property interest in continued education by referencing additional provisions of Virginia Tech's Code of Conduct. Compare ECF No. 86, ¶¶ 80–84 with ECF No. 37, ¶¶ 78–81. To that end, Plaintiff alleges that the Code of Conduct "guaranteed that [Plaintiff] could not arbitrarily be removed as a student . . . ." Id., ¶ 82. Plaintiff bases this contention on the provisions allegedly contained in the Code of Conduct (as noted above, they are not in the applicable version). But these statements allegedly contained in the Code of Conduct

---

[11] Hereinafter "Jacob Doe v. Va. Tech".

629.0407\NHS
4893-7838-6047 .v3

speak only in generalities that are insufficient to create a cognizable property interest. A comparison to the allegations in <u>Alger I</u>, illustrates this critical shortcoming.[12]

The <u>Alger I</u> Court permitted a plaintiff's procedural due process claim to survive a motion to dismiss. <u>Id.</u> at 658. But that plaintiff alleged that James Madison University ("JMU") created a property right in the plaintiff's continued education by adopting policies allowing for dismissal, suspension, or expulsion of students only for cause. <u>Id.</u> at 657. The plaintiff in <u>Alger I</u> also claimed that JMU's student rights policy served as a basis for his entitlement to continued enrollment. <u>Id.</u> at 658. In fact, the allegations in <u>Alger I</u> regarding the plaintiff's alleged property interest spanned approximately four single-spaced pages, and he attached and quoted extensively from (the correct) JMU Policy on Student Rights to buttress his claim. <u>See</u> <u>Doe v. Alger</u>, No. 5:15cv35, ECF No. 30, at *2–4, 18–19 (W.D. Va. July 17, 2015). As opposed to the allegations here, the allegations in <u>Alger I</u> went well beyond generalities or the plaintiff's mere expectations.

For example, in <u>Alger I</u>, the plaintiff alleged that "[i]n an effort to induce accepted students to enroll there, JMU substantially limited its ability to suspend, expel or dismiss students by adopting policies, by engaging in practices and a consistent course of conduct for many years, and by fostering understandings that it would not suspend or dismiss students without proving cause." <u>Doe v. Alger</u>, No. 5:15cv35, ECF No. 30, at *2 (W.D. Va. July 17, 2015). That plaintiff also alleged "JMU placed substantive limits on its ability to suspend or dismiss Plaintiff by adopting policies and by continuing to follow a longstanding and consistent practice of requiring a finding of cause, as determined by a

---

[12] And as discussed *supra*, neither the United State Constitution nor the Constitution of Virginia guarantees a property right in post-secondary education.

629.0407\NHS
4893-7838-6047 .v3

fair and impartial process which included notice of the charge, a meaningful opportunity to appear, and confront the evidence to be considered." Id.

The Alger I plaintiff claimed JMU **never** "dismissed, suspended, expelled or separated an undergraduate student for alleged misconduct without proving cause through the use of a fair and impartial process where the accused student had a meaningful opportunity to appear before the fact-finder and confront all the evidence considered." Id. at *3. The Alger I plaintiff then went on to quote, at length, JMU's student rights policy, which enumerated specific entitlements JMU students have during a sexual misconduct proceeding. Id. at *3–4. Finally, the Alger I plaintiff expressly alleged that he accepted JMU's offer of admission based on his reliance on JMU's "policies, practices and understandings regarding Student Rights . . . ." Id. at *4. Still, Judge Dillon later characterized those allegations as "sparse." Doe v. Va. Polytechnic Inst. & State Univ., 400 F. Supp. 3d 479, 500 (W.D. Va. 2019).[13]

By comparison, the Alger I allegations stand in stark contrast to the meager, generalized, and conclusory allegations present here. Indeed, contrary to the plaintiff in Alger I, Plaintiff alleges—without citing any examples—that "on numerous occasions" Virginia Tech **has denied students their due process rights**, whereas the Alger I plaintiff claimed that JMU **never** did such a thing.

As the Court noted in its prior decisions in this case, the Alger I Court relied on the Supreme Court's decision in Perry v. Sinderman, 408 U.S. 593 (1972), when it denied JMU's motion to dismiss. In Perry, a professor at Odessa Junior College, a public junior college, alleged he had a protected property interest in his continued employment at the

---

[13] Hereinafter "Doe I v. Va. Tech".

- 20 -

college. 408 U.S. at 599. Rather than relying on "a formal contractual tenure provision," the professor claimed the college had a *de facto* tenure program affording him tenure. Id. at 600. The professor alleged "that he and others legitimately relied upon an unusual provision that had been in the college's official Faculty Guide for many years" that stated as follows:

> *Teacher Tenure*: Odessa College has no tenure system. The Administration of the College wishes the faculty member to feel that he has permanent tenure as long as his teaching services are satisfactory and as long as he displays a cooperative attitude toward his co-workers and his superiors, and as long as he is happy in his work.

Id. (internal quotations omitted). The professor also identified "guidelines promulgated by the Coordinating Board of the Texas College and University System that provided that a person, like himself, who had been employed as a teacher in the state college and university system for seven years or more has some form of job tenure." Id. By contrast, Plaintiff's references to the provisions of the Code of Conduct do not speak to anything more than generalities.

The allegations here are quite similar to those in Abbas v. Woleben, No. 3:13cv147, 2013 WL 5295672, 2013 U.S. Dist. LEXIS 134446 (E.D. Va. Sept. 18, 2013), another case where a student failed to allege facts demonstrating a protected property interest. In Abbas, the plaintiff relied on an implied contract theory in support of his procedural due process claim against the Medical College of Virginia ("MCV") at Virginia Commonwealth University and its employees. Id. at *19–21. Along with his reliance on the payment of tuition and fees, that plaintiff alleged that his dismissal from MCV was "not in accordance with the student handbook." Id., at *10. The Abbas Court rejected that argument because university handbooks and catalogs are subject to revision at any time and do not bind the



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0407\NHS
4893-7838-6047 .v3

university. Id. at *11 (citing Davis v. George Mason Univ., 395 F. Supp. 2d 331, 337 (E.D. Va. 2005); Brown v. Rector & Visitors of Univ. of Va., No. 3:07cv30, 2008 U.S. Dist. LEXIS 36427, 2008 WL 1943956, at *6 (W.D. Va. May 2, 2008)).

Since Abbas, other courts have described the right of unilateral revision of such policies and handbooks as a lack of mutuality that is a condition precedent to the formation of an express or implied contract. See Doe v. Washington & Lee Univ., 439 F. Supp. 3d at 792 (citing Jackson v. Liberty Univ., No. 6:17cv41, 2017 WL 3326972, 2017 U.S. Dist. LEXIS 122104, at *17 (W.D. Va. Aug. 3, 2017)); see also Brown v. Porter, No. 2:19cv376, 2020 U.S. Dist. LEXIS 245054, at *34–35 (E.D. Va. Oct. 20, 2020) adopted by 2020 WL 7226143, 2020 U.S. Dist. LEXIS (E.D. Va. Dec. 8, 2020). Codes of conduct, sexual misconduct policies, and student handbooks are "'guidelines' for students rather than reciprocal agreements." Id.

The Fourth Circuit adopted this reasoning in Sheppard when it noted that codes of conduct and university procedures do not implicate interests that trigger a federal due process claim. Sheppard, 993 F.3d at 239–40; see also Doe v. Marymount Univ., 297 F. Supp. 3d 573, 588 (E.D. Va. 2018); Doe v. Washington & Lee Univ., No. 6:14cv52, 2015 U.S. Dist. LEXIS 102426, 2015 WL 4647996, at *11 (W.D. Va. Aug. 5, 2015)).

So, for the same reason that university handbooks, catalogs, and other policies do not create an express or implied contract, they cannot serve as the basis of a property interest given that they are subject to unilateral revision at any time by the university.

Here, even if the Code of Conduct could form the basis of a property interest claim (and if Plaintiff quoted the correct version of the Code of Conduct), Plaintiff's general references to its mere existence do not shed any light on how a property interest arises



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

- 22 -

from it. Plaintiff does not allege he accepted admission to Virginia Tech because of his reliance on Virginia Tech's policies regarding student rights. Plaintiff does not claim Virginia Tech never disciplined a student for alleged misconduct without proving cause through a fair and impartial process. And Courts in this District and the Eastern District of Virginia agree that these "guidelines" are subject to unilateral revision and therefore cannot buttress a property interest for purposes of a due process claim.

Lastly, it should be patently clear that one cannot claim a property interest based on "policy" language that did not even exist during the time of Plaintiff's enrollment.

Plaintiff utterly fails, again, to identify specific facts undergirding his alleged property interest in continued enrollment at Virginia Tech. As such, Plaintiff's Third Amended Complaint fails to allege a protected property interest supporting his procedural due process claim, and that claim should be dismissed with prejudice.

**c.** <u>**Plaintiff received due process.**</u>

Even if Plaintiff has alleged a protected property interest, his claim still fails because he fails to allege facts showing a deprivation of the constitutionally required due process for student discipline. The fundamental requirements of due process are fair notice and an opportunity to be heard. <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 546 (1985); <u>see</u> <u>also</u> <u>Mathews v. Eldridge</u>, 424 U.S. 319, 333 (1976). But what process is due is a "flexible" inquiry and depends on the "particular situation" at hand. <u>Morrissey v. Brewer</u>, 408 U.S. 471, 481 (1972). This Circuit continues to draw on the Fifth Circuit's decision in <u>Dixon v. Alabama State Board of Education</u>, 294 F.2d 150, 159 (5th Cir. 1961) in cases involving suspension or expulsion of students. <u>Doe v. Va. Polytechnic Inst. & State Univ.</u>, 2023 U.S. App. LEXIS 20476, *10–11.



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

- 23 -

Notably, the <u>Dixon</u> standard does not even require the accused student's presence at the hearing, so long as he receives "the names of the witnesses against him and an oral or written report on the facts to which each witness testifies." <u>Id.</u> (internal quotations omitted). That is sufficient process, according to the Fourth Circuit, so long as the accused student has "an opportunity to present his own defense against the charges . . . ." <u>Id.</u> Plaintiff received that opportunity regardless of the timing of the hearing.

Defendants acknowledge that the Court concluded that Plaintiff's First Amended Complaint "stated a claim that Virginia Tech did not employ constitutionally adequate procedures when it gave [Plaintiff] one day's notice of the hearing." ECF No. 35, *25.

But that determination stemmed, at least in part, from the allegation that after he learned he had been accused of sexual assault and would be suspended pending a forthcoming hearing, Plaintiff "spent part of the following week receiving in-patient mental health care." <u>Id.</u> Moreover, that decision came prior to the Fourth Circuit's recent decision in in <u>Doe v. Virginia Polytechnic Institute and State University</u>, which explicitly noted that <u>Dixon</u> does not require the accused student's presence at the hearing so long as he has some opportunity to present his defense.

Notably absent from either the First Amended Complaint, the Second Amended Complaint, or the Third Amended Complaint, is any allegation that Cherry-Clarke **knew** that Plaintiff had been in the hospital and an in-patient mental health facility when Cherry-Clarke (a) told Plaintiff about the upcoming hearing date; and (b) denied Plaintiff's request for an extension. There are no allegations that Plaintiff informed anyone at Virginia Tech in advance of the hearing or during the investigation that he had just been discharged from a mental health facility or been in the hospital. Rather, he simply told



629.0407\NHS
4893-7838-6047 .v3

Cherry-Clarke, "I did not have enough time to [prepare] and collect all of the evidence that I need to defend [myself]. ECF No. 86, ¶¶ 64–65. Doe does not allege he told Chery-Clarke what evidence he needed to collect or how much time he required for a continuance either. If the inquiry as to what process is due is indeed "flexible" and depends on the "particular situation" at hand, <u>Morrisey</u>, 408 U.S. at 481, the lack of any knowledge on Cherry-Clarke's part is critical to this analysis.

Given that Plaintiff received notice of the sexual assault investigation on February 17, 2020, ECF No. 86, ¶ 48, was suspended "pending a student conduct hearing" on February 18, <u>Id.</u>, ¶ 49, met with the investigator on February 28, <u>id.</u>, ¶ 53, received formal charges the same day, <u>id.</u>, ¶ 54, and met with Cherry-Clarke on March 3 to discuss the "student conduct process," <u>id.</u>, ¶ 55, the Court cannot draw a reasonable inference that Plaintiff had no idea that a hearing would be occurring regarding the sexual assault allegations or that Plaintiff had insufficient time to prepare. When Plaintiff learned of the hearing date, ***seventeen (17) days had passed since he received notification of the investigation, and more than two weeks had passed since his interim suspension***.[14]



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

---

[14] 2020 was a leap year, so February had 29 days.

629.0407\NHS
4893-7838-6047 .v3



Plaintiff protests that he did not have sufficient time to retain counsel and had to go forward without counsel. Id., ¶¶ 62. But there is no right to counsel in a student discipline proceeding. Henson v. Honor Committee of the Univ. of Virginia, 719 F.2d 69, 74 (4th Cir. 1983). Therefore, that fact does not suffice to show that Plaintiff lacked a meaningful opportunity to be heard. Plaintiff also complains that he did not have sufficient time to contact a witness to attend the hearing with less than 24 hours' notice of the hearing date. Id., ¶¶ 60–61. It belies credulity to suggest that Plaintiff needed more than 24 hours to even *contact* the witness by phone, email, text, or otherwise. Further, Plaintiff does not allege that he actually *attempted* to contact the witness, and he conveniently omits from this iteration of the Complaint his admission that he could have obtained a written statement from the witness to submit at the hearing. ECF No. 37, ¶ 60; ECF No. 21, ¶ 56. Further, he does not allege he objected to the hearing going forward on



629.0407\NHS
4893-7838-6047 .v3

March 6 or requested that the hearing officers grant a continuance at that time. See <u>Doe v. Va. Polytechnic Inst. & State Univ.</u>, 2023 U.S. App. LEXIS 20476, *14–15.

For the foregoing reasons and the reasons set forth in Defendants' prior memoranda, <u>see</u> ECF Nos. 13, 16, and 27, Virginia Tech provided Doe adequate notice and a meaningful hearing.[15] For these reasons, in addition to those stated above, Plaintiff's due process claim fails as a matter of law.

### d. **Qualified immunity**

Even if the Court disagrees with the above, Cherry-Clarke enjoys the benefit of qualified immunity from Plaintiff's due process claim against her in her individual capacity. First, there is no clearly established right to continued enrollment at a university for purposes of Plaintiff's asserted property interest. Second, the amount of advance notice required before a student disciplinary proceeding—when the student has sufficient notice of the charges he faces—was not clearly established at the time of the events in the Complaint.

### 1. **Qualified immunity standard**

Qualified immunity serves the dual purpose of holding "'public officials accountable when they exercise power irresponsibly and . . . shield[ing] officials from harassment, distraction, and liability when they perform their duties reasonably.'" <u>Danser v. Stansberry</u>, 772 F.3d 340, 345 (4th Cir. 2014) (quoting <u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009)). The defense applies so long as the defendant's conduct does not violate a clearly established right of which a reasonable person would have known. <u>Id.</u> (citing

---

[15] <u>Tigrett v. Rector & Visitors of Univ. of Va.</u>, 290 F.3d 620, 627 (4th Cir. 2002); <u>Butler v. Rector & Bd. of Visitors of the College of William & Mary</u>, 121 F. App'x 515, 520 (4th Cir. 2005); <u>Cobb v. Rector & Visitors of the Univ. of Va.</u>, 69 F. Supp. 2d 815, 829 (W.D. Va. 1999).

629.0407\NHS
4893-7838-6047 .v3

<u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). Because qualified immunity provides "'immunity from suit rather than a mere defense to liability,'" it is imperative that a ruling on the issue "be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001) (quoting <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985)).

When a defendant asserts a qualified immunity defense, the court must conduct a two-pronged analysis which addresses (1) whether the defendant violated the plaintiff's constitutional rights; and (2) if so, whether at the time of the alleged violation the right was clearly established. <u>Danser</u>, 772 F.3d at 345–46 (citing <u>Meyers v. Baltimore Cnty., Md.</u>, 713 F.3d 723, 731 (4th Cir. 2013)). The Court may address either prong first in its qualified immunity analysis. <u>Hensley v. Price</u>, 876 F.3d 573, 580 (4th Cir. 2014) (citing <u>Pearson</u>, 555 U.S. at 236).

The second element of the qualified immunity analysis requires the court to determine, without the benefit of hindsight, whether "'the contours of the right [were] sufficiently clear [such] that a reasonable [official] would understand that what he is doing violates that right.'" <u>E.W. v. Dolgos</u>, 884 F.3d 172, 185 (4th Cir. 2018) (quoting <u>Hill v. Crum</u>, 727 F.3d 312, 321 (4th Cir. 2013)). Indeed, the question is not whether the official's actions were correct but, rather, whether those actions were reasonable under the circumstances. <u>Brown v. Ray</u>, 695 F. Supp. 2d 292, 304 (W.D. Va. 2010)

In the Fourth Circuit, whether a right is clearly established hinges on "'the decisions of the Supreme Court, [the Fourth Circuit Court of Appeals], and the highest court of the state in which the case arose.'" <u>Owens v. Lott</u>, 372 F.3d 267, 279–80 (4th Cir. 2004) (quoting <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 251 (4th Cir. 1999)). When no



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0407\NHS
4893-7838-6047 .v3

controlling authority exists, a court "may look to 'a consensus of persuasive authority' from other jurisdictions if such exists." Id. (quoting Wilson v. Layne, 526 U.S. 603, 617 (1999)). While not conclusive, "'[i]f a right is recognized in some other circuit, but not in this one, an official will ordinarily retain the immunity defense.'" Edwards, 178 F.3d at 251 (quoting Jean v. Collins, 155 F.3d 701, 709 (4th Cir. 1998) (en banc)). The Court may, however, construe a particular right as clearly established if a "'a consensus of cases of persuasive authority' from other jurisdictions . . . exists." Booker v. S.C. Dep't of Corr., 855 F.3d 533, 539 (4th Cir. 2017) (quoting Owens ex rel Owens v. Lott, 372 F.3d 267, 280 (4th Cir. 2004)).

It is a "longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" White v. Pauly, 580 U.S. 73, 79 (2017) (per curiam) (quoting Ashcroft, 563 U.S. at 742). Thus, before holding a government officer liable for breaching a clearly established right, the Court must "identify a case where [a defendant] acting under similar circumstances . . . was held to have violated" the plaintiff's rights. Id. This analysis does not require that the "'exact conduct at issue' . . . previously have been deemed unlawful for the law governing [a defendant's] action to be clearly established." Sims v. Labowitz, 885 F.3d 254, 263 (4th Cir. 2018) (quoting Amaechi v. West, 237 F.3d 356, 362 (4th Cir. 2001)). But there must be clearly established law that is "particularized to the facts of the case' so as to avoid transforming qualified immunity into 'a rule of virtually unqualified immunity." Safar v. Tingle, 859 F.3d 241, 246 (4th Cir. 2017) (internal quotations omitted)



FRITH
ANDERSON
+ PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0407\NHS
4893-7838-6047 .v3

**2.  It is not clearly established that university students have a constitutionally protected property right in continued enrollment.**

In April of 2022, the United States Court of Appeals for the Fourth Circuit ruled in a published decision that it is not clearly established that a university student has a right to continued education. <u>Sheppard</u>, 993 F.3d at 240. This past August, the Fourth Circuit again declined to answer the question. <u>Doe v. Va. Polytechnic Inst. & State Univ.</u>, 2023 U.S. App. LEXIS 20476, *9. Accordingly, on that basis alone, Cherry-Clarke is entitled to qualified immunity for the claim against her in her individual capacity.

**3.  What constitutes an adequate amount of notice required before a disciplinary hearing is not clearly established.**

While it is clear that a university student is entitled to advance notice of the charges against him before a disciplinary hearing, it is not clearly established how much notice is required when the student receives notice of the charges prior to a disciplinary hearing being set. As the <u>Tigrett</u> Court noted, the focus of the analysis is notice of the *charges*, not notice of the hearing time. Further, as noted above, ***there are no allegations*** that Cherry-Clarke (or anyone at Virginia Tech for that matter) knew that Plaintiff had been in the hospital and an in-patient mental health facility when Plaintiff requested an extension of the hearing date. If qualified immunity is truly intended to protect "bad guesses in gray areas," then under the alleged facts here, Cherry-Clarke is entitled to qualified immunity for her decision not to continue the hearing date when there are no allegations she had any knowledge about Plaintiff's hospitalization and Plaintiff had been apprised of the charges against him two weeks prior.

**IV.  <u>Plaintiff Fails to Allege Facts Showing a Violation of Title IX.</u>**

Title IX of the Education Amendments of 1972 provides that:



629.0407\NHS
4893-7838-6047 .v3

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal Financial assistance.

20 U.S.C. § 1681(a).

In <u>Sheppard v. Visitors of Virginia State University</u>, the Fourth Circuit agreed—in part—with the pleading standard for Title IX cases adopted by the Seventh Circuit, which asks whether "the alleged facts, if true, raise a plausible inference that the university discriminated against the student on the basis of sex?" <u>Sheppard</u>, 993 F.3d at 236 (internal quotations omitted).[16] The <u>Sheppard</u> Court clarified, however, that "a Title IX plaintiff [must] adequately plead causation—that is, a causal link between the student's sex and the university's challenged [decision]." <u>Id.</u> That causal link requires "'but-for' causation," which means that the plaintiff's "gender was the 'but-for' cause of his treatment . . . ." <u>Id.</u> at 236–37, 238 (citations omitted). To meet that standard, the plaintiff must identify "sufficiently particularized allegations of gender discrimination" such as statements or "patterns of decision-making that also tend to show the influence of gender." <u>Doe I v. Va. Tech</u>, 400 F. Supp. 3d at 503 (internal quotations and citation omitted).

Mere conjecture and speculation of discrimination based on sex, however, fails to state a claim under Title IX. <u>Yusuf</u>, 35 F.3d at 715. That a plaintiff believes that his gender was the reason for the alleged discriminatory action, "absent more, does not suffice to render his claim plausible." <u>Sheppard</u>, 993 F.3d at 238. Indeed, mere conclusory



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

---

[16] Prior to the decision in <u>Sheppard</u>, courts in the Western District of Virginia generally followed the analysis set forth in <u>Yusuf v. Vassar College</u>, 35 F.3d 709 (2d Cir. 1994) for analyzing Title IX claims. <u>Doe I v. Va. Tech</u>, 400 F. Supp. 3d at 502–03. The <u>Sheppard</u> Court explained that the "selective enforcement" and "erroneous outcome" theories in <u>Yusuf</u> could be avenues to establish the requisite "but for" causation. <u>Sheppard</u>, 993 F.3d at 236.

629.0407\NHS
4893-7838-6047 .v3

allegations are insufficient to make it plausible that gender bias was a but for cause of the alleged discriminatory treatment. <u>See</u> <u>Doe v. W. New Eng. Univ.</u>, 228 F. Supp. 3d 154, 190 (D. Mass. 2016), <u>adopted</u> <u>by</u> 228 F. Supp. 3d 154 (D. Mass. 2017); <u>Sahm v. Miami Univ.</u>, 110 F. Supp. 3d 774, 778–80 (dismissing plaintiff's Title IX claim because the complaint failed to allege any statements of members of the disciplinary body or university officials or any patterns of conduct that permitted the court to infer bias against male students); <u>Doe v. Univ. of Mass-Amherst</u>, No. 14-30143, 2015 WL 4306521, 2015 U.S. Dist. LEXIS 65452, at *27 (D. Mass. July 14, 2015); <u>Harris v. St. Joseph's Univ.</u>, 2014 WL 1910242, 2014 U.S. Dist. LEXIS 65452, at *16–17 (E.D. Pa. May 13, 2014) (dismissing plaintiff's Title IX claim due to his failure to allege sufficient facts to support his claim that gender bias was a motivating factor in the university's decision); <u>see</u> <u>also</u> <u>King v. DePauw Univ.</u>, No. 2:14cv70, 2014 U.S. Dist. LEXIS 117075, 2014 WL 4197507, at *10 (S.D. Ind. Aug. 22, 2014) (denying plaintiff's motion for a preliminary injunction based on an alleged violation of Title IX due to the absence of any evidence that "plaintiff's gender was a motivating factor in any of [the university's] actions").

Plaintiff sums up his Title IX claim as follows:

> 104.    Virginia Tech deprived Mr. Doe, on the basis of his gender, of his rights of due process and equal protection through its improper application and administration of its policies to Mr. Doe in the pursuit of his degree program.

> 105.    Virginia Tech, through Dr. Onufriev, favored a female student in Mr. Doe's laboratory, over a male student, Mr. Doe, in the allocation of grant funding and other educational opportunities in the 2019–2020 academic year, and such discrimination was because of Mr. Doe's gender.

ECF No. 86, ¶¶ 104–105. A review of Plaintiff's factual allegations, however, does not lend support to these legal conclusions.



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0407\NHS
4893-7838-6047 .v3

First, as to Plaintiff's claim that Virginia Tech discriminated against him "through its improper application and administration of its policies," Plaintiff does not identify any policies of Virginia Tech in his Second Amended Complaint, much less offer factual allegations as to how any such policies were improperly applied on the basis of sex. Thus, the conclusion in paragraph 104 of the Third Amended Complaint lacks any factual support and does not serve as a basis for a Title IX claim against the university.

Second, Plaintiff fails to plead facts satisfying the steep "but for" causal link for his conclusory allegation that Onufriev's decision to allocate the grant funds to a female was due to gender bias. To meet that standard, Plaintiff must point to "sufficiently particularized allegations of gender discrimination" such as statements or "patterns of decision-making that also tend to show the influence of gender." <u>Doe I v. Va. Tech</u>, 400 F. Supp. 3d at 503 (internal quotations and citation omitted). Plaintiff fails to identify any statements showing the influence of gender bias in Onufriev's classroom and lab and fails to identify any "patterns" of decisions by Onufriev showing the influence of gender. The fact that Plaintiff believes that his gender was the reason Onufriev gave the research position to another student, "absent more, does not suffice to render his claim plausible." <u>Sheppard</u>, 993 F.3d at 238. Without factual allegations to demonstrate the steep causation requirement that gender bias was "***the*** but-for" cause of the university's decision, Plaintiff fails to state a claim under Title IX for the alleged discrimination in regard to grant funding and educational opportunities.

Plaintiff's Title IX claim has rested on the same essential facts since the filing of his original complaint in this action, which this Court summarily dismissed and dismissed again after Plaintiff filed his First Amended Complaint. To summarize, at an academic



FRITH
ANDERSON
+ PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0407\NHS
4893-7838-6047 .v3

conference *another researcher* asked Plaintiff if Onufriev "was still 'chasing after' female graduate students." ECF No. 86, ¶ 16. At a different conference, *another student* allegedly told Plaintiff that something Onufriev said meant there was an attractive woman presenting at the conference. Id., ¶ 17. Onufriev referred to the female student who received the research stipend as a "Persian princess." Id., ¶ 25. But Onufriev told Plaintiff that Plaintiff could not "***compete with [the female student], you are not at her level.***" Id., ¶ 29 (emphasis added). Finally, Onufriev allegedly "constantly" met with the female student but ignored Plaintiff's requests for meetings. Id.

Plaintiff's own allegations belie his Title IX claim. First, he claims only that "ordinarily" would a research stipend go to a graduate student whose work helped secure the grant. Id., ¶ 19. Clearly, Onufriev had discretion to allocate any funds if they were not required to be given to students whose work helped secure the grant. Moreover, by Plaintiff's allegations, id., ¶ 26, Onufriev did not feel that Plaintiff was as *academically* qualified as the female student, which is not indicative of bias against males. Accord Doe v. Fairfax Cnty. Sch. Bd., 403 F. Supp. 3d 508, 519 (E.D. Va. 2019) (bias in favor of alleged victims of sexual assault and against alleged perpetrators is not the equivalent of bias against males) (collecting cases). In other words, Plaintiff's allegations raise an inference that the allocation of funds was based on the female being a better student, not because of her sex.

The allegations insinuating that Onufriev is physically attracted to females cannot support a Title IX claim either, as that would result in an unconscionable and illogical result. Lastly, Plaintiff's complaints about the number of meetings between Onufriev and the female student fails to account for the non-gender based factor that the female



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0407\NHS
4893-7838-6047 .v3

student was serving as Onufriev's research assistant at the time as opposed to Plaintiff who was not a research assistant. Thus, Plaintiff fails to state a claim under Title IX regarding the allocation of grant funding.

V.   **Plaintiff Fails to State a Claim for Retaliation Under Title IX**

Although not asserted in a separate count, Plaintiff claims Onufriev retaliated against him after Plaintiff complained of gender bias in the physics lab. ECF No. 86, ¶ 106.

Title IX's implied private right of action includes claims for retaliation. Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 171 (2005). To state a claim for retaliation under Title IX, a plaintiff "must allege that [he] engaged in protected activity under Title IX, and second, [he] suffered an adverse action *attributable to the defendant educational institution*." Feminist Majority Found. v. Hurley, 911 F.3d 674, 694 (4th Cir. 2018) (citations omitted) (emphasis added). A retaliation claim under Title IX is a *separate cause of action* from a Title IX discrimination claim because a plaintiff claiming retaliation "must show a retaliatory motive." Id. at 696.

To impute liability to the university, however, there must be facts sufficient to draw an inference that the university was deliberately indifferent to the retaliatory conduct. Feminist Majority Found., 911 F.3d at 695; see also Litman v. George Mason Univ., 131 F. Supp. 2d 795, 801 (E.D. Va. 2001) (plaintiff claiming retaliation under Title IX must prove institution had notice of retaliatory behavior).

But not all retaliatory conduct is actionable. Id. at 694. Instead, the retaliatory conduct must be "materially adverse" such that it would "dissuade a reasonable person from making or supporting a charge of discrimination." Id. (internal quotations and citation omitted). "Retaliatory harassment *may* constitute a materially adverse action." Id.



FRITH
ANDERSON
+PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

629.0407\NHS
4893-7838-6047 .v3

Plaintiff alleges that he complained to Onufriev in March 2019 about perceived gender bias. Yet, Plaintiff does not allege that Onufriev retaliated against Plaintiff in any way after Plaintiff complained. Indeed, Plaintiff alleges that Onufriev "*ignored*" Plaintiff's complaints. ECF No. 86, ¶ 27. Then, Plaintiff complained to the chair of the department in December 2019, nine months after he complained to Onufriev. Id., ¶ 32. At that time, Plaintiff claims Onufriev retaliated against him by (1) withholding a recommendation for Plaintiff's green card application and a letter certifying completion of Plaintiff's Master's degree; (2) assigning "excessive, redundant, and contradictory research tasks"; (3) setting "false deadlines to publish papers"; and (4) creating "hostile conditions in the lab . . . ." Id., ¶ 34.

Notably, there are *no facts* describing how Onufriev created a "hostile condition in the lab." Thus, that conclusory allegation cannot substantiate a retaliation claim. Moreover, the Court previously concluded that Plaintiff's allegations regarding retaliation did not allege any basis suggesting that Onufriev's actions were "attributable to Virginia Tech." ECF No. 35, *33.

To impute liability to the university, there must be facts sufficient to draw an inference that the university was deliberately indifferent to the retaliatory conduct. But Plaintiff has provided no basis for the Court to impute Onufriev's alleged actions to Virginia Tech to establish that Virginia Tech was deliberately indifferent to the alleged retaliatory conduct. See ECF No. 35, *33; Clehm v. BAE Sys. Ordnance Sys., 786 F. App'x 391, 394 (4th Cir. 2019) (per curiam) (plaintiff must show that retaliatory conduct is imputable to employer). Accordingly, Plaintiff's Title IX retaliation claim should be dismissed with prejudice.



FRITH ANDERSON +PEAKE PC
ATTORNEYS AT LAW
Roanoke, Virginia

## Conclusion

WHEREFORE, defendants Virginia Polytechnic Institute and State University, Timothy Sands, and Tamara Cherry-Clarke, by counsel, respectfully request entry of an Order granting Defendants' Motion to Dismiss, dismissing this case with prejudice, and granting such further relief as the Court deems just and proper.

Respectfully submitted,

VIRGINIA POLYTECHNIC INSTITUTE AND STATE UNIVERSITY, TIMOTHY SANDS and TAMARA CHERRY-CLARKE
/s/_____
Katherine C. Londos (VSB #: 36848)
Nathan H. Schnetzler (VSB #: 86437)
FRITH ANDERSON + PEAKE, P.C.
29 Franklin Road, SW
P.O. Box 1240
Roanoke, Virginia 24006-1240
Phone: 540/772-4600
Fax:    540/772-9167
Email: klondos@faplawfirm.com
          nschnetzler@faplawfirm.com

Kay Heidbreder (VSB No.: 22288)
University Legal Counsel and
Senior Assistant Attorney General
*heidbred@vt.edu*
M. Hudson McClanahan (VSB No.: 46363)
*hud3@vt.edu*
Kristina J. Hartman (VSB No.: 92279)
*kjhart06@vt.edu*
Stephen F. Capaldo (VSB No.: 74045)
*scapaldo@vt.edu*
Associate University Legal Counsel and
Assistant Attorney General
University Legal Counsel (0121)
Burruss Hall, Suite 236, Virginia Tech
800 Drillfield Drive
Blacksburg, VA  24060
Phone: (540) 231-6293
Fax: (540) 231-6474
*Counsel for Defendants*



- 37 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 27, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send notification of such filing to all counsel of record.

/s/ Nathan H. Schnetzler
Of Counsel

629.0407\NHS
4893-7838-6047 .v3